IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  17-cv-03018-MSK-MJW

CLARENCE MOSES-EL,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER;
MITCHELL R. MORRISSEY, Former Denver District Attorney, in his individual capacity;
BONNIE BENEDETTI, Chief Deputy District Attorney for the Denver District Attorney's Office, in her individual capacity;
ROBIN WHITLEY, Former Deputy District Attorney for the Denver District Attorney's Office, in his individual capacity;
LYNN KIMBROUGH, Former Communications Director for the Denver District Attorney's Office in her individual capacity;
JEFF CARROLL, Investigator for the Denver District Attorney's Office Investigator, in his individual capacity;
DR. KATHREN BROWN-DRESSEL, Former Colorado Bureau of Investigation and Denver Police Department Forensic Serologist, in her individual capacity; and
ESTATE OF JAMES HUFF, Denver Police Department Detective, in his individual capacity,

      Defendants.

---

**REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT FROM DISTRICT ATTORNEY DEFENDANTS**

---

    Defendants Mitchell R. Morrissey, Bonnie Benedetti, Robin Whitley, Lynn Kimbrough, and Jeff Carroll ("DA Defendants"), by and through their counsel, Andrew D. Ringel, Esq., Keith M. Goman, Esq., and Matthew J. Hegarty, Esq., of Hall & Evans, L.L.C., respectfully submit this Reply to Plaintiff's Response to Motion to Dismiss Amended Complaint, as follows:

## INTRODUCTION

As a reaction to DA Defendants' Motion to Dismiss, Plaintiff submitted a 60-page Response broadly contending: (1) all his claims against DA Defendants are timely despite no DA Defendant participating in Plaintiff's first criminal trial in 1988; (2) his malicious prosecution claim against Mr. Morrissey, Ms. Benedetti, Ms. Kimbrough, and Mr. Carroll is well-pled and these Defendants are not entitled to immunity on this claim; (3) his destruction-of-evidence claim against Mr. Whitley is well-pled and Mr. Whitley is not entitled to immunity on this claim; (4) his manufacture-of-inculpatory-evidence claim against Ms. Benedetti and Mr. Carroll is well-pled and these Defendants are not entitled to immunity on this claim; (5) his conspiracy claim against Mr. Morrissey, Ms. Benedetti, Ms. Kimbrough, and Mr. Carroll is well-pled and they are not entitled to immunity on this claim; (6) his fundamental unfairness claim against Mr. Morrissey, Ms. Benedetti, Mr. Whitley, and Mr. Carroll is well-pled and these Defendants are not entitled to immunity; and (7) his supervisory-liability fundamental unfairness claim against Mr. Morrissey is well-pled and Mr. Morrissey is not entitled to immunity. For the reasons below along with those identified in DA Defendants' Motion to Dismiss, Plaintiff's colorful rhetoric and wholesale conclusory allegations to the contrary notwithstanding, his contentions fail and DA Defendants are entitled to dismissal.

## ADDITIONAL AUTHORITY ON STANDARD OF REVIEW

Plaintiff has the burden to frame a complaint with enough factual matter to suggest he is entitled to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). This Court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the

legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that <u>this</u> plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphases in original). In reviewing a motion to dismiss, the Court accepts all well-pleaded factual allegations as true and views them favorably to the plaintiff. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011). The Court disregards all conclusory statements of law and considers whether the remaining specific factual allegations, if assumed true, plausibly suggest liability. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

Significantly, as to section 1983 actions, it is particularly important "the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her[.]" *Robbins*, 519 F.3d at 1250 (emphases in original). Individual liability under § 1983 requires *personal participation* in any unlawful acts, *Beedle v. Wilson*, 422 F.3d 1059, 1072 (10th Cir. 2006); *see Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996), and Plaintiff must establish a defendant's "direct personal responsibility" for the claimed deprivation, *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). Plaintiff must identify specific actions taken by a given defendant plausibly forming the basis of a constitutional violation. *See Brown*, 662 F.3d at 1165.

## ARGUMENT

### I.  All Claims Based On Conduct Occurring Between The End Of Plaintiff's 1988 Trial And The Vacation Of His Conviction In December 2015 Are Time-Barred Because *Heck* Neither Prohibited Nor Tolled Them

Plaintiff first contends all his claims against DA Defendants are timely despite no DA Defendant participating in his first criminal trial in 1988. This argument is erroneous.

Fundamentally, the class of individual defendants for a malicious prosecution claim is limited to those persons involved in securing the plaintiff's original criminal conviction which subsequently is invalidated. In this regard, ***Heck v. Humphrey***, 512 U.S. 477 (1994), cannot be understood or appropriately applied without reference to its factual context. In *Heck*, the plaintiff sought to sue two county prosecutors and a police investigator who were directly involved with the plaintiff's underlying criminal trial. *See id.* at 479. The decisions of several Circuit Courts of Appeals concur, as follows.

- In ***Poventud v. City of N.Y.***, 750 F.3d 121, 125-26, 138 (2d Cir. 2014), where a plaintiff's original criminal conviction was invalidated due to a ***Brady*** violation before his first trial but discovered during the course of his retrial, the proper individual defendants were the four NYPD detectives directly responsible for the ***Brady*** violation.

- In ***Smith v. Gonzales***, 222 F.3d 1220 (10th Cir. 2000), where a plaintiff's original criminal conviction was invalidated based on a ***Brady*** violation occurring before his first trial but was discovered during post-conviction proceedings, although dismissal of the plaintiff's 42 U.S.C. § 1983 action was upheld, the individual defendants were the two law enforcement officers directly responsible for the ***Brady*** violation. *Cf.* ***Smith v. Sec'y of N.M. Dep't of Corr.***, 50 F.3d 801 (10th Cir. 1995).

- In *Bryson v. Gonzales*, 534 F.3d 1282, 1284 (10th Cir. 2008), the Tenth Circuit mentioned, without disapproving, the district court's dismissal of an alleged malicious prosecution claim against a police chief "because the prosecution began and ended in 1982-83, eight years before Mr. Gonzales became police chief, the complaint had not alleged his involvement in the violation."

More particularly, in *Heck* the Supreme Court held a plaintiff seeking damages under 42 U.S.C. § 1983 for actions *the alleged unlawfulness of which necessarily would render the plaintiff's conviction or sentence invalid* must show the conviction or sentence was invalidated. 512 U.S. at 486-87 & n.6. The Court tied the relatedness inquiry to whether the claim, if proven, would invalidate an element of the underlying offense. *See id.* at 486 n.6; *Wade v. Brady*, 460 F. Supp. 2d 226, 238 (D. Mass. 2006) (Court in *Heck* "emphasized that a finding of 'necessary invalidity' required 'negating an element of the offense'"). As another federal court recently observed:

> The distinction between § 1983 claims that involve the trial process and those that do not is important when determining whether or not the *Heck* deferred accrual rule applies. Claims premised on pre-trial conduct do not necessarily imply the invalidity of a conviction. However, when a § 1983 plaintiff seeks a determination that defendants' misconduct infected the trial process itself, then any resulting conviction would necessarily be impugned by success on the § 1983 claims.

*Wright v. City of Phila.*, 229 F. Supp. 3d 322, 333 (E.D. Pa. 2017). Likewise, analytically, the bar of *Heck* does not and cannot apply to claims based on alleged misconduct occurring well *after* trial.

Where a potential conviction in a plaintiff's retrial was unlikely to have been based on the alleged misconduct of the defendant, the suit was not affected by *Heck*'s favorable termination requirement. *See Clay v. Allen*, 242 F.3d 679, 682 (5th Cir.

2001); *cf. Alvarez v. City of Brownsville*, 2013 U.S. Dist. LEXIS 194540, at *26 (S.D. Tex. Feb. 25, 2013) ("A § 1983 claim that a state actor **withheld exculpatory evidence at trial** does not accrue until the underlying conviction has been set aside." (emphasis added)); *id.* at *27 ("A § 1983 claim that the prosecution **secured his conviction** based on 'manufactured evidence' does not accrue until the underlying criminal conviction has been overturned." (emphasis added)); *Basemore v. Abraham*, 2006 U.S. Dist. LEXIS 1121, at *6 (E.D. Pa. Jan. 11, 2006) ("[P]laintiff's claims of wrongdoing during his 1988 trial would not have had any effect on his 2003 retrial. Thus, the limitations period was not tolled during the plaintiff's 2003 retrial and the plaintiff's claim ... is time barred." (citation omitted)).

Plaintiff nevertheless contends "a favorable result on each of [his] civil-rights claims would necessarily demonstrate the invalidity of his criminal convictions," which at its heart is an invitation to this Court to assess the claims in the Amended Complaint at a 30,000-foot-level generality rather than the conduct-driven, street-level specificity the Supreme Court demands. [Resp. at 9.] In so contending, Plaintiff commits to the critical error the Supreme Court has lately, and roundly, criticized — namely, defining the law at a high level of generality — which "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014). The level of generality at which Plaintiff urges his constitutional rights be defined and assessed is much too high. *See id.*; *Evans v. City of Chicago*, 2005 U.S. Dist. LEXIS 18507, at *23 (N.D. Ill. Aug. 29, 2005) (in assessing if *Heck* applies, "this Court must determine whether success on [plaintiff's] claim would necessarily imply the invalidity of his conviction. To do so, this Court must first

determine what conduct underlies the ... claim."). But Plaintiff wishes to put the cart [imposing liability for conduct not prior to or contemporaneous with a criminal conviction] before the horse [allowing such conduct to be shoehorned into a cause of action for that original conviction in the first instance]. He may not do so. This is important because the Supreme Court rejected the proposition that a defendant possesses a liberty interest in avoiding prosecution upon less than probable cause. ***Brooks v. City of Winston-Salem***, 85 F.3d 178, 184 (4th Cir. 1996). Moreover, a purported § 1983 claim grounded in an alleged failure to attempt to terminate criminal proceedings against the plaintiff, after it allegedly became clear the plaintiff was innocent, is not cognizable. *See **id.***

Plaintiff relies on ***Amaker v. Weiner***, 179 F.3d 48 (2d Cir. 1999), for the proposition ***Heck*** bars a ***Brady*** claim until the underlying criminal conviction is invalidated. That reliance is misplaced. In ***Amaker***, the defendants at issue were the "police, prosecutors, plaintiff's defense attorneys, the trial judge, an eyewitness, and various court personnel" directly involved in the judicial proceedings resulting in the plaintiff's original criminal conviction. 179 F.3d at 49. Here, in contrast, none of the DA Defendants was involved in securing Plaintiff's 1988 criminal conviction. Consequently, DA Defendants are not properly subject to the class of claims ***Heck*** would forestall.

Plaintiff also relies on ***Hamilton v. Lyons***, 74 F.3d 99 (5th Cir. 1996), for the proposition ***Heck*** bars claims of "coerced self-incriminating statements and altered or destroyed material evidence" until the underlying criminal conviction was invalidated. That reliance is similarly misplaced because the defendant in ***Hamilton*** was the investigating officer involved in the original prosecution, 74 F.3d at 102-03, Here, as noted, no DA Defendant was involved in securing Plaintiff's original criminal conviction

in 1988, so none of them is within the class of persons properly the object of constitutional claims affected by *Heck*.

And *Gerstein v. Pugh*, 420 U.S. 103 (1975), is not applicable to Plaintiff's argument about timeliness, not only because it was issued almost 20 years before *Heck* but also because *Heck* does not incorporate it into the favorable termination analysis.

Plaintiff's purported explication of *Bryson v. Macy*, 611 F. Supp. 2d 1234 (W.D. Okla. 2009), is also incorrect because although the District Court reasoned the claim was time-barred, the District Court also held: "A § 1983 claim by Bryson seeking damages for the bad faith denial of post-conviction access to potentially exculpatory evidence would not have necessarily implied the invalidity of any conviction, past or anticipated." *Id.* at 1255. In other words, *Heck* and its favorable termination requirement have no impact on such a claim—which is precisely the point DA Defendants sought to make, both in the "untimeliness" section of their Motion and throughout the above analysis. Any other result creates an altogether new constitutional claim-–malicious continuation of post-conviction prosecution—grounded in no actual precedent cited by Plaintiff or otherwise.

## II. Plaintiff's Malicious Prosecution Claim Fails For Want Of Adequate Allegations As To Causation And Due To The Application Of Absolute Immunity And Qualified Immunity As Appropriate

Plaintiff next contends his malicious prosecution claim against Mr. Morrissey, Ms. Benedetti, Ms. Kimbrough, and Mr. Carroll is well-pled and these Defendants are not entitled to immunity on this claim. Plaintiff is mistaken.

**Causation (element 1):** Contrary to Plaintiff's arguments, and as explained below, the law does not permit Plaintiff to shoehorn the alleged conduct of Mr.

Morrissey, Ms. Benedetti, Ms. Kimbrough, and Mr. Carroll, all of which occurred decades after Plaintiff's original trial and conviction in 1988, into a malicious prosecution claim and assert any of them "caused" Plaintiff's continued confinement.

In this regard, Plaintiff's reliance on *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004), for the proposition a malicious prosecution claim can arise from continued detention without probable cause after the institution of legal process, is misplaced. In *Pierce*, the Tenth Circuit allowed a plaintiff alleging he was wrongfully imprisoned for a rape he did not commit to assert a § 1983 malicious prosecution claim against the forensic analyst who testified at his prosecution and the district attorney who oversaw his prosecution and collaborated with the forensic analyst. *See* 359 F.3d at 1281-83, 1300. In contrast, neither Mr. Morrissey, nor Ms. Benedetti, nor Ms. Kimbrough, nor Mr. Carroll were involved in Plaintiff's 1988 prosecution resulting in his incarceration.

Moreover, Plaintiff stretches the causation-oriented holding of *Pierce* beyond its breaking point. In *Pierce*, the defendant asserted she should not face liability for malicious prosecution because she was neither involved in the plaintiff's arrest nor responsible for filing charges against him, even though she had forensically examined the evidence, testified at trial for the prosecution, and allegedly withheld exculpatory evidence. See 359 F.3d at 1291-92. Relying on Restatement (Second) of Torts § 655, the Tenth Circuit disagreed, holding a person "who takes an active part in continuing or procuring the continuation of criminal proceedings initiated by himself or by another is subject to the same liability for malicious prosecution as if he had then initiated the proceedings." *Id.* at 1292. This holding of *Pierce* has been cited only twice since: (1) to conclude the plaintiff must allege and prove the individual defendants he seeks to hold

liable "somehow assisted" in the original prosecution, *Barton v. City and Cnty. of Denver*, 432 F. Supp. 2d 1178, 1209-10 (D. Colo. 2006), *adopted*, 432 F. Supp. 2d at 1187; and (2) to conclude the individual defendants' conduct must be "closely connected to either the initiation or the continuation" of the original prosecution, *P.J. v. Utah*, 2008 U.S. Dist. LEXIS 72334, at *93-96 & n.136 (D. Utah Sept. 22, 2008), *rev'd on other grounds sub nom.*, *P.J. v. Wagner*, 603 F.3d 1182 (10th Cir. 2010). And the few federal courts apart from *Pierce* to cite Section 655 in the course of analyzing § 1983 malicious prosecution claims (not state law claims) universally apply it only where the persons in question played an actual role in the plaintiff's original prosecution, and were not simply involved in post-conviction conduct.[1] Therefore, *Pierce* cannot be said to generate a long tail of liability for malicious prosecution as to Mr. Morrissey, Ms. Benedetti, Ms. Kimbrough, or Mr. Carroll, particularly because the Amended Complaint alleges none of them acted in any respect until *almost twenty (20) years after* Plaintiff's 1988 prosecution, conviction, and sentencing had already occurred.

The limitation of individual defendants' liability to those directly involved in securing a plaintiff's original conviction and incarceration can be observed in the composition of every Tenth Circuit case citing *Pierce* and allowing a § 1983 malicious

---

[1] *See* **Andrade v. Cho**, 2017 U.S. Dist. LEXIS 139137, at *8-9 & n.4 (D. Haw. Aug. 29, 2017) (police officer who referred his investigation of plaintiff to the prosecutor's office); **Kerns v. Bd. of Comm'rs**, 707 F. Supp. 2d 1190, 1281 (D.N.M. 2010) (forensic examiner whose analysis was used for arrest-warrant affidavit for plaintiff and who testified at plaintiff's grand jury), *rev'd sub nom.*, **Kerns v. Bader**, 663 F.3d 1173, 1189-90 (10th Cir. 2011) (Gorsuch, J.); **Burt v. Aleman**, 2008 U.S. Dist. LEXIS 35846, at * (E.D.N.Y. Apr. 29, 2008) (police officer who signed criminal complaint against plaintiff and who testified before plaintiff's grand jury was held not to have insisted upon or urged further prosecution of plaintiff for purposes of § 1983).

prosecution claim to survive Rule 12 or Rule 56.[2] And this limitation persists even where the Tenth Circuit cites *Pierce* in holding such a claim did not survive Rule 12 or Rule 56.[3] *Cf. Bryson*, 534 F.3d at 1284. This makes sense, because such a limitation is consistent with the causation requirements of personal participation, and of direct personal responsibility, for individual liability to exist as part of any § 1983 claim. *See Brown*, 662 F.3d at 1165; *Trujillo*, 465 F.3d at 1227; *Beedle*, 422 F.3d at 1072.

Plaintiff relies on *Bliss v. Franco*, 446 F.3d 1036 (10th Cir. 2006), for the proposition individual defendants can be liable if they "set in motion" a series of events allegedly causing others to violate a person's constitutional rights. That case has no bearing on the conduct alleged here. In *Bliss*, 446 F.3d at 1045-46, the officers to which

---

[2] *E.g., Sanchez v. Hartley*, 810 F.3d 750 (10th Cir. 2016) (investigator and four detectives who participated in investigating plaintiff); *Myers v. Koopman*, 738 F.3d 1190 (10th Cir. 2013) (police officer who signed plaintiff's arrest warrant); *Fletcher v. Burkhalter*, 605 F.3d 1091 (10th Cir. 2010) (deputy who signed probable cause affidavit); *Wilkins v. DeReyes*, (10th Cir. 2008) (three law enforcement officers who participated in investigating plaintiff); *cf. Miller v. Spiers*, 339 F. App'x 862 (10th Cir. 2009) (vacating and remanding claim against assistant DA, police detective, and forensic analyst directly involved in plaintiff's prosecution).

[3] *E.g., Young v. City of Idabel*, 721 F. App'x 789 (10th Cir. 2018) (mayor withholding exculpatory evidence during prosecution of plaintiff); *Margheim v. Buljko*, 855 F.3d 1077 (10th Cir. 2017) (assistant DA prosecuting plaintiff); *Papadakos v. Norton*, 663 F. App'x 651 (10th Cir. 2016) (social worker investigating plaintiff and police officer arresting him prior to being charged); *Tiscareno v. Frasier*, 603 F. App'x 672 (10th Cir. 2015) (pediatrician evaluating medical records and offering conclusion used to arrest plaintiff); *Stonecipher v. Valles*, 759 F.3d 1134 (10th Cir. 2014) (six ATF agents involved in pretrial investigation of plaintiff); *Van de Weghe v. Chambers*, 569 F. App'x 617 (10th Cir. 2014) (Gorsuch, J.) (two police officers investigating plaintiff and assistant DA prosecuting him); *Kerns v. Bader*, 663 F.3d 1173 (10th Cir. 2011) (two police officers and forensic analyst securing plaintiff's arrest warrant); *Calvert v. Ediger*, 415 F. App'x 80 (10th Cir. 2011) (probation officer providing information for plaintiff's arrest); *Novitsky v. City of Aurora*, 491 F.3d 1244 (10th Cir. 2007) (police officers arresting plaintiff); *Boydston v. Isom*, 224 F. App'x 810 (10th Cir. 2007) (police officers initiating plaintiff's prosecution); *Kee v. Ahlm*, 219 F. App'x 727 (10th Cir. 2007) (police officer arresting plaintiff); *Joseph v. Shepherd*, 211 F. App'x 692 (10th Cir. 2006) (assistant DA prosecuting plaintiff and DA investigator allegedly withheld exculpatory evidence); *cf. McCarty v. Gilchrist*, 646 F.3d 1281 (10th Cir. 2011) (forensic analyst analyzed plaintiff's DNA and testified at trial).

this principle applied gave information to the officer who subsequently arrested the plaintiff, thus signaling their direct involvement in the original criminal proceedings against the plaintiff. Here, as noted, DA Defendants had no such involvement. In relying on *Bliss*, plaintiff ignores the proximate causation element that applies to all § 1983 claims, both at the pleading stage and throughout the case. *See Bliss*, 446 F.3d at 1046; *see also* ***Martinez v. California***, 444 U.S. 277, 284-85 (1980) (relying on ***Palsgraf v. Long Island R.R. Co.***, 248 N.Y. 339, 162 N.E. 99 (N.Y. 1928)).

Ultimately, as a factual matter, Plaintiff simply cannot escape the reality that the acts he attributes to Mr. Morrissey, Ms. Benedetti, Ms. Kimbrough, and Mr. Carroll [*see* ECF No. 57 at 7-9; ECF No. 80 at 15-16] occurred well after his 1988 trial, conviction, and sentencing and thus bear no proximate causal relationship to his original prosecution. Further, there is no warrant in the law for satisfaction of the first element of a malicious prosecution claim where, as here, the claim sounds only in pure continuing confinement due to a complete lack of connection of anyone Plaintiff seeks to hold liable to any activity surrounding his original prosecution. *See* ***Donahue v. Gavin***, 280 F.3d 371, 382 (3d Cir. 2002) ("damages for post-conviction injuries are not within the purview of the Fourth Amendment" in context of § 1983 malicious prosecution claim). And to any extent Plaintiff attempts to amalgamate the actions of these Defendants into an alloy of malicious prosecution by the Denver DA's Office, he is not permitted to do so, because collective allegations cannot form the predicate of any claim against any DA Defendant. ***Pahls v. Thomas***, 718 F.3d 1210, 1226 (10th Cir. 2013).

**Probable Cause (element 3):** Application of the probable cause element to Plaintiff's allegations against DA Defendants underscores the above point and shows

Plaintiff is trying to wedge the proverbial square peg into a round hole with his claims against DA Defendants. None of the individual DA Defendants were involved in any decision that in any way related to whether there was probable cause to prosecute Plaintiff originally. *See **Bryson***, 534 F.3d at 1284; *cf.* ***Grubbs v. Bailes***, 445 F.3d 1278 (10th Cir. 2006) (probable cause element not satisfied); ***Easton v. City of Boulder***, 776 F.2d 1441, 1448, 1450-51 (10th Cir. 1985) (same). Thus, Plaintiff's entire malicious prosecution theory against DA Defendants is premised on the assertion there was not probable cause to continue to support a conviction obtained through a jury verdict and affirmed on appeal, and that, following post-conviction proceedings, there was not probable cause to retry him (even though the retrial resulted in acquittal). Such a theory, while creative, simply is not grounded in any law, much less clearly established law.

**Absolute Immunity:** Plaintiff's malicious prosecution claim suffers from the fatal infirmity of failure to satisfy the first element. But even if it did not, Mr. Morrissey and Ms. Benedetti are entitled to absolute prosecutorial immunity for every act they took up to and including Plaintiff's retrial (apart from Ms. Benedetti's interview of L.C. Jackson), as assessed at the level of the functions and discrete acts they are alleged to have performed. Plaintiff's contrary arguments fail to pass muster.

- *Mr. Morrissey* enjoys absolute prosecutorial immunity for his evaluation of evidence when Plaintiff's case was reopened in 2006, and any role he played in determining whether probable cause existed for Plaintiff's retrial. *See **Nielander v. Bd. of Cnty. Comm'rs.***, 582 F.3d 1155, 1164 (10th Cir. 2009); *see also **Martin v. Matthews***, 480 F. App'x 471, 473 (10th Cir. 2012). ***Nielander*** is dispositive on these issues and Plaintiff's Response offered no persuasive rebuttal. And Mr. Morrissey also

enjoys absolute prosecutorial immunity for supervising employees of the Denver DA's Office who played a role in the investigation immediately preceding Plaintiff's retrial and the retrial itself because, in a section of **Mink** which Plaintiff overlooks, absolute immunity attaches to "administrative or investigative activities when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." **Mink v. Suthers**, 482 F.3d 1244, 1261 (10th Cir. 2007). Collaboration with prosecutorial personnel assessing whether to retry a previously convicted person—which is all the Amended Complaint alleges Mr. Morrissey did as a supervisor[4]—is closely associated with the judicial process, is a uniquely advocacy-oriented role, and requires exercise of professional prosecutorial judgment, meaning such supervision is entitled to a shield of absolute immunity. *See id.*; *see also* **Van de Kamp v. Goldstein**, 555 U.S. 335, 345-46 (2009) (prosecutor supervising trial prosecutor who is absolutely immune is also absolutely immune).

- *Mr. Morrissey* also enjoys absolute legislative immunity for his written response to members of the General Assembly who first wrote to him in 2008, which response as the elected District Attorney communicated a decision his office would oppose a bill pending before the legislature, *see* **Manzanares v. Reyes**, 2:14-cv-00040, 2015 U.S. Dist. LEXIS 136437, at *18-21 (D. Utah Sept. 14, 2015); **MyInfoGuard, LLC v. Sorrell**, 2:12-cv-074, 2012 U.S. Dist. LEXIS 161070, at *10-11 & n.3 (D. Vt. Nov. 9,

---

[4] Plaintiff's attempt to augment the claims set forth in ECF No. 47 through additional factual allegations in his Response must be disregarded by the Court, because "the sufficiency of a complaint must rest on its contents alone." **Gee v. Pacheco**, 627 F.3d 1178, 1186 (10th Cir. 2010); **Glenn v. First Nat'l Bank**, 868 F.2d 368, 369-71 (10th Cir. 1989) (statements in response to motion to dismiss did not qualify as motion for leave to amend).

2012) (prosecutor drafting portions of bill entitled to absolute legislative immunity); *see also **Buckley v. Ray***, 848 F.3d 855, 865 (8th Cir. 2017) (prosecutor testifying before legislature absolutely immune from defamation claim), and which constituted participation in a fact-finding probe relating to investigation and inquiry by members of a legislative branch, *see **Tenney v. Brandhove***, 341 U.S. 367, 376-78 (1951); ***Kelly v. Chambers***, 07-cv-1005, 2007 U.S. Dist. LEXIS 89721, at *25-26 (N.D. Ill. Dec. 6, 2007). By neither citing nor discussing any of these five cases, Plaintiff concedes their force and applicability to the Court's evaluation of DA Defendants' Motion to Dismiss.

- *Ms. Benedetti* enjoys absolute prosecutorial immunity too for any role she played in deciding whether probable cause existed for the retrial, for participating in the retrial proceedings, for preparatory activities in preparation for the retrial (apart from meeting with L.C. Jackson), and for conduct during the retrial including suggesting the court appoint counsel for Mr. Jackson, allegedly failing to disclose police reports, allegedly manufacturing testimony of Mr. Howard, granting Ms. Burke testimonial immunity and calling her as a witness, and offering Plaintiff an ***Alford*** plea [*see* ECF No. 57 at 7-8]. This is so because all such preparation was intimately connected to her prosecutorial role in the judicial proceedings. *See **Nielander***, 582 F.3d at 1164; ***Mink***, 482 F.3d at 1261; *see also **Imbler v. Pachtman***, 424 U.S. 409, 413, 430 (1976) (knowing use of false testimony and suppression of material evidence); ***United States v. Serrano***, 406 F.3d 1208, 1218 (10th Cir.) (decision to grant witness immunity within prosecutorial discretion), *cert. denied,* 546 U.S. 913 (2005); ***Diaz-Colon v. Fuentes-Agostini***, 786 F.3d 144, 151 (1st Cir. 2015) (absolute immunity for presenting testimony known by the prosecutor to be false); ***Scott v. Cent. Maine Power Co.***, 709 F. Supp.

1176, 1190 (D. Me. 1989) (prosecutor absolutely immune for plea discussions). By neither citing nor discussing *Serrano*, *Diaz-Colon*, or *Scott*, Plaintiff concedes their force and applicability to the Court's evaluation of DA Defendants' Motion too.

Plaintiff then relies on several decisions that do not support his claims:

- Plaintiff suggests *Spurlock v. Thompson*, 330 F.3d 791 (6th Cir. 2003), supports the denial of absolute immunity to Mr. Morrissey for his 2007 evaluation of the merits of Plaintiff's existing case file. That reliance is misplaced because *Spurlock*, 330 F.3d at 799, expressly recognized "professional evaluation of the evidence" (which is what Mr. Morrissey did) signals the propriety of absolute immunity.[5]

- Plaintiff similarly relies on *Spurlock* to support denial of absolute immunity to Ms. Benedetti for her preparation for Plaintiff's retrial and her advocacy-oriented acts leading up to and during the retrial itself. But *Spurlock*, *id.* at 798, held prosecutorial decisions about witnesses' trial testimony—which includes almost all actions Plaintiff attributes to Ms. Benedetti—are "activities intimately associated with the judicial phase of a criminal trial" and, thus, are protected by absolute prosecutorial immunity.[6]

- Plaintiff relies on *Odd v. Malone*, 538 F.3d 202 (3d Cir. 2008), for the proposition a prosecutor bears the burden to show entitlement to absolute immunity. Although this proposition is unremarkable, Plaintiff errs in suggesting DA Defendants

---

[5] If under *Spurlock* it is legally significant no ongoing adversarial proceedings occurred at the time periods Mr. Morrissey took actions for which Plaintiff seeks to hold him liable, then logically Mr. Morrissey cannot be liable for a nonexistent "continuing prosecution" of Plaintiff. Plaintiff cannot be allowed to partake in the grand tradition of having his cake and eating it too. *Cf. Emerson v. Wembley U.S., Inc.*, 433 F. Supp. 2d 1200, 1214 n.8 (D. Colo. 2006).

[6] And if, by citing *Spurlock*, Plaintiff intends to argue Ms. Benedetti is not absolutely immune for her role in interviewing L.C. Jackson, DA Defendants already explained multiple times such an action is more suited for assessment under the rubric of qualified immunity.

have not discharged this burden here as to Mr. Morrissey and Ms. Benedetti. The reality

is that, as to each alleged act for which DA Defendants assert absolute immunity, they

have specifically identified case law establishing their entitlement to such immunity.

- Plaintiff relies on ***Masters v. Gilmore***, 663 F. Supp. 2d 1027, 1040 (D. Colo.

2009), for the proposition "destruction and/or hiding of material exculpatory evidence

and manufacture of false evidence" is not entitled to absolute immunity. Again, such

reliance is misplaced: for Ms. Benedetti, ECF No. 47 fails to allege she hid exculpatory

evidence (and her interview with L.C. Jackson is addressed under the qualified

immunity rubric); and for Mr. Morrissey, ECF No. 47 lacks allegations of Mr. Morrissey's

personal participation for which mere "authorization and consent" cannot suffice. *See*

***Brown***, 662 F.3d at 1165; ***Trujillo***, 465 F.3d at 1227; ***Beedle***, 422 F.3d at 1072.

- Plaintiff similarly errs in relying on ***Buckley v. Fitzsimmons***, 509 U.S. 259

(1993). Contrary to Plaintiff's suggestion, the act of evaluating the merits of an already-

convicted felon's existing file well after his conviction (which is what Mr. Morrissey did)

is emphatically not an "investigative function[] normally performed by a detective or

police officer," *id.* at 273 That's especially true because the alleged actions of the

***Buckley*** prosecutors occurred before the plaintiff even was arrested, *id.* at 274-75.

- Finally, Plaintiff errs in relying on ***Burns v. Reed***, 500 U.S. 478 (1991). In

***Burns***, the Supreme Court recognized that, when a prosecutor asserts entitlement to

absolute immunity, the ultimate inquiry is "whether the prosecutor's actions are closely

associated with the judicial process," under which focus the provision of legal advice to

the police did not bear such close association. *Id.* at 495. Here, unlike in ***Burns***, the

alleged conduct — a post -trial, post-conviction, post-sentencing review of an already-

convicted felon's existing case file to render professional prosecutorial judgment about the validity of the conviction; obtaining and evaluating evidence in preparation for a retrial; and conducting retrial — ***do*** bear close association to the judicial process. Consequently, Mr. Morrissey and Ms. Benedetti enjoy absolute immunity for all such discrete acts, particularly because no ***Brady*** claim can be asserted since Plaintiff was acquitted upon retrial. *See **Tiscareno v. Frasier***, 603 F. App'x 672, 679-80 (10th Cir. 2015); ***Morgan v. Gertz***, 166 F.3d 1307, 1310 (10th Cir. 1999).

**Qualified Immunity:** Additionally, as previously explained in DA Defendants' Motion and as reiterated in this Reply, Mr. Morrissey, Ms. Benedetti, Ms. Kimbrough, and Mr. Carroll are all entitled to qualified immunity on Plaintiff's malicious prosecution claim. Importantly for purposes of this Court's assessment of ECF No. 47 and DA Defendants' dismissal efforts, and in light of Plaintiff's attempt to meld the discrete conduct of each DA Defendant into a malicious prosecution claim, an offering of "facts by the truckload" is not enough to meet a plaintiff's burden to oppose the assertion of entitlement to qualified immunity. ***Tonkovich v. Kan. Bd. of Regents***, 159 F.3d 504, 534 (10th Cir. 1998); *id.* at 532 ("Pages and pages of facts are no substitute for citations to clearly established law.").

- *Mr. Morrissey* is entitled to qualified immunity for background evaluation for and the issuance of the "Setting the Record Straight" press release because he reasonably could conclude the press release accurately reported the content of the record at trial and the evidence available at the time supported the press release. *See **Bertuglia v. City of N.Y.***, 133 F. Supp. 3d 608, 648-49 (S.D.N.Y. 2015), *aff'd,* 672 F. App'x 96 (2d Cir. 2016), *cert. denied,* 138 S.Ct. 78 (2017); [*see also* ECF No. 57 at 17-

18, to which Plaintiff offered no substantive rebuttal]. He is further entitled to qualified immunity and dismissal of the malicious prosecution claim based on the supervisory activities in the Denver DA's Office because, at bottom, the Amended Complaint alleges no more than Mr. Morrissey's alleged failure to direct subordinates to avoid violating the Constitution, which does not create a constitutional violation. *See Whitfield v. City of Phila.*, 587 F. Supp. 2d 657, 667-68 (E.D. Pa. 2008). He is also entitled to qualified immunity for his legislative activities because no clearly established law before April 2008 held a District Attorney violates anyone's constitutional rights when he responds in writing to a specific request from state legislators and testifies before a state legislative committee about pending legislation possibly impacting the future course of a convicted defendant's continued stay in prison. *Cf. White v. Pauly*, 137 S.Ct. 548, 551 (2017) (per curiam).

- *Ms. Benedetti and Mr. Carroll* are entitled to qualified immunity for participating in the summer 2015 interview of L.C. Jackson because at that time, there was no Tenth Circuit or Supreme Court decision holding an allegedly fraudulently obtained recantation used in the course of a retrial ***resulting in acquittal*** violated anyone's constitutional rights. *See Tiscareno*, 603 F. App'x at 679-80; ***Morgan***, 166 F.3d at 1310; ***Stillwagon v. City of Delaware***, 175 F. Supp. 3d 874, 900, 901 (S.D. Ohio 2016).

- *Ms. Kimbrough* is entitled to qualified immunity for every press inquiry she fielded and every email she sent, not only because no clearly established law indicated a prosecutor's press spokesperson acts unconstitutionally by responding to legitimate press inquiries about a matter of public concern and doing nothing more than

articulating the DA's Office's perspective of ongoing criminal proceedings, but also because Plaintiff was found not guilty at his retrial, foreclosing a malicious prosecution claim based on alleged reputational injury alone, *see Paul v. Davis*, 424 U.S. 693, 694, 711-12 (1976).

Plaintiff's reliance on *Padilla v. Yoo*, 633 F. Supp. 2d 1005, 1031 (N.D. Cal. 2009), *rev'd*, 678 F.3d 748 (9th Cir. 2012), for the proposition a court should not "eviscerate" the notice pleading standard, is misplaced for multiple reasons: (a) the *Padilla* decision denying qualified immunity was not merely reversed on other grounds, but reversed in full, *see* 678 F.3d at 757-58, 768 (relying on and explaining *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)); and (b) it's hornbook law no mere "notice pleading" exists following the plausibility pleading standard imposed by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Padilla*'s citation of pre-*Iqbal* case law renders its entire analysis unreliable. And Plaintiff's reliance on *Peterson v. Jensen*, 371 F.3d 1199 (10th Cir. 2004), for a similar proposition is misplaced too, because *Peterson* also predates *Twombly* and *Iqbal*.

And Plaintiff's continued reliance on *Pierce*, 359 F.3d 1279, is erroneous because the allegedly falsified evidence in *Pierce* was actually used to secure the plaintiff's conviction, *see id.* at 1282, but here the use of any allegedly falsified evidence resulted in no conviction and nothing more than a not guilty jury verdict. *But see id.* at 1300 ("Rather, as alleged, [the defendant] engaged in a deliberate attempt to ensure the prosecution *and conviction* of an innocent man." (emphasis added)).

Moreover, in citing the legislative history behind the statute governing the Petition filed by Plaintiff in Colorado state court, namely C.R.S. §§ 13-65-101 to -103, Plaintiff

ignores the legislature's clear statement it intended to complement the existing state law tort of malicious prosecution. The elements of this tort are set forth in ***Hewitt v. Rice***, 154 P.3d 408, 411 (Colo. 2007), which DA Defendants cited in their Motion. [ECF No. 57 at 17.] If Colorado's tort law was already held to preclude a malicious prosecution claim, *see **Myers***, 738 F.3d at 1193, then surely the state tort of malicious prosecution (along with C.R.S. §§ 13-65-101 to -103) provide an adequate, if complementary, state remedy barring Plaintiff's claim.

Finally, not only does Plaintiff's Response clearly reveal he continues his pattern of defining (impermissibly) the scope of DA Defendants' conduct and his constitutional rights in the stratosphere of generality, *see **Plumhoff***, 134 S.Ct. at 2023, but also all of the above cases, combined with all authorities DA Defendants cited and explained in their Motion, direct the conclusion it was not "beyond debate" the particular actions of DA Defendants in the particular factual context in which they arose violated any clearly established law. *See **Mullenix v. Luna***, 136 S.Ct. 305, 308 (2015) (per curiam).

### III.  Plaintiff's Destruction Of Exculpatory Evidence Claim Fails For Want Of Adequate Factual Allegations And Due To The Application Of Absolute Immunity And Qualified Immunity As Appropriate

Plaintiff then contends his destruction-of-evidence claim against Mr. Whitley is well-pled and Mr. Whitley is not entitled to immunity on this claim. Plaintiff is wrong.

**Materiality (element 1):** Plaintiff's claim on its merits fails the first element of constitutional materiality. Plaintiff alleges "had the evidence not been destroyed, the DNA testing would have shown that Mr. Moses-EL was not the individual who assaulted T.S." [*See* ECF No. 47 at ¶ 172.] But this is a classic example of a conclusory allegation not entitled to the imprimatur of fact under Rule 12, because it is undisputed the

evidence never *was* tested and so at most its value to Plaintiff's defense was indefinite, causing this claim to exist only in the realm of "potentially exculpatory evidence," the constitutional materiality of which is completely unknown. *See Turner v. Dumanis*, No. 08-0360-W-RBB, 2009 U.S. Dist. LEXIS 16508, at *30-31 (S.D. Cal. Mar. 3, 2009); *Saxton v. Lucas*, 15-cv-00255-CMA-MJW, 2015 U.S. Dist. LEXIS 148304, at *11 n.2 (D. Colo. Oct. 27, 2015) (in "quite conclusory" destruction-of-evidence claim, "specific factual allegations show nothing more than negligently failing to investigate or preserve evidence"). As Plaintiff admits in the Amended Complaint, but tellingly deemphasizes in his Response, in the course of Plaintiff's 1988 trial his public defender, a licensed attorney, pointedly declined to request any testing of available DNA evidence, including the physical items central to Plaintiff's destruction-of-evidence claim, despite the existence of *all of it* being disclosed to said public defender during the original pretrial and trial proceedings. [ECF No. 47, ¶ 94.] Thus, *Brady v. Maryland*, 373 U.S. 83 (1963), has no relevance to this claim because this evidence's existence never was hidden from the defense. Likewise, the actions of Plaintiff's trial team in 1988 constitute precisely the sort of superseding intervening cause that bars the evidence from being labeled, in any respect, "constitutionally material." *Scott v. Hern*, 216 F.3d 897, 911 (10th Cir. 2000) ("but for" causation must sufficiently appear in complaint); *Bliss*, 446 F.3d at 1046-47 (reasonable foreseeability principles apply).

    **Bad Faith (element 2):** Moreover, Plaintiff's claim on its merits fails the second element of bad faith. All allegations in ECF Nos. 47 and 80 asserting Mr. Whitley "destroyed" DNA evidence in Plaintiff's case are wholly meritless and conclusory, as the Amended Complaint itself admits. [*See* ECF No. 47, ¶¶ 151-178.] Thus, the ***only***

appropriate basis for the Court to assess this claim is through the lens of an alleged failure to act in a reasonably prudent way to ensure evidence was not destroyed. *See, e.g.*, ***United States v. Bohl***, 25 F.3d 904, 910 (10th Cir. 2004) ("mere fact that the government controlled the evidence and failed to preserve it is by itself insufficient to establish bad faith"); ***Riggs v. Williams***, 87 F. App'x 103, 106 (10th Cir. 2004). Indeed, no allegations plausibly support any argument Mr. Whitley took any affirmative act with the conscious effort to suppress evidence. *See **Monzo v. Edwards***, 281 F.3d 568, 580 (6th Cir. 2002) ("When the government is negligent, or even grossly negligent, in failing to preserve potentially exculpatory evidence, bad faith is not established."); ***Dearstyne v. Mazzuca***, 48 F. Supp. 3d 222, 259 (N.D.N.Y. 2011) ("mere negligence does not constitute bad faith"); *cf.* ***Villasana v. Wilhoit***, 368 F.3d 976, 980 (8th Cir. 2004) ("Acting in accordance with agency policy tends to show good faith rather than bad, whether or not the policy is sound.") (affirming dismissal of § 1983 claims).

Plaintiff's reliance on ***Armstrong v. Daily***, 786 F.3d 529 (7th Cir. 2015), for several arguments, is misplaced. In ***Armstrong***, investigators found drug paraphernalia at the victim's murder scene, but these items were never examined for fingerprints or subjected to any other forensic testing, instead being tossed into a large plastic trash bag and left in an office storage locker at the police station, only to be lost. *Id.* at 533. As to the plaintiff's claim against a district attorney relating to the drug paraphernalia, the Seventh Circuit held the plaintiff "sufficiently alleged facts that [defendant] knew the evidence had significant exculpatory value and acted in bad faith." *Id.* at 547. Critical to the Seventh Circuit's conclusion were the following additional factual allegations:

> The complaint states that [defendant] admitted under oath in a 2009 state court hearing on prosecutorial misconduct that "from the beginning he believed the Plaintiff guilty of the rape and murder of Charise Kamps, and would never believe otherwise no matter what exculpatory evidence exonerated the Plaintiff or pointed to another suspect." The complaint also contains other allegations that paint [defendant] as pursuing [the plaintiff] through any means necessary, including violating court orders on access to evidence and suppressing the post-conviction report that Stephen Armstrong had confessed to Kamps' murder. These allegations are more than sufficient to allow the inference that [defendant] was acting in bad faith.

*Id.* at 547. The Seventh Circuit held these direct disclosures of the defendant's state of mind "permit the reasonable inference that [defendant] acted in bad faith to cause the loss of this potentially exculpatory evidence." *Id.* In sharp contrast, the Amended Complaint contains no such direct disclosures of Mr. Whitley's state of mind, but rather over several factual allegations openly admits Mr. Whitley took steps reasonably calculated to ensure the preservation of evidence, to wit: he verbally "instructed" Ann Perry, a forensic serologist with the Denver Police Department, to preserve any samples of Plaintiff's DNA still available, and Ms. Perry caused this directive to be reiterated in her notation of "HOLD FOR DA ROBIN WHITLEY" on the property invoice relative to the DNA samples. [ECF No. 47, ¶¶ 151-153, 160.] Rather, the Amended Complaint ***does*** allege facts directly disclosing the state of mind of James Huff, the DPD detective who received a memorandum directing the physical evidence relative to Plaintiff's case to be reentered and evaluated for DNA samples. [*Id.*, ¶¶ 159-160, 163.]

Also in ***Armstrong***, state lab technicians tested a semen stain on the victim's bathrobe belt and concluded the plaintiff was "eliminated as the source" of the DNA. 786 F.3d at 535. Despite these clearly exculpatory results, the prosecutor ordered the same state lab technicians to conduct additional DNA testing on the stain without telling the

plaintiff's defense team of the testing or its results, which testing consumed the entire DNA sample yet gave inconclusive results neither confirming nor eliminating the plaintiff as a possible source of the stain. *Id.* at 535-36. Almost 30 years after the plaintiff's original trial, a state court held the State acted in bad faith in destroying this evidence. *Id.* Critical to the Seventh Circuit's analysis were the allegations the prosecution ***knew*** of the DNA evidence's exculpatory value due to the state lab technician's affirmative report advising the plaintiff was eliminated yet still conducting the second test which both provided inconclusive results and destroyed the entire sample. *Id.* at 552, 554, 557 ("destroying a semen stain that had previously tested negative for [plaintiff]'s DNA"). In contrast, the facts underlying the DNA evidence referenced in the Amended Complaint are Plaintiff's own trial team making the affirmative decision not to have it tested and it in fact ***never*** being tested despite Mr. Whitley's attempts to ensure its preservation, meaning no one had any idea whether it was constitutionally material. [ECF No. 47, ¶¶ 94, 151-153, 160.] All other allegations in the Amended Complaint constitute rank, conclusory speculation on the evidence's alleged exculpatory value, which cannot be credited as factual on a motion to dismiss. *See **Kan. Penn Gaming***, 656 F.3d at 1214.

As a result, Plaintiff's claim is only in the realm of potentially exculpatory evidence and no other, meaning Plaintiff had to include sufficient factual allegations plausibly creating a reasonable inference of volitional bad faith faith, which he has failed to do. *See **Arizona v. Youngblood***, 488 U.S. 51, 57-58 (1988) (same); ***California v. Trombetta***, 467 U.S. 479, 488 (1984) ("conscious effort to suppress" evidence must be adequately alleged); *see also **Monzo***, 281 F.3d at 580; ***Saxton***, 2015 U.S. Dist. LEXIS 148304, at *11 n.2; ***Dearstyne***, 48 F. Supp. 3d at 259. By neither citing nor discussing

*Dearstyne*, *Monzo*, or *Saxton*, Plaintiff concedes their force and applicability to the Court's evaluation of DA Defendants' Motion to Dismiss.

**Absolute Immunity:** Plaintiff does not challenge DA Defendants' citation or explanation of either *Gradle v. Oklahoma*, 203 F. App'x 179, 182-83 (10th Cir. 2006), under which a prosecutor is absolutely immune where there can be no inference from the facts alleged the prosecutor actively participated in destruction of evidence, or *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991), under which a prosecutor is absolutely immune for allegedly not conducting an adequate investigation. Plaintiff therefore concedes their force and applicability to the Court's analysis.

**Qualified Immunity:** In light of *Bohl*, 25 F.3d 904, and *Riggs*, 87 F. App'x. 103, both of which require sufficient factual allegations of bad faith as to alleged failure to preserve potentially exculpatory evidence (the only kind of evidence at issue here), and in light of *Gradle*'s direction of absolute immunity where the prosecutor did not actively participate in destruction of evidence, there is no persuasive argument from Plaintiff as to the existence of clearly established law in 1996 putting a district attorney defendant on notice his affirmative (but unavailing) steps to ensure preservation of such evidence violated anyone's constitutional rights. Plaintiff's argument as to Fed. R. Civ. P. 9(b), and his alleged ability to offer bare accusations of bad faith without pleading sufficient facts to substantiate those accusations, is nonsensical. *See Brown*, 662 F.3d at 1165; *Trujillo*, 465 F.3d at 1227; *Beedle*, 422 F.3d at 1072. Plaintiff's allegations against Mr. Whitley amount to a mere failure to act, *i.e.* mere negligence, which cannot support a § 1983 claim. *Quezada v. Cnty. of Bernalillo*, 944 F.2d 710, 714 (10th Cir. 1991) (§

1983 "creates no rights" and "is not a carte blanche statute authorizing recovery for

negligence or other common law torts standing by themselves").

Plaintiff's reliance on ***United States v. Smith***, 534 F.3d 1211 (10th Cir. 2008), is

equally erroneous, as ***Smith*** was a direct appeal of a criminal conviction and no case

applies the test in ***Smith*** or either case on which ***Smith*** relies in the § 1983 context.

Plaintiff's reliance on ***Gentry v. Johnson***, 95 F.3d 1149, 1996 U.S. App. LEXIS

43513 (5th Cir. 1996), is misplaced because there (1) the plaintiff appealed the denial of

his habeas petition rather than bringing a § 1983 action, and (2) the Fifth Circuit held the

prosecution's bad faith was neither adequately alleged nor proved. ***Id.*** at *1, 24-25.

And Plaintiff's reliance on ***Bolden v. City of Chicago***, No. 17-CV-417, 2017 U.S.

Dist. LEXIS 203638 (N.D. Ill. Dec. 12, 2017), is unavailing, because: (1) in ***Bolden*** the

defendant law enforcement officers actually destroyed the evidence at issue, whereas

Mr. Whitley did not destroy anything; (2) the officers actually testified at the plaintiff's

criminal trial, whereas Mr. Whitley did not participate in proceedings that culminated in

Plaintiff's original trial; and (3) the officers actively fabricated evidence actually used in

the plaintiff's original trial, whereas there is no allegation any DA Defendant fabricated

anything used in Plaintiff's original trial. *See **id.***

## IV.  Plaintiff's Manufacture Of False Inculpatory Evidence Claim Fails For Want Of Adequate Allegations As To Causation And Due To The Application Of Absolute Immunity And Qualified Immunity As Appropriate

Plaintiff next contends his manufacture-of-inculpatory-evidence claim against Ms.

Benedetti and Mr. Carroll is well-pled and these Defendants are not entitled to immunity

on this claim. Plaintiff again errs.

**No Actual Conviction Obtained Thereby:** Part and parcel to adequate pleading of this claim, which Plaintiff ignores, is an actual conviction as a result of the alleged wrongful acts of Ms. Benedetti and Mr. Carroll. This is so because, "[r]egardless of any misconduct by [them] before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial." ***Morgan***, 166 F.3d at 1310.

Plaintiff's reliance on ***Robinson v. Maruffi***, 895 F.2d 649 (10th Cir. 1990), is misplaced, for (1) all allegedly unconstitutional acts in ***Robinson*** actually were used to obtain the plaintiff's conviction and original incarceration, (2) all individual defendants in ***Robinson*** were involved in Plaintiff's criminal proceedings at the time of his first trial, and (3) in the case on which ***Robinson*** relies for much of its reasoning as to causation, ***Jones v. City of Chicago***, 856 F.2d 985, 994 (7th Cir. 1988), law enforcement officials were held liable for being "instrumental in the plaintiff's continued confinement or prosecution," but DA Defendants do not qualify under either ***Robinson*** or ***Jones*** because the Amended Complaint does not allege L.C. Jackson's allegedly fraudulently obtained recantation was used at Plaintiff's retrial (in contrast to the testimony of Dr. Kathren Brown-Dressel, which was),[7] and no conviction resulted from the use of any testimony of Floyd Wesley Howard.

Plaintiff's reliance on ***Anthony v. Baker***, 767 F.2d 657 (10th Cir. 1985), also is unpersuasive, because (1) unlike the individual defendant in ***Anthony***, who was involved directly in procuring an indictment against the plaintiff and in being the special

---

[7] *See* ECF No. 47, ¶ 354 ("On information and belief, her continued, deliberate mischaracterizations substantially contributed to the Denver DA Office's decision to continue to prosecute Mr. Moses-EL through a second criminal trial, which resulted in him being under bond conditions for nearly a year."). This causal language is not attributed to any DA Defendant.

investigator at the plaintiff's grand jury, Ms. Benedetti and Mr. Carroll were not involved in Plaintiff's original investigation or trial; and (2) the focus of the claim in **Anthony** was on an alleged conspiracy to procure an indictment and charges in the first instance, *see id.* at 662, not a freestanding claim for alleged manufacture of inculpatory evidence.

Plaintiff tries to distinguish **Stillwagon v. City of Delaware**, 175 F. Supp. 3d 874 (S.D. Ohio 2016), on the ground it implemented only Sixth Circuit precedent. This argument is erroneous. **Stillwagon**'s reasoning makes sense in every circuit: a plaintiff who is acquitted at trial, and thus is unable to assert a **Brady** claim, cannot assert a free-standing claim for non-**Brady** acts logically falling within the purview of a **Brady** claim (such as, *inter alia*, the alleged fabrication of inculpatory evidence). **Id.** at 900-01.

**Absolute Immunity for Ms. Benedetti:** After Plaintiff's conviction was vacated, Mr. Benedetti allegedly investigated Mr. Howard's recollection and testimony and used his testimony at the retrial. For those acts, Ms. Benedetti is entitled to absolute immunity, because such immunity attaches to "administrative or investigative activities when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." **Mink**, 482 F.3d at 1261; *see* **Nielander**, 582 F.3d at 1164; *see also* **Imbler**, 424 U.S. at 413, 430; **Diaz-Colon**, 786 F.3d at 151.

**Qualified Immunity:** Plaintiff distorts Ms. Benedetti's and Mr. Carroll's argument on their entitlement to qualified immunity. Ms. Benedetti and Mr. Carroll enjoy qualified immunity because, prior to Plaintiff's retrial, no clearly established law would have made actionable the conduct that Plaintiff alleges — i.e., inappropriate witness interviews or obtaining of a witness' weak memory — when such acts **were not used to secure a conviction**. The **Stillwagon** decision, 175 F. Supp. 3d 874, is proof positive of that

reality. As previously noted, the *Pierce* decision is readily distinguishable, and Plaintiff's continued reliance on said case is wholly erroneous. In the absence of clearly established law supporting his claims, Plaintiff cannot upend these defendants' entitlement to qualified immunity.

### V.  Plaintiff's § 1983 Conspiracy Claim Fails For Want Of Adequate Factual Allegations And Due To The Application Of Qualified Immunity

Plaintiff then contends his § 1983 conspiracy claim against Mr. Morrissey, Ms. Benedetti, Ms. Kimbrough, and Mr. Carroll is well-pled and they are not entitled to immunity on this claim. Plaintiff is once again incorrect.

DA Defendants agree that, to assert a § 1983 conspiracy claim, Plaintiff must plead, with specific and non-conclusory allegations, the following elements: (1) a combination of two or more persons acting in concert; (2) a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective; and (3) specific facts showing an agreement and concerted action amongst the defendants. *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010).

**Facts Showing Agreement and Concerted Action (element 3):** The teaching of *Brooks*, 614 F.3d 1213, is a plaintiff fails to adequately allege a conspiracy where no underlying constitutional violation was committed—and, by extension, no amount of "perceived inconsistencies" in the actions of various defendants suffices to impose an inference or conclusion they acted in concert. *See id.* at 1228. Hence, in determining whether the conspiracy was adequately alleged, this court cannot consider any act for which a DA Defendant enjoys absolute prosecutorial (or legislative) immunity. Likewise, no act or omission of a DA Defendant against whom the conspiracy claim was not

brought (Mr. Whitley) can be considered. When all such allegations are excluded, all that remains in furtherance of the alleged conspiracy are a few disconnected acts well after Plaintiff's original criminal trial which are just as consistent with parallel conduct as with a conspiracy, namely: Mr. Morrissey's testimony before the General Assembly in 2008 as to legislation potentially impacting the future course of a convicted defendant's continued stay in prison; Ms. Benedetti's and Mr. Carroll's interview of L.C. Jackson in 2015; and Ms. Kimbrough's responses to the press inquiries. By any standard, Plaintiff pleads no affirmative link among these acts that would suffice to establish concerted action (apart from the entirely conclusory allegation that DA Defendants' actions were consciously directed at a campaign to keep him behind bars).

Plaintiff argues he can allege parallel conduct without reasonably contextualizing it, which fails to appreciate his own burden at the pleading stage. In ***Twombly***, the Supreme Court addressed the new pleading burden for conspiracy claims, to wit:

> [A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out ... they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

***Twombly***, 550 U.S. at 556-57 (interpreting 15 U.S.C. § 1). The Tenth Circuit applies this analysis to motions to dismiss § 1983 conspiracy claims. ***Gee v. Pacheco***, 627 F.3d 1178, 1183 (10th Cir. 2010). The Amended Complaint not only does not satisfy this standard, but also lacks factual allegations even hinting anyone involved in Plaintiff's 1988 trial interfaced with Mr. Morrissey, Ms. Benedetti, Ms. Kimbrough, or Mr. Carroll.

Plaintiff again relies on cases that do not support his claim:

- Plaintiff's reliance on ***Brill v. Correct Care Sols., LLC,***, 286 F. Supp. 3d 1210, 1218 (D. Colo. 2018), and ***Brever v. Rockwell Int'l Corp.***, 40 F.3d 1119, 1126 (10th Cir. 1994), to argue that analysis of a § 1985 conspiracy claim is relevant at all to Plaintiff's § 1983 conspiracy claim, is unwarranted. As the Tenth Circuit made abundantly clear in ***Brooks***, 614 F.3d at 1227-28, "many differences exist between § 1983 and § 1985 for the purpose of alleging an actionable conspiracy" causing cases interpreting the elements of the second to have no bearing on the elements of the first apart from the simple fact the elements of a claim under both statutes are the same.

- Plaintiff's reliance on ***White v. McKinley***, 519 F.3d 806 (8th Cir. 2008), also is misplaced. The Eighth Circuit wisely observed only evidence supporting a "reasonable" inference of a conspiracy will suffice for a plaintiff's burden as to this element of his conspiracy claim. ***Id.*** at 816. Here, the Amended Complaint simply lacks sufficient facts supporting the requisite reasonable inference these DA Defendants conspired against Plaintiff—the few alleged acts are too attenuated, both causally and temporally.

- Plaintiff's reliance on ***White v. Smith***, 696 F.3d 740 (8th Cir. 2012), is misguided too, because the individual defendants there were involved in the original investigation, arrest, and trial of the plaintiff (whereas no DA Defendant is so positioned) and due to the facts in ***White*** showing a plethora of acts taken in a very concentrated period of time (a mere ten months, January 1989 to October 1989) and simultaneously with each other, *see **id.*** at 744-52 — a very different situation from the limited and causally and temporally attenuated acts in the Amended Complaint. And Plaintiff's reliance on ***Dean v. Cnty. of Gage***, 807 F.3d 931 (8th Cir. 2015), is misplaced as well because it was decided based on the same underlying facts as ***White***, 696 F.3d 740.

- Finally, Plaintiff's reliance on ***Parkway Garage, Inc. v. City of Phila,***, 5 F.3d 685, 700 (3d Cir. 1993); ***Cameo Convalescent Ctr., Inc. v. Senn***, 738 F.2d 836, 841 (7th Cir. 1984); ***Thomas v. City of New Orleans***, 687 F.2d 80, 83 (5th Cir. 1982); and ***Crowe v. Lucas***, 595 F.2d 985, 993 (5th Cir. 1979), to argue "courts have also found conspiracies from circumstantial evidence of meetings, motive, and unconstitutional behavior," is distinguishable because none of those cases operated in a world subject to the pleading standards of ***Twombly*** and ***Iqbal*** and because, in each such case, the acts supporting the alleged conspiracy were either too close together in time or too egregious to admit of comparison to Plaintiff's allegations against DA Defendants.

**Qualified Immunity:** Nothing in Plaintiff's Response calls into question DA Defendants' entitlement to qualified immunity on Plaintiff's conspiracy claim. Initially (as set forth above), the Amended Complaint lacks sufficient factual allegations indicating anything Mr. Morrissey, Ms. Benedetti, Ms. Kimbrough, and Mr. Carroll did violated Plaintiff's constitutional rights or created a constitutional violation.

Regarding clearly established law, DA Defendants are aware a defendant would properly be on notice by a Tenth Circuit or Supreme Court case involving "materially similar conduct" or facts applying "with obvious clarity" to the conduct. *See **Lowe v. Raemisch***, 864 F.3d 1205, 1208 (10th Cir. 2017). Conversely, if no DA Defendant had reason to know his or her individual conduct was unlawful, then none could have known a § 1983 conspiracy could metastasize out of their unconnected and lawful acts.

Plaintiff's reliance on ***Lowe***, 864 F.3d 1205, is misplaced. In that case, the Tenth Circuit concluded "competent public officials could reasonably have viewed our precedents as inapplicable. As a result, competent officials could reasonably disagree

about the constitutionality of [the conduct]. In light of this room for reasonable disagreement, the defendants are entitled to qualified immunity." *Id.* at 1212. At a minimum, the same thing can be said of DA Defendants.

Also, Plaintiff's reliance on *S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs*, 725 F.3d 843, 853 (8th Cir. 2013), is unavailing, not only because the specific facts Plaintiff alleges do not give rise to an inference any DA Defendant acted to cover up anyone's misdeeds, but also because no DA Defendant could have been put on notice it was unconstitutional to determine to believe the victim of the crime. *See Easton*, 776 F.2d at 1448, 1450-51 (inconsistencies in a witness's statement do not negate probable cause).[8]

Plaintiff relies on *Brever*, 40 F.3d at 1126, and *Crabtree By & Through Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990), to argue one who merely alleges a conspiracy claim is entitled to discovery thereon regardless of any other matter. That reliance is just wrong because such argument upends the concepts of qualified immunity, *see Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed."); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("[I]f the defendant does plead the immunity defense, the district court should resolve that threshold question before permitting discovery."), and of the plausibility pleading regime imposed by *Twombly* and *Iqbal*. And Plaintiff's reliance on *Anthony* is unwarranted for the reasons already explained.

---

[8] Here, it is critical to underscore the reality that the victim consistently identified Plaintiff as the perpetrator of the crimes against her and the victim's testimony was apparently believed by the original jury who convicted Plaintiff. DA Defendants' determination to believe the victim in light of this circumstance is not surprising, and cannot form the basis of any liability to Plaintiff.

**VI.  Plaintiff's § 1983 Fundamental Unfairness Claim Fails For Want Of Adequate Factual Allegations And Due To The Application Of Qualified Immunity**

Plaintiff next contends his fundamental unfairness claim against Mr. Morrissey, Ms. Benedetti, Mr. Whitley, and Mr. Carroll (he withdrew it as against Ms. Kimbrough) is well-pled and these Defendants are not entitled to immunity thereon. He is wrong.

Initially, DA Defendants disagree with Plaintiff's contention the elements of a § 1983 conspiracy claim also comprise the elements of his fundamental unfairness claim. Indeed, the scant development of this alleged constitutional tort indicates it may not even be cognizable. In the one case that would recognize such a claim under § 1983 (**Masters**), the court borrowed from habeas corpus law, *see **Reali v. Abbot**, 90 Fed. Appx. 319, 324 (10th Cir. 2004), meaning money damages may not be proper to redress it. Further, this claim arguably is subsumed in Plaintiff's malicious prosecution claim. *See **Masters***, 663 F. Supp. 2d at 1046 (argument fundamental unfairness claim is subsumed within malicious prosecution claim "may well be appropriate to revisit").

Nevertheless, to the extent this claim is cognizable and not subsumed within a malicious prosecution claim, and given that it does not involve a fundamental right but a liberty interest [ECF No. 47, ¶ 439], its elements more appropriately are those delineated in **County of Sacramento v. Lewis**, 523 U.S. 833, 850 (1998), to assess alleged arbitrary conduct by state executive officials. *See **Browder v. City of Albuquerque***, 787 F.3d 1076, 1078-79 & n.1 (10th Cir. 2015); *see also **Dawson v. Bd. of Cnty. Comm'rs***, ___ F. App'x ____, at *22-27 & nn.1-3, 2018 U.S. App. LEXIS 5946 (10th Cir. Mar. 9, 2018) (Tymkovich, J., concurring). These elements are: (1) the official's alleged actions must be "so egregious, so outrageous, that [they] may fairly be

said to shock the contemporary conscience," *Lewis*, 523 U.S. at 847 n.8; (2) the official

must have acted with a state of mind approximating "deliberate indifference," *Browder*,

787 F.3d at 1080, or "conscious disregard" of an obvious danger of constitutional injury,

*Lewis*, 523 U.S. at 854; and (3) due to the claim's purported cognizance under § 1983,

the plaintiff's injury must have been proximately caused by the allegedly deliberately

indifferent conduct, *see Bliss*, 446 F.3d at 1046; *see also Martinez*, 444 U.S. at 284-85

(relying on *Palsgraf*, 162 N.E. 99).

**No Shocking of Conscience (element 1) and No Conscious Disregard**

**(element 2):** Notwithstanding Plaintiff's inflammatory rhetoric, at bottom all DA

Defendants did here was to defend Plaintiff's conviction against the efforts of Plaintiff

and his advocates to litigate in the media, before the Colorado General Assembly. No

basis exists for this Court to hold the actual acts and omissions alleged against these

individuals shocks the conscience or were undertaken in a manner constituting the

conscious disregard of Plaintiff's constitutional rights.

**Causation (element 3):** For Plaintiff's first criminal prosecution, trial, conviction,

sentencing, or incarceration, because no DA Defendant was involved in obtaining any of

these, Plaintiff lacks the proximate cause required to impose liability on five individuals

who indisputably had nothing to do with his original prosecution, conviction, sentencing,

or incarceration, *see Martinez*, 444 U.S. at 284-85; *Martinez*, 697 F.3d at 1255; and (b)

for his second criminal trial, because Plaintiff received a not-guilty verdict, he can't claim

to have been denied his right to a fair trial due to any act of Mr. Morrissey, Mr. Whitley,

Ms. Benedetti, or Mr. Carroll. *See Tiscareno v. Frasier*, 603 F. App'x 672, 679-80 (10th

Cir. 2015); *Morgan*, 166 F.3d at 1310. Plaintiff offers only conclusory assertions to the

contrary. [*See* ECF No. 80 at 55-56.] Plaintiff's protestations Senate Bill 08-205 "would have provided [him] a new trial" are entirely conclusory, are inadequate to allege causation, and are not entitled to the designation of "fact" because, again, prior to the bill being approved for the Governor's signature, a sufficient number of legislators could have withdrawn their support so as to erode support for the bill, particularly based on the changes to legislation that typically occur during the legislative process.

Plaintiff relies on ***Howard v. City of Chicago***, No. 03-C-8481, 2006 U.S. Dist. LEXIS 19749 (N.D. Ill. 2006), and ***Patterson v. Burge***, 328 F. Supp. 2d 878 (N.D. Ill. 2004), for the proposition an individual capacity § 1983 claim is appropriate against a prosecutor who did not participate in any criminal proceedings of the plaintiff until the post-conviction stage. Such reliance is misplaced for three reasons: (1) in those case, the particular rights at issue — alleged right to be free from suppression of exculpatory evidence and alleged right to be free from defamation resulting in loss of constitutionally protected interest (all brought in support of ***procedural*** due process claim) — distinctly differ from the alleged right to fundamental fairness in criminal proceedings (brought in support of a ***substantive*** due process claim); (2) the alleged conduct in those cases — covering up evidence of torture in police interrogations — is much more egregious than the acts alleged in the Amended Complaint;  and (3) the case on which both opinions relied, ***Houston v. Partee***, 978 F.2d 362, 368 (7th Cir. 1992), only allowed a claim to proceed for the post-conviction conduct of the prosecutors ***who actually participated in the plaintiff's original trial***, making any extension of ***Houston*** improper here.

**Qualified Immunity:** The fact ***Masters*** is the only opinion ***ever*** to recognize a § 1983 claim for alleged violation of a right to be free from fundamental unfairness in

criminal proceedings also signals there was no clearly established law on point to highlight to any DA Defendant they were violating any right of Plaintiff to fundamental fairness. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("[D]istrict court decisions--unlike those from the courts of appeals--do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity."); *Doe v. Univ. of Colo.*, 255 F. Supp. 3d 1064, 1085 (D. Colo. 2017) (same) (dismissing claim). This is particularly true since *Masters* was decided in 2009, thus preventing the case from creating any clearly established law for any later-occurring act or omission.

Moreover, since no conviction resulted from Plaintiff's second trial, it cannot be said any constitutional violation occurred from the retrial. *See Tiscareno*, 603 F. App'x at 679-80; *Morgan*, 166 F.3d at 1310; *Sequeira v. McClain*, No. 15-cv-02587-PAB-MEH, 2017 U.S. Dist. LEXIS 49246, at *29 (D. Colo. Mar. 31, 2017) ("[P]laintiff's fifth and sixth claims fail to state a claim on which relief can be granted because they allege injury based on deprivation of the right to a fair trial when plaintiff was not convicted.").

### VII. Plaintiff's § 1983 Fundamental Unfairness Supervisory Liability Claim Against Mr. Morrissey Fails For Want Of Adequate Factual Allegations And Due To The Application Of Qualified Immunity

Plaintiff finally argues his supervisory-liability fundamental unfairness claim against Mr. Morrissey is well-pled and Mr. Morrissey is not immune. He is incorrect.

**Causation:** Plaintiff incorrectly states his "fundamental unfairness" supervisory liability claim against Mr. Morrissey directly relates to the alleged conspiracy against Plaintiff. He is wrong, as neither the word "conspiracy," nor a variation of the same, nor an allusion to or echo of the same appears in Plaintiff's Seventh Claim for Relief. [*See* ECF No. 47, ¶¶ 444-451.] Once again, Plaintiff tries to augment the claims in ECF No.

47 through additional factual allegations, which the Court must disregard. *Gee*, 627 F.3d at 1186; *Glenn*, 868 F.2d at 369-71. Thus, Plaintiff's supervisory liability fundamental unfairness claim against Mr. Morrissey relates *only* to the leadup to Plaintiff's second criminal trial, the decision to re-try Plaintiff, and the evaluation and preparation in furtherance of same. Consequently, the claim is not cognizable because Plaintiff was found not guilty at the end of the second trial. *See Tiscareno*, 603 F. App'x at 679-80; *Morgan*, 166 F.3d at 1310; *Sequeira*, 2017 U.S. Dist. LEXIS 49246, at *29.

**Immunity:** As previously explained, Mr. Morrissey enjoys absolute prosecutorial immunity for his supervisory activity because working with prosecutorial personnel who are assessing whether to retry a previously convicted person is closely associated with the judicial process, is a uniquely advocacy-oriented role, and requires exercise of professional judgment. *See Mink*, 482 F.3d at 1261; *see also Van de Kamp*, 555 U.S. at 345-46. And as already articulated, the Amended Complaint alleges no more than Mr. Morrissey's alleged failure to direct subordinates to avoid violating the Constitution, which does not itself violate the Constitution, meaning qualified immunity would shield Mr. Morrissey as well. *See Whitfield*, 587 F. Supp. 2d at 667-68.

## CONCLUSION

In conclusion, for the foregoing reasons and for all those supported by their Motion to Dismiss the Amended Complaint and its attachments, Defendants Mitchell R. Morrissey, Bonnie Benedetti, Robin Whitley, Lynn Kimbrough, and Jeff Carroll reiterate their requests this Court enter an Order: dismissing Plaintiff's claims against them in their entirety and with prejudice; and awarding all further relief deemed proper.

Dated this 29th day of June, 2018.

Respectfully submitted,

*s/ Matthew J. Hegarty*
Matthew J. Hegarty, Esq.
Andrew D. Ringel, Esq.
Keith M. Goman, Esq.
HALL & EVANS, L.L.C.
1001 Seventeenth St., Suite 300
Denver, CO 80202
303-628-3300
Fax: 303-628-3368
ringela@hallevans.com
gomank@hallevans.com
hegartym@hallevans.com
**ATTORNEYS FOR DEFENDANTS
MITCHELL R. MORRISSEY, BONNIE
BENEDETTI, ROBIN WHITLEY, LYNN
KIMBROUGH, AND JEFF CARROLL**

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify on this 29th day of June, 2018, I electronically filed the foregoing **REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT FROM DISTRICT ATTORNEY DEFENDANTS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Gail K. Johnson, Esq.
gjohnson@johnsonklein.com
Eric Kirsch Klein
eklein@johnsonklein.com
Aurora Lynn Randolph
arandolph@johnsonklein.com
***Attorneys for Plaintiff***

Michele Horn
michele.horn@denvergov.org
Melanie Lewis
melanie.lewis@denvergov.org
***Attorneys for Defendants City and County of Denver, Dr. Kathren Brown-Dressel, and Estate of James Huff***

*s/ Marlene Wilson*, legal assistant to
Matthew J. Hegarty, Esq.
Andrew D. Ringel, Esq.
Keith M. Goman, Esq.
HALL & EVANS, L.L.C.
1001 Seventeenth St., Suite 300
Denver, CO  80202
Phone:  303-628-3300
Fax:     303-628-3368
ringela@hallevans.com
gomank@hallevans.com
hegartym@hallevans.com
**ATTORNEYS FOR DEFENDANTS MITCHELL R. MORRISSEY, BONNIE BENEDETTI, ROBIN WHITLEY, LYNN KIMBROUGH, AND JEFF CARROLL**