**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-003018-MSK-MJW

CLARENCE MOSES-EL,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER,
MITCHELL R. MORRISSEY, Former Denver District Attorney, in his individual capacity;
BONNIE BENEDETTI, Chief Deputy District Attorney for the Denver District Attorney's Office, in her individual capacity;
ROBIN WHITLEY, Former Deputy District Attorney for the Denver District Attorney's Office, in his individual capacity;
LYNN KIMBROUGH, Former Communications Director for the Denver District Attorney's Office, in her individual capacity;
JEFF CARROLL, Investigator for the Denver District Attorney's Office Investigator, in his individual capacity;
DR. KATHREN BROWN-DRESSEL, Former Colorado Bureau of Investigation and Denver Police Department Forensic Serologist, in her individual capacity; and
ESTATE OF JAMES HUFF, Denver Police Department Detective, in his individual capacity,

      Defendants.

---

**PLAINTIFF'S RESPONSE TO THE ESTATE OF JAMES HUFF'S
MOTION TO DISMISS (Doc. 86)**

---

      Plaintiff Clarence Moses-EL, through his counsel, Gail K. Johnson, Eric K. Klein, and

Aurora L. Randolph of Johnson & Klein, PLLC, hereby submits this response to the Motion to

Dismiss Plaintiff's Second [*sic*] Amended Complaint[1] from the Estate of James Huff (Doc. 86).

In support thereof, Mr. Moses-EL states as follows:

---

[1] The Motion to Dismiss is erroneously titled "Motion to Dismiss Second Amended Complaint." (Doc. 86.)  Mr. Moses-EL has filed only one amended complaint.  (Doc. 47.)

## INTRODUCTION

For nearly three decades, Mr. Moses-EL was the victim of a pattern of constitutional violations perpetrated in order to obtain and maintain his criminal convictions at the expense of truth and justice.  Through this lawsuit, Mr. Moses-EL seeks to expose the truth and obtain the justice that eluded him for the more than twenty-eight years he sat in prison after misconduct by the late Denver Police Detective James Huff, named here as Defendant Estate of James Huff (the Estate), and others resulted in and perpetuated his wrongful conviction.  Mr. Moses-EL has brought three claims against the Estate for actions done by Mr. Huff: a Fourth and Fourteenth Amendment malicious-prosecution claim, a Fourteenth Amendment destruction-of-exculpatory-evidence claim, and a Fourteenth Amendment due-process claim.  The Estate seeks to avoid liability by arguing any claims are barred by Colorado's non-claim statute, asserting the unsupported protection of a statute-of-limitations defense, claiming that Mr. Moses-EL's well-pleaded allegations fail to state cognizable claims against it, and raising a tenuous qualified-immunity defense.  For the following reasons, the Defendant Estate's arguments are without merit, and the Court should deny its motion to dismiss.

## STANDARD OF REVIEW

The Estate moves to dismiss Mr. Moses-EL's claims pursuant to Rule 12(b)(6).  When reviewing a motion to dismiss brought under Rule 12(b)(6), the Court must determine whether the operative complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "[C]ourts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado v. KOB-TV, L.L.C.*,

493 F.3d 1210, 1224 (10th Cir. 2007).  In reviewing a Rule 12(b)(6) motion for dismissal, a

district court must "accept all well-pleaded allegations of the complaint as true and must construe

them in the light most favorable to the plaintiff." *Alvarado*, 493 F.3d at 1215 (quoting *David v.*

*City & Cty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

## ARGUMENT

**1.  Mr. Moses-EL's claims against the Estate are not barred by Colorado's nonclaim statute.**

A.  Burden of proof:

The Estate argues that it is Mr. Moses-EL's burden to demonstrate timely compliance

with Colo. Rev. Stat. § 15-12-803(4) (nonclaim statute) because "it is a bar to suit and not an

affirmative defense."  (Doc. 86 at 4.)  But the Estate cites no authority for this proposition.  Mr.

Moses-EL believes the applicability of the nonclaim statute is indeed an affirmative defense and

therefore that the burden of proof falls on the Estate.  The Colorado Supreme Court discussed

this at length in *In re Estate of Ongaro*, 998 P.2d 1097, 1103 (Colo. 2000), noting

> In addressing the effects of failure to meet the statutory
> deadline for filing a claim against an estate, we have stated that
> "[a] nonclaim statute operates to deprive a court of jurisdiction."
> Although our prior cases reached the correct outcomes in
> dismissing untimely claims against estates, these conclusory
> statements about jurisdiction mischaracterized the precise effects
> of the nonclaim statute.  Having reviewed the applicable case law
> and constitutional and statutory provisions, we conclude that the
> nonclaim statute does not deprive courts of jurisdiction over
> untimely claims… There is no clear basis for our prior decisions
> suggesting that the nonclaim statute actually deprives a court of
> jurisdiction over untimely claims against estates.  This court
> originally premised its assumption that a nonclaim statute deprives
> a court of jurisdiction on the fact that, unlike a statute of
> limitations, a nonclaim statute generally cannot be waived or
> tolled.  However, the inapplicability of doctrines of waiver and
> tolling to the nonclaim statute does not itself compel the

> conclusion that the statute operates to divest courts of jurisdiction over untimely claims against estates… For these reasons, we conclude that section 15-12-803(1) does not divest courts of jurisdiction over untimely claims against estates. Instead, we interpret section 15-12-803(1) to bar the enforcement of late-filed claims against an estate.

*And see In re Estate of Hover*, S.E.2d 875, 882 (S.C. 2014) ("although the nonclaim 'bar' is often cursorily categorized as 'jurisdictional,' it does not implicate subject matter jurisdiction") (citing *Ongaro*). Therefore, since this is not a question of jurisdiction, the applicability of the nonclaim statute is an affirmative defense in that it does not seek to negate the elements of Mr. Moses-EL's claims, but rather provides a basis for avoiding liability even if the elements of Mr. Moses-EL's claims are met. *See Purzel Video GmbH v. St. Pierre*, 10 F. Supp. 3d 1158, 1170 (D. Colo. 2014) ("By its nature, an affirmative defense 'does not negate the elements of a plaintiff's claim, but instead precludes liability even if all of the elements of a plaintiff's claim are proven.'") (quoting *Lane v. Page*, 272 F.R.D. 581, 598 (D.N.M.2011)*; and see* 5 Wright & Miller, *Federal Practice and Procedure* § 1270 at 289 ("An affirmative defense raises matters extraneous to the plaintiff's prima facie case; as such, they are derived from the common law plea of 'confession and avoidance."). Therefore, the Estate bears the burden to prove its defense—that the nonclaim statute precludes claims against the Estate notwithstanding the liability insurance exception. *See In re ZAGG Inc. Shareholder Derivative Action*, 826 F.3d 1222, 1231 (10th Cir. 2016) (agreeing that the purpose of requiring defendants to plead and prove their affirmative defenses is to give a plaintiff and notice and an opportunity to meet the defense and show, if it can, why the defense should not succeed).

Elements:

Mr. Moses-EL agrees that under Fed. R. Civ. P. 17(b)(3), state law determines whether an entity can be sued, and that Section 15-12-803 of the Colorado Probate Code limits when claims against an estate may be brought.  Colo. Rev. Stat. § 15-12-803(4).  Mr. Moses-EL also agrees that under the statute, claims accruing before the death of a decedent must be brought against the decedent's estate within one year of death, and those accruing after the death of a decedent must be brought within four months of accrual.  Colo. Rev. Stat. § 15-12-803(1)(a)(III), (2)(b).  But the nonclaim statute creates an exception to these deadlines for "any proceeding to establish liability of the decedent or the personal representative for which he is protected by liability insurance" to the limits of the insurance protection.  Colo. Rev. Stat. § 15-12-803(3)(b) (liability insurance exception).  The liability insurance exception, "without interfering with the speedy distribution of the assets of the estate, permits those who have been harmed by the tortious conduct of the decedent to bring an action" that would otherwise be barred.  *Matter of Daigle's Estate*, 634 P.2d 71, 78 (Colo. 1981).

B.  Mr. Moses-EL's claims against the Estate of Huff are not barred by the nonclaim statute.

The Estate argues that because Mr. Huff died on January 28, 2006, Mr. Moses-EL was required to bring all claims against the Estate within four months of their accrual.  (Doc. 86 at 3-6.)  But the Estate fails to prove the inapplicability of the liability insurance exception set forth in Colo. Rev. Stat. § 15-12-803(3)(b).

On information and belief, Defendant City and County of Denver is the indemnifier of the Estate of James Huff for actions by Mr. Huff taken within the scope of his employment with

the Denver Police Department at the times relevant to this complaint.[2]  Under Colo. Rev. Stat.

§ 29-5-111,

> a city, town, county, or city and county or other political
> subdivision of the state or a state institution of higher education
> employing peace officers in accordance with article 7.5 of title 24,
> C.R.S., shall indemnify its paid peace officers and reserve officers,
> as defined in section 16-2.5-110, C.R.S., while the peace officers
> and reserve officers are on duty for any liability incurred by them.

And here, Defendant City and County of Denver has admitted to being a "self-insured

governmental entity."  *See* Exhibit 1, Defendant City and County of Denver Initial Disclosures,

at 4; and see *People v. Oliver*, 2016 COA 180M, ¶ 8, *as modified on denial of reh'g* (Jan. 12,

2017) (describing at length Defendant Denver's procedures as a self-insurer in the workers'

compensation context and noting "that the City and County of Denver self-insures its workers'

compensation benefits for all employees of the City and County of Denver, including the Denver

Police Department (DPD)…[and], the [Risk Management] Department, an agency of the City

and County of Denver, manages workers' compensation claims and benefits for all employees of

the City and County of Denver instead of a private workers' compensation insurance company).

Additionally, the Defendant City and County of Denver's City Attorney's Office is also

representing the Estate in this lawsuit.  (*See* Docs. 78, 79.)  Therefore, from the information Mr.

Moses-EL has plead and the fact that reasonable inferences at this stage of the case are to be

drawn in his favor, it can be inferred that Defendant Denver will indemnify the Estate for at least

---

[2] Mr. Moses-EL has requested discovery from Defendant City and County of Denver (Defendant
Denver) regarding its insurance and indemnity policies.  (*See* Doc. 92-1, Plaintiff's Discovery
Requests.)  After unsuccessfully seeking to stay its obligation to respond to discovery requests
from Mr. Moses-EL (*see* Docs. 69, 92, 93), Defendant Denver requested an extension of time to
respond to the requests, which Mr. Moses-EL did not oppose.  (*See* Doc. 94.)  Defendant
Denver's discovery response is now due August 13, 2018.  (*Id.*)

part of the damages[3] sought here, and dismissal at the motion to dismiss stage would be inappropriate and premature.  In any event, the Estate has not met its burden to disprove the applicability of the liability insurance exception to the nonclaim statute here.

The Estate cites *Wilson v. Board of County Com'rs of El Paso County*, 853 F. Supp. 369, 370 (D. Colo. 1994), for its argument that Mr. Moses-EL's claims are barred based on the nonclaim statute's deadlines.  But this Court is not bound by *Wilson*, and that case was wrongly decided.  And even if this Court were to find *Wilson* persuasive, *Wilson* differs from Mr. Moses-EL's case in such a way that dismissal at this stage would be improper.

*Wilson* was wrongly decided and should be revisited here.  In *Wilson*, after the nonclaim statute deadlines had passed, the plaintiff sued the estate of a public official who had worked for El Paso County.  *Id*.  The plaintiff argued the claims against the estate fell under the liability insurance exception because the County was a de facto insurer.  *Id*.  The court noted that under Colo. Rev. Stat. § 10-1-102(7), "insurance" is defined as "a contract whereby one, for consideration, undertakes to indemnify another or to pay a specified or ascertainable amount or benefit upon determinable risk contingencies, and includes annuities."  *Id*.  The *Wilson* court determined that the County did not meet the statutory definition of an "insurer," defined in Colo. Rev. Stat. § 10-1-102(8) as "…every person engaged as principal, indemnitor, surety, or contractor in the business of making contracts of insurance," because the County "was not 'in the business of making contract of insurance.'"  *Id*.  But this analysis failed to address whether the County could nonetheless be considered an insurer if it were engaged as an indemnitor, as provided for by Colo. Rev. Stat. § 10-1-102(8).  Thus, to the extent that Defendant Denver is an

_____

[3] For example, Colo. Rev. Stat. § 29-5-111 excludes indemnification for exemplary damages and caps indemnification for one person in any single occurrence at $100,000.

indemnitor of Mr. Huff as a former employee, claims against his Estate would fall within the liability insurance exception to the nonclaim statute.

This case also differs substantively from *Wilson*.  There, after the court allowed time for discovery as to whether an insurance policy existed, the parties agreed there was no liability insurance policy that protected the defendant or his estate.  *Id*.  The *Wilson* court then went on to note that the County—under the facts presented there—was not an "insurer," and this did not provide the requisite insurance policy to invoke the exception.  *Id*.  Here, by contrast, Defendant Denver has admitted to being a "self-insured governmental entity."  *See* Exhibit 1 at 4.  Given that, unlike the County in *Wilson*, Defendant Denver has represented that it *is* an insurer, the Estate cannot prevail in proving the inapplicability of the liability insurance exception.

Lastly, the public policy reasons for the nonclaim statute are effectuated in the application of the liability insurance exception in this circumstance.  As discussed, Defendant Denver indemnifies its officials.  And although the state has a legitimate interest in the early and orderly distribution of a decedent's assets, "[t]ort claims filed against an estate under the liability insurance exception 'do not affect the interests of the beneficiaries under the estate and thus present no obstacle to an orderly and exact administration of the estate.'"  *Matter of Daigle's Estate*, 634 P.2d at 78 (quoting *Sommermeyer v. Price*, 603 P.2d 135, 138 (Colo. 1979).  Here, "[n]either the claims of general creditors nor the interest of heirs and devisees will be adversely affected by the liability insurance exception."  *Id*.

For all these reasons, Mr. Moses-EL's claims against the Estate fall within the liability insurance exception provided for in Colo. Rev. Stat. § 15-12-803(3)(b) and are not barred.

**2. Mr. Moses-EL's claims regarding the destruction of evidence against the Estate are timely.**

The Estate argues that Mr. Moses-EL's Second Claim (destruction of evidence) and his Sixth Claim (due process), to the extent it is based on the destruction of evidence, are time-barred.[4]  (Doc. 86 at 6-9.)

A.  Burden of proof:

A statute-of-limitations defense is an affirmative defense.  Fed. R. Civ. P. 8(c)(1); *see also Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) ("And there can be no question that a limitations issue is an affirmative defense; Rule 8(c)(1) explicitly lists 'statute of limitations' as such").  Therefore, as the Estate concedes, it bears the burden to plead and prove the statute-of-limitations defense.  (*See* Doc. 86 at 7.)  Mr. Moses-EL "need not anticipate in the complaint an affirmative defense that may be raised by the defendant."  *Id.*  A district court can dismiss a complaint on statute-of-limitations grounds only when the complaint's allegations, viewed in the light most favorable to the plaintiff, affirmatively establish that the claim is untimely.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007).  Dismissal on statute-of-limitations grounds is inappropriate "unless it is clear from the face of the complaint that there are no meritorious tolling issues."  *Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1097 (10th Cir. 2009).

B.  Elements:

To succeed on this affirmative defense, the Estate must demonstrate that Mr. Moses-EL did not initiate his lawsuit within the time set by the law governing the type of claim he has asserted.  *See CTS Corp. v. Waldburger*, 134 S.Ct. 2175, 2182 (2014).  Mr. Moses-EL asserts his claims under 42 U.S.C. § 1983.  (Doc. 47 at ¶ 27.)  While there is no federal statute of limitations

---

[4] The Estate does not argue that the malicious-prosecution claim is time-barred.

for section 1983 claims, 42 U.S.C. § 1988(a) requires federal courts to borrow a state's

limitations period for personal-injury actions. *Wilson v. Garcia*, 471 U.S. 261, 265 (1985). In

Colorado, the statute of limitations for personal-injury actions and, therefore, section 1983

actions, is "two years from the time the cause of action accrued." *Fogle v. Pierson*, 435 F.3d

1252, 1258 (10th Cir. 2006).

While the limitations period is a matter of state law, the question of when a section 1983

claim *accrues* is a matter of *federal* law. *Wallace v. Keto*, 549 U.S. 384, 388 (2007). Section

1983 claims generally accrue when the plaintiff knows or has reason to know of the injury that

serves as the basis of the claim. *Smith v. City of Enid ex. rel. Enid City Commission*, 149 F.3d

1151, 1154 (10th Cir. 1998). However, a section 1983 "cause of action for damages attributable

to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has

been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994).

Therefore, in order to successfully assert a statute-of-limitations defense, the Estate must

demonstrate that Mr. Moses-EL's causes of action against it accrued before December 14, 2015,

or two years before Mr. Moses-EL initiated this action.

C. Mr. Moses-EL's claims relate to his unconstitutional convictions and imprisonment, and under *Heck*, such claims did not accrue until his convictions were invalidated.

The Estate's argument that the statute-of-limitations on Mr. Moses-EL's Second and

Sixth claims ran before this suit was filed is based on the flawed premise that *Heck* does not

apply and therefore these claims accrued many years ago. (Doc. 86 at 6-9.) But this argument

ignores the well-pleaded allegations of the Amended Complaint. All of Mr. Moses-EL's claims

revolve around a singular theory: that Defendants, including the late Mr. Huff, acting

individually and in concert, willfully and maliciously prosecuted him for a crime he did not

commit, and, over the course of decades, refused to correct the error by deliberately disregarding exculpatory evidence, manufacturing inculpatory evidence, and actively thwarting each and every judicial and extrajudicial effort Mr. Moses-EL made to reverse his wrongful convictions and obtain his release from prison.  (*See* Doc. 47 at ¶¶ 64-65 (outlining Mr. Huff's continued disbelief of T.S.'s identification of Mr. Moses-EL and account of the crimes against her), ¶¶ 66-68, 70, 75-78 (detailing Mr. Huff's failure to search for the truth in the criminal investigation and blatant refusal to consider any suspect other than Mr. Moses-EL despite strong evidence pointing other individuals), ¶ 89 (noting that Mr. Huff knew of the lack of evidence against Mr. Moses-EL and the unreliability of T.S.'s identification of him but arrested and supported the prosecution of him nonetheless), ¶ 146 (alleging that Mr. Huff was told on November 20, 1993, that the physical evidence in Mr. Moses-EL's criminal case was reentered into the Denver Police Department's Property Bureau to evaluate if there was DNA present for analysis, showing that Mr. Huff was on notice of the ongoing importance (and need for preservation) of the evidence) ¶¶ 155, 157, 159, 161 (detailing that Mr. Huff had the final say on the destruction of the evidence in Mr. Moses-EL's case and the decision was not reviewed, that in 1995 he was sent a computer printout requesting instructions regarding the disposition of the property for the evidence samples for the attack on T.S., that he merely looked at the date of the case and concluded that since the evidence was from a 1987 case (8 years earlier) it would no longer be needed and marked the invoice for disposal), ¶ 160 (noting that Mr. Huff did not look at the "comments" section of the invoice which stated: "HOLD FOR DA ROBIN WHITLEY"), and ¶ 189 (detailing how a Denver Police Department official blamed Mr. Huff for the destruction of evidence in Mr. Moses-EL's criminal case).)

In *Heck*, the Supreme Court held that a § 1983 plaintiff who seeks damages on a civil-rights claim that necessarily implicates the constitutionality of the claimant's conviction or sentence must demonstrate that the conviction or sentence has been overturned, either judicially or by executive order.  512 U.S. at 486-87.  "A plaintiff may not bring a civil rights suit if a favorable result in the suit would necessarily demonstrate the invalidity of an outstanding criminal judgment against the plaintiff."  *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000), citing *Heck*, 512 U.S. at 487; *see also*, *Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999) (claim of withholding exculpatory evidence barred by *Heck*); *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996) (claims that law-enforcement personnel coerced self-incriminating statements and altered or destroyed material evidence were barred by *Heck*).

Here, a favorable result regarding the destruction of evidence would necessarily demonstrate the invalidity of Mr. Moses-EL's criminal convictions.  If the exculpatory evidence had not been destroyed, Mr. Moses-EL would have been able to present it in his post-conviction proceeding.  And if he were able to exonerate himself through DNA evidence, he would not have been in prison for nearly two more decades and a new trial would not have gone forward because the prosecutors would have dismissed the case against him.  Therefore, under *Heck*, his claims did not accrue until the convictions were vacated in December 2015.  512 U.S. at 489-90.  In other words, each of Mr. Moses-EL's claims involves conduct for which, had he pursued them prior to his successful postconviction challenge, he would have necessarily sought release from the criminal judgment against him and release from prison.  *Cf. Gerstein v. Pugh*, 420 U.S. 103, 107 n.6 (1975) (a challenge to lack of probable cause hearings *could be* pursued under section

1983 precisely *because* plaintiffs did not seek release).[5]  Therefore, Mr. Moses-EL's claims, to the extent they focus on the destruction of evidence, are timely and should be allowed to proceed.

**3.  Mr. Moses-EL is not precluded from litigating in this civil case whether Mr. Huff's destruction of evidence violated his right to due process.**

A.  Burden of proof:

The Estate concedes that it bears the burden of establishing issue preclusion.  (Doc. 86 at 9; *see Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1093 (10th Cir. 2003).)

---

[5] The Estate's reliance on *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 558 (10th Cir. 1999), for the proposition that *Heck* does not apply here is misplaced.  In *Beck*, the claim at issue was for unreasonable searches, and the Court limited the applicability of its reasoning to those specific types of claims:

> For claims of unreasonable searches, *Heck* itself explains why:
>
> > [A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still outstanding conviction.  Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful.

*Id*. (quoting *Heck*, 512 U.S. at 487 n.7) (citations omitted).  By contrast, Mr. Moses-EL's claim is for the destruction of evidence during legal proceedings; and as the Estate notes, that destruction of evidence is intertwined with the facts underlying his due-process and malicious-prosecution claims.  In this way, *Beck* provides useful guidance.  In *Beck*, in addition to the claim for an unreasonable search, the plaintiff brought claims for destruction/suppression of exculpatory evidence and malicious-prosecution claims.  *Id*. at 559.  The *Beck* court noted the interconnectivity of those claims there and held that because "malicious prosecution and *Brady* claims may implicate *Heck*," the plaintiff's claims regarding a dismissed rape charge could proceed, as they were subject to *Heck*.  Id. at 559-560.  Similarly, here, the allegations against Mr. Huff are interconnected; for example, the malicious prosecution he engaged in provides evidence of bad faith for the destruction-of-evidence claim against him, as well as his motivation for such conduct.

B.  Elements:

To successfully invoke the doctrine of issue preclusion or collateral estoppel, the Estate must establish the following elements: "(1) the issue previously decided is identical to the one presented in the action in question, (2) the prior action has been fully adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *United States v. Botefuhr*, 309 F.3d 1263, 1282 (10th Cir. 2002) (internal quotations omitted).

C.  The Estate has not established the first and fourth elements of collateral estoppel.

The Estate mistakenly argues that because Mr. Moses-EL argued in his first motion under Colo. Crim. P. 35(c) that the destruction of evidence in 1995 violated his right to due process, he cannot now raise civil constitutional claims relating to the evidence destruction.  (Doc. 86 at 9-11.)

*Element (i)*: The Estate has failed to demonstrate that the "issue previously decided" is *identical* to the issue presented by Mr. Moses-EL's claim against it.  *See Botefuhr*, 309 F.3d at 1282.  First and foremost, the Colorado state district court recognized a distinction between how bad faith is assessed in the criminal context versus the civil context, applying a more exacting standard in the criminal context.  (Doc. 86-1 at 8.)  Moreover, the question presented to the Colorado state courts during Mr. Moses-EL's Colorado Crim. P. 35(c) proceeding in 1996-1997 was whether with the evidence that existed *at that time* the police had acted in bad faith in destroying the evidence such that Mr. Moses-EL was deprived of due process.  (*See generally* Doc. 86-1.)  The Colorado state district court ruled that Mr. Moses-EL had "failed to establish a

violation of due process" because "[t]here is no evidence . . . of animus or a conscious effort to suppress exculpatory evidence. . ." (*Id*. at ¶ 23.)  When deciding that Mr. Moses-EL had failed to demonstrate a violation of due process in his Colo. Crim. P. 35(c) proceeding, the Colorado court adopted a definition of "bad faith in this context as 'official animus' or a 'conscious effort to suppress exculpatory evidence.'" (*Id*. at ¶ 22 (quoting *Jones*, 965 F.2d at 477).)

But the facts alleged in the Amended Complaint are different from the limited body of facts addressed by the state courts in the late 1990s.  The facts considered then included only those regarding the destruction of evidence.  The passage of time has now revealed additional facts that easily allow for the inference that the destruction of biological evidence in this case of a man who steadfastly claimed he had been wrongly convicted was done in bad faith.  As described at length in Mr. Moses-EL's Amended Complaint (Doc. 47), beyond the fact that the Denver Police Department destroyed the DNA evidence which could have proven Mr. Moses-EL's innocence (*id*. at ¶¶ 148-81), it is now known that the actual perpetrator of the crimes against T.S. continued to commit several crimes against women and girls in Denver (*id*. at ¶¶ 204-12), and that as the media took interest in Mr. Moses-EL's case after the destruction of evidence (*id*. at ¶¶ 213-14), other Denver officials—including Defendants to this suit—doubled down on the wrongful prosecution and conviction of Mr. Moses-EL and further entrenched themselves, their offices, and Defendant Denver in protecting the convictions through any means necessary to avoid the scandal and embarrassment they had created.  After the DNA evidence was destroyed, Defendants blocked Mr. Moses-EL's opportunity to receive a new trial (*id*. at ¶¶ 216-31), aggressively promoted a false narrative of his guilt in the media (*id*. at ¶¶ 263-97), manufactured false evidence by intimidating the true perpetrator into momentarily recanting his

admission of guilt, and brought Mr. Moses-EL to trial a second time without probable cause (*id.* at ¶¶ 242-52).  It also came out after this proceeding that Mr. Huff had doubts about the identification of Mr. Moses-EL despite the fact that he helped have him prosecuted.  (*Id.* at ¶ 64.) Given the alleged incentives (detailed above) Denver officials had to cover up the wrongful conviction of Mr. Moses-EL, the policy and practice of Defendant Denver in seeking convictions over the truth (*see generally* Doc. 81), and the lengths officials would later go to try to ensure the convictions stuck—facts this Court is armed with but the state court was not in 1997—it is a reasonable assumption that Mr. Huff, partially responsible for the prosecution of Mr. Moses-EL despite his awareness of insufficient supporting evidence, would destroy evidence *in bad faith*. Armed with the full context that was not present at the time of the Colo. Crim. P. 35(c) proceeding, there is significantly more evidence that the destruction was not done in good faith but was part of the overall campaign against Mr. Moses-EL.

Therefore, the Estate has not and cannot meet the first element necessary to invoke collateral estoppel.

*Element (iv)*:  The Estate's conclusory assertion that Mr. Moses-EL "had a full and fair opportunity to litigate whether there was a due process violation related to the destruction of evidence by DPD" is insufficient to meet its burden to demonstrate that Mr. Moses-EL actually had such an opportunity.  (*See* Doc. 86 at 10.)  The Estate fails to recognize the important factual development that has occurred over the last two decades, and, as noted above, Mr. Moses-EL has not had the opportunity to litigate the destruction of evidence armed with the facts alleged in the Amended Complaint of what can reasonably inferred as "official animus" toward Mr. Moses-EL.

Therefore, the Estate has failed to meet its burden in establishing issue preclusion. Because collateral estoppel doesn't apply here, this Court should allow Mr. Moses-EL's destruction-of-evidence claim against the Estate to proceed.

### 4. Mr. Huff is not entitled to qualified immunity as to the Fourth Amendment claim against him for malicious prosecution.

A. <u>Burden of proof</u>:

Mr. Moses-EL agrees that once the Estate has asserted a defense of qualified immunity, he bears the burden of proving Mr. Huff is not entitled to qualified immunity. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). When deciding an issue of qualified immunity, a court adopts the plaintiff's version of the facts. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

B. <u>Elements</u>:

In the Tenth Circuit, a malicious-prosecution claim has the following elements: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). In order to overcome the defense of qualified immunity, Mr. Moses-EL must demonstrate that he alleged a constitutional violation by meeting those five elements and that the law governing his claim was clearly established at the time Mr. Huff acted. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

C. <u>The allegations of the Amended Complaint sufficiently plead a malicious-prosecution claim against the Estate and defeat its immunity claim.</u>

### i. *Mr. Moses-EL has sufficiently alleged a Fourth Amendment violation.*

The Estate argues that Mr. Moses-EL failed to allege: Element (i)—that the conduct of Detective Huff subjected or caused Mr. Moses-EL to be subjected to continued confinement or prosecution; Element (iii)—that probable cause did not exist for Mr. Moses-EL's arrest and prosecution; and Element (iv)—that the actions taken by Mr. Huff were done with malice.

*Element (i):* Regarding the first element of a malicious-prosecution claim, this Court has relied on *Pierce* for the proposition that "§ 1983, by its terms, applies not only to a person who 'subjects,' but also to any person who '*causes to be subjected* . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Schoenfeld v. Thompson*, 16-cv-02630-MSK-NYW, 2017 WL 8944003, at *6 (D. Colo. June 7, 2017), *report and recommendation adopted by* 2017 WL 3084470 (D. Colo. July 20, 2017), citing *Pierce*, 359 F.3d at 1292 (emphasis in original).  Thus, to demonstrate that Mr. Huff caused Mr. Moses-EL's continued confinement and prosecution, Mr. Moses-EL is not limited to facts related to how he directly caused his confinement or prosecution.  Rather, "[t]he requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006).  Indeed, as the Tenth Circuit has recognized:

> "[a] private person who takes an active part in *continuing or procuring the continuation* of criminal proceedings *initiated by himself or by another* is subject to the same liability for malicious prosecution as if he had then initiated the proceedings." *Restatement (Second) Torts* § 655 (emphasis added).  The

> comments to this section note that it "applies when the proceedings
> are initiated by a third person, and the defendant, knowing that
> there is no probable cause for them, thereafter takes an active part
> in procuring their continuation." *Id*., cmt. b.

*Pierce*, 359 F.3d at 1292.

Further guidance on this issue is provided by *Chavez-Torres v. City of Greeley et al.*, No. 14-CV-01187-RBJ, 2015 WL 1850648, at *4 (D. Colo. Apr. 21, 2015) (unpublished).  There, the complaint alleged a malicious-prosecution claim that a police officer "failed to properly investigate the crime for which the plaintiff was arrested," specifically pleading that there were significant physical differences between the perpetrator and the plaintiff, the plaintiff's "adamant denial of involvement," and the failure of the police officer to properly investigate or "take any further measures to ensure that she had arrested the correct person."  2015 WL 1850648, at *1. The court held that the plaintiff had sufficiently stated a constitutional violation for malicious prosecution under both the Fourth and Fourteenth Amendments.  *Id*. at **5-6.

Here, the allegations of the Amended Complaint demonstrate that Mr. Huff caused Mr. Moses-EL's initial prosecution and continued confinement.  Mr. Huff admitted that T.S.'s identification of Mr. Moses-EL and account of the crimes against her lacked credibility.  (Doc. 47 at ¶¶ 64-65.)  Despite his disbelief, he failed to conduct an investigation focused on the truth and finding the true perpetrator and refused to consider other suspects despite strong evidence against them.  (*Id*. at ¶¶ 66-68, 70, 75-78.)  Along with others, Mr. Huff caused the initial prosecution of Mr. Moses-EL.  (*Id*. at ¶ 89.)  And by authorizing the destruction of the physical evidence from T.S.'s assault, he caused the continued confinement of Mr. Moses-EL.  In 1995, Mr. Huff was sent a computer printout requesting instructions regarding the disposition of the property for the evidence, and despite the fact that the invoice stated "HOLD FOR DA ROBIN

WHITLEY," he marked the invoice authorizing the evidence to be disposed of.  (*Id*. at ¶¶ 155, 157, 159, 160-61.)  Thus, Mr. Moses-EL has sufficiently pleaded that Mr. Huff caused the criminal proceedings that resulted in his wrongful conviction and contributed to his continued confinement, thereby causing the violation of Mr. Moses-EL's constitutional rights.

*Element (iii)*:  Probable cause exists "where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense has been or is being committed." *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985).  Ignoring or omitting information which, if considered, "would vitiate the probable cause" is sufficient to demonstrate this element of a malicious-prosecution claim.

Here, there was not probable cause to arrest or prosecute Mr. Moses-EL for these crimes. There was no physical evidence tying Mr. Moses-EL to the crimes against T.S.  (Doc. 47 at ¶ 79.)  The attack occurred in the middle of the night, in the dark; T.S. was heavily intoxicated, severely nearsighted, and at the time was not wearing her glasses; she was beaten on the head and face, and had massive swelling around her eyes.  (*Id*. at ¶ 80.)  T.S. initially told police on the scene she had not gotten a good look at the perpetrator because the lights were out.  (*Id*. at ¶ 81.)  Mr. Moses-EL did not match the limited physical description given by T.S.—black male, wavy hair slicked back with grease.  (*Id*. at ¶ 82.)  Before her medicated dream in which she believed she re-lived the attack, when asked who had attacked her, T.S. repeatedly identified L.C., Earl, and Darnell.  (*Id*. at ¶ 84.)  L.C. Jackson left his girlfriend's home at the time of the attack and had a history of committing sexual assaults.  (*Id*. at ¶ 85.)  Mr. Moses-EL had no history of committing any sexual crimes.  (*Id*. at ¶ 86.)  The sole evidence tying Mr. Moses-EL to

the attack on T.S. was her dream-induced identification of him more than a day after the attack, when she was in the hospital on prescribed narcotics.  (*Id*. at ¶ 87.)  And it was well known that there was hostility and animosity between T.S. and Mr. Moses-EL's then-girlfriend.  (*Id*. at ¶¶ 60-64.)  Most importantly, Mr. Huff admitted that at the time, he himself had doubts about the reliability of T.S.'s identification of Mr. Moses-EL.  (*Id*.)

*Element (iv)*:  In malicious prosecution cases, "Malice may be inferred if a defendant causes the prosecution without arguable probable cause."  *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014).  "Malice is shown if the primary motive of the defendant was a motive other than a motive to bring to justice a person thought to have committed a crime."  *Barton*, 432 F. Supp. 2d at 1194.  In *Pierce*, the Tenth Circuit said the plaintiff sufficiently pled malice by alleging the chemist had told authorities that DNA analysis "supported [plaintiff's] involvement in the rape—even though in fact, far from implicating him in the rape, the hair analysis tended to exonerate him—and disregarded findings that [plaintiff's] blood contained an enzyme that exonerated him of being the source of the sperm found on the rape victim."  359 F.3d at 1282.

Mr. Moses-EL has sufficiently alleged Mr. Huff acted out of malice.  First, malice is shown here by the fact that Mr. Moses-EL was prosecuted without probable cause.  Mr. Moses-EL alleges detailed facts showing there was no probable cause for his prosecution.  (*See* Doc. 47 at ¶¶ 79-90, 331-354.)

Second, malice can be inferred from the facts alleged by Mr. Moses-EL in his Amended Complaint.  Despite his serious questions about the accuracy of T.S.'s identification of Mr. Moses-EL, Mr. Huff failed to conduct an investigation focused on the truth and finding the true perpetrator, and refused to consider other suspects despite strong evidence against them.  (*Id*. at

¶¶ 64-68, 70, 75-78.)  Thus, Mr. Huff failed to "take obvious steps to ensure that [he] identified

the correct perpetrator" and such failure "invites the inference that [he was] motivated by a

desire to finish [his] investigation quickly, not a desire to bring the perpetrator to justice."

*Chavez-Torres v. City of Greeley et al.*, No. 14-CV-01187-RBJ, 2015 WL 1850648, at *4 (D.

Colo. Apr. 21, 2015) (unpublished); (Doc. 47 at ¶¶ 205-12, 232-52, 298-330, 389-92.).  In

*Chavez-Torres*, the court found sufficient allegations of malice where there were allegations of a

lack of probable cause, a police department culture that stressed the clearing of cases over

charging the correct person, and the defendant's "failure to take obvious steps to ensure" the

correct perpetrator was identified.  *Id*. at *5.  Mr. Moses-EL has alleged a lack of probable cause

(Doc. 47 at ¶¶ 205-12, 232-52, 298-330, 389-92), a police department culture putting convictions

before truth (*id*. at ¶¶ 66, 76, 108, 242, 359, 360-374), and Mr. Huff's failure to investigate the

identity of the true perpetrator (*id*. at ¶¶ 66-68, 70, 75-78).  Thus, as in *Chavez-Torres*, Mr.

Moses-EL's Amended Complaint sets forth facts sufficient to support a finding of malice.

### ii.  *Mr. Moses-EL's right to be free from malicious prosecution was clearly established.*

For the purpose of a qualified immunity analysis, a right is clearly established when it is

"sufficiently clear that a reasonable official would have understood that his conduct violated the

right."  *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001).  To defeat a qualified immunity

defense, "'[i]t is not necessary . . . for plaintiffs to find a case with exact corresponding factual

circumstances; defendants are required to make 'reasonable application of the prevailing law to

their own circumstances.'"  *Id*.  (citation omitted).  A plaintiff

> need not cite a factually identical case to demonstrate the law was
> clearly established.  Some level of generality is appropriate."
> *Baptiste v. J.C. Penney Co.,* 147 F.3d 1252, 1258 (10th Cir. 1998).

Indeed, courts have often framed the right at issue here as the right to be free from malicious prosecution. *See, e.g., Abudiab v. Georgopoulos,* 586 Fed. Appx 685, 686 (9th Cir. 2013) ("[T]he right to be free from malicious prosecution by a government official was clearly established at the time of [defendant's] alleged misconduct."); *Bonide Products, Inc. v. Cahill,* 223 F.3d 141, 145 (2d Cir. 2000) ("[T]he right to be free from malicious prosecution is a clearly established right."); *Spurlock v. Satterfield,* 167 F.3d 995, 1006 (6th Cir. 1999) ("This court ... found that the right to be free from malicious prosecution was a right clearly established."); *Osborne v. Rose,* 133 F.3d 916 (4th Cir. 1998) ("[A] constitutional right to be free from malicious prosecution was not clearly established in November 1994."); *Goldey v. Com. of Pa.,* No. CIV. A. 92–6932, 1994 WL 396471, at *3 (E.D. Pa. June 20, 1994) ("[T]he Court holds that [plaintiff's] constitutional right to be free from malicious prosecution was clearly established on the date of the incident.").

*Chavez-Torres*, 2015 WL 1850648, at *7.

In *Chavez-Torres*, the court also found the right to be free from malicious prosecution—there, the right to be free from a police officer's shoddy investigation that causes prosecution—clearly established, saying "[s]uch a right is clearly established under Tenth Circuit case law. The circuit has long recognized that a claim of malicious prosecution can amount to a constitutional violation under § 1983." *Id.* (*citing Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996); *Wilkins v. DeReyes,* 528 F.3d 790, 805 (10th Cir. 2008); *Garcia v. Johnson*, 64 F.3d 669 (10th Cir. 1995). The malicious-prosecution claim Mr. Moses-EL asserts—that despite the fact that he personally knew of the unreliability of the only evidence against Mr. Moses-EL (the late, dream-induced identification by a victim with ulterior motives), Mr. Huff encouraged the initial prosecution of Mr. Moses-EL and purposefully failed to investigate an obvious alternative suspect with a history of sexual assault—is very similar to that proffered in *Chavez-Torres*, and alleges the violation of a clearly-established right.

23

Thus, it is clear that under Tenth Circuit law, Mr. Huff is not entitled to qualified immunity on Mr. Moses-EL's malicious-prosecution claim.

5. **Mr. Huff is not entitled to qualified immunity as to the Fourteenth Amendment claim against him for malicious prosecution.**

The Estate argues that Mr. Moses-EL has failed to allege facts sufficient to demonstrate that the conduct of Mr. Huff could be anticipated pre-deprivation or that no adequate state tort remedy exists to satisfy due-process requirements, and thus he is entitled to qualified immunity. (Doc. 86 at 19-20.) [6]

A. Burden of proof:

Mr. Moses-EL agrees that he bears the burden of proving Mr. Huff is not entitled to qualified immunity. *Reynolds*, 370 F.3d at 1030. When deciding an issue of qualified immunity, a court adopts the plaintiff's version of the facts. *Scott*, 550 U.S. at 378.

B. Elements:

"[A]t some point after arrest, and certainly by the time of trial, constitutional analysis [of a malicious prosecution claim] shifts to the Due Process Clause." *Pierce*, 359 F.3d at 1285-86. Mr. Moses-EL agrees that "The Fourteenth Amendment protects individuals against deprivations of liberty without due process of law," and that if the conduct is unauthorized and could not be anticipated pre-deprivation, then an adequate post-deprivation remedy will satisfy due-process requirements. (Doc. 86 at 19-20 (quoting *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).)

---

[6] Mr. Moses-EL incorporates the qualified immunity argument made *supra* in Section 4 here, including the argument regarding the violation of his clearly-established rights. *See McCarty v. Gilchrist*, 646 F.3d 1281, 1286 (10th Cir. 2011) (no distinction exists between elements required under Fourth and Fourteenth Amendment claims).

C. <u>The allegations of the Amended Complaint sufficiently show that Mr. Huff's conduct was not unauthorized and could have been anticipated pre-deprivation.</u>

The Estate simply argues:

> The allegations of the Amended Complaint demonstrate that the alleged conduct by Detective Huff could not have been anticipated or prevented pre-deprivation. Therefore, because Colorado state tort law provides an adequate post-deprivation remedy via a state malicious prosecution claim, Mr. Moses-EL's attempt to bring a Fourteenth Amendment malicious prosecution claim under § 1983 fails.

(*Id.* at 19.)  But the Estate fails to show how this conduct could not have been prevented pre-deprivation.  In fact, this conduct could have been anticipated and prevented pre-deprivation. And even if the Court were to determine otherwise, the state-law remedy is not adequate.

"[A]n adequate post-deprivation remedy is a defense to a § 1983 due process claim only where the deprivation is unpredictable, or random and unauthorized."  *Urban v. Tularosa*, 161 F.3d 19 (10th Cir. 1998).  As this Court has stated:

> "[i]f the conduct of the [defendant government official] ... was pursuant to town policy, *Parratt* and its progeny, which apply only to random, unauthorized conduct, are simply inapposite."  *Sullivan v. Town of Salem*, 805 F.2d 81, 86 (2d Cir. 1986).  Thus, if it would not be not impracticable or impossible to establish a pre-deprivation process to correct the alleged wrongdoing, a defendant in a § 1983 case cannot rely on *Parratt* to defeat a claim grounded in the Fourteenth Amendment.

*Chavez-Torres*, 2015 WL 1850648, at *5 (alterations in original); *cf. Rodriguez v. Chavez*, No. 12-CV-01071-PAB-MJW, 2015 WL 5174226, at *12 (D. Colo. Sept. 3, 2015) (distinguishing that case from *Chavez-Torres* and dismissing Fourteenth Amendment claim because "Plaintiff does not argue otherwise or provide any evidence that…defendants were acting pursuant to department policies.").  As alleged at length in the Amended Complaint, the conduct of Mr. Huff was done pursuant to Denver's pattern of pursuing Mr. Moses-EL rather than truth and justice.

*(See* Doc. 47 at ¶¶ 75-77, 360-74.)  Mr. Huff's conduct was not only authorized, it was condoned

and reinforced.  In *Chavez-Torres*, the court declined to dismiss the plaintiff's Fourteenth

Amendment malicious-prosecution/procedural-due-process claim because "the plaintiff allege[d]

not that [defendant's] conduct was random and unauthorized, but rather that she acted pursuant

to department policies that did not require officers to utilize routine investigative procedures and

encouraged officers to quickly clear cases, emphasizing speed over accuracy." *Id*. at *5.

Similarly here, Mr. Moses-EL has alleged that Mr. Huff acted pursuant to the department custom

of failing to search for the truth in criminal investigations and prosecutions, and using

unconstitutional tactics to preserve convictions.  *(See* Doc. 47 at ¶¶ 75-77, 360-74.)  Therefore,

the Estate cannot rely on the alleged availability of a post-deprivation remedy to defeat Mr.

Moses-EL's due-process claim.

Even if this Court were to disagree and find the challenged conduct was unauthorized, the

claim is not subject to dismissal on the ground of an alternative state remedy because the remedy

available to Mr. Moses-EL is inadequate.  Although the *Myers* court held that a state malicious-

prosecution claim provided an adequate post-deprivation remedy to plaintiff there, as to Mr.

Moses-EL this remedy is inadequate.  "The Supreme Court has made clear that, in order to

constitute an adequate remedy, the remedy provided by state law need not be the same as that

available under § 1983.  Nevertheless, the relief afforded by the state remedy cannot be

meaningless or non-existent." *Belcher v. Norton*, 497 F.3d 742, 751-53 (7th Cir. 2007), as

amended (Nov. 19, 2007) (internal citations and quotations omitted) (holding that because law-

enforcement officer was entitled to the broad statutory immunity afforded by state law, the

statute did not provide an adequate state-law remedy to plaintiffs.).

The Colorado Governmental Immunity Act (CGIA) provides that a plaintiff has to submit a notice of claim on all state-law claims within 182 days of discovery of injury.  Colo. Rev. Stat. § 24-10-109(1); *Grossman v. City and County of Denver*, 878 P.2d 125, 126 (Colo. Ct. App. 1994) (proper inquiry under CGIA is whether sufficient evidence exists to cause a reasonable person to know that he or she has been injured by the tortious conduct of another).  For malicious-prosecution claims, Colorado law provides that a plaintiff must submit a notice of claim with 182 days of when criminal charges were filed, even if the charges are not favorably terminated until much later.  *Masters v. Castrodale*, 121 P.3d 362 (Colo. Ct. App. 2005).  That is, even though a cause of action for malicious prosecution does not accrue until favorable termination, a notice of claim within 182 days of filing of charges is still necessary.  *Id*.  For plaintiffs who are wrongly incarcerated for many years, this CGIA notice requirement effectively deprives them of a state-law remedy for malicious prosecution, because no one would file such a notice of claim for malicious prosecution within 182 days of filing of charges.  In Mr. Moses-EL's case, for example, the 182-day period would have passed in early 1988, before he was even tried, but his malicious-prosecution claim—which requires favorable termination—did not accrue until 2016.

Moreover, although a state remedy need not provide a plaintiff with all the relief that may have been available if he could have proceeded under section 1983, the CGIA also drastically limits the amount of relief recoverable for a plaintiff to $350,000, even for plaintiffs like Mr. Moses-EL who spent nearly three decades imprisoned for crimes he did not commit.  Colo. Rev. Stat. § 24-10-114(1)(a)(I).  Such a state remedy is simply not sufficient to satisfy the requirements of due process as described in *Parratt v. Taylor*, 451 U.S. 527, 544 (1981).

**6.  Mr. Huff is not entitled to qualified immunity as to the Fourteenth Amendment claim against him for destruction of exculpatory evidence.**

The Estate argues that Mr. Moses-EL has failed to allege Mr. Huff violated clearly-established law in the destruction of the evidence of T.S.'s assault.  (Doc. 86 at 20-22.) [7]

A.  Burden of proof:

Mr. Moses-EL agrees that he bears the burden of proving Mr. Huff is not entitled to qualified immunity.  *Reynolds*, 370 F.3d at 1030.  When deciding an issue of qualified immunity, a court adopts the plaintiff's version of the facts.  *Scott*, 550 U.S. at 378.

B.  Elements:

A right is clearly established when it is "sufficiently clear that a reasonable official would have understood that his conduct violated the right."  *Currier*, 242 F.3d at 923.  To defeat a qualified immunity defense, "'[i]t is not necessary . . . for plaintiffs to find a case with exact corresponding factual circumstances; defendants are required to make 'reasonable application of the prevailing law to their own circumstances.'"  *Id.*  (citation omitted).

C.  The allegations of the Amended Complaint sufficiently plead a destruction of evidence claim against the Estate and defeat its immunity claim.

> *i.  Mr. Moses-EL has sufficiently plead bad faith on the part of Mr. Huff.*

The Estate argues Mr. Huff is entitled to qualified immunity because Mr. Moses-EL fails to allege bad faith.  (Doc. 86 at 20-21.)  But a person's state of mind may be alleged generally. Fed. R. Civ. P. 9(b).  The Tenth Circuit analyzes five factors in the inquiry into bad faith: (1) whether the government had explicit notice that the defendant believed the evidence was

---

[7] Mr. Moses-EL incorporates the qualified immunity argument made *supra* in Section 4 here, including the argument regarding the violation of his clearly-established rights.  *See McCarty*, 646 F.3d at 1286 (no distinction exists between elements required under Fourth and Fourteenth Amendment claims).

exculpatory; (2) whether the claim that the evidence is potentially exculpatory is conclusory, or instead "backed up with objective, independent evidence ..."; (3) whether the government could control the disposition of the evidence once the defendant indicated that it might be exculpatory; (4) whether the evidence was central to the case; and (5) whether the government offers any innocent explanation for its disposal of the evidence.  *United States v. Smith*, 534 F.3d 1211, 1224–25 (10th Cir. 2008) (quoting *United States v. Simpson*, 845 F.3d 1039, 1059 (10th Cir.)).

Here, elements 1-4 clearly weigh in finding that the destruction was done in bad faith. Mr. Huff was told on November 20, 1993—before he destroyed the evidence—that the physical evidence in Mr. Moses-EL's criminal case was reentered into the Denver Police Department's Property Bureau to evaluate if there was DNA present for analysis (Doc. 47 at ¶ 146), and that the DNA samples were to be preserved if they were still available (*id*. at ¶ 151).  The government clearly knew that Mr. Moses-EL believed the evidence was exculpatory, as shown by the court order and the note on the evidence invoice saying "HOLD FOR DA ROBIN WHITLEY."  (*Id*. at ¶ 160.)  *See Gentry v. Johnson*, 95 F.3d 1149 (5th Cir. 1996) ("The State's failure to preserve evidence which it has been ordered to retain might, in some cases, be one indicia of possible bad faith, but all of the surrounding circumstances must be considered in determining bad faith.")

As to the fifth element, any facially innocent explanation that could be proffered by the Estate is undercut by Mr. Huff's deliberate failure to investigate the disposition of Mr. Moses-EL's criminal case before ordering the destruction of evidence despite the fact that officers were apparently required to determine case dispositions and then complete such forms.  (Doc. 47 at ¶ 189.)  In *Trombetta*, the Supreme Court found no bad faith where "[t]he record contain[ed] no allegation of official animus towards respondents or of a conscious effort to suppress exculpatory

evidence." 467 U.S. at 488.  Here, in the face of a court order to release and test Mr.

Moses-EL's DNA evidence, Mr. Huff completely failed to preserve the evidence.  (Doc. 47 at

¶¶ 155, 157, 159, 160-61.)

Moreover, bad faith can be inferred from the facts alleged in the Amended Complaint

showing that what may have initially appeared to be a series of unfortunate mistakes that led to

the destruction of exculpatory evidence can now be clearly contextualized as one constitutional

violation in a set of many that were conducted based on an official and systematic campaign to

cover up the fact that Mr. Moses-EL had been wrongly prosecuted, convicted, and incarcerated.

As more fully detailed *supra*, Mr. Moses-EL's relentless quest to prove his innocence put him at

odds with a system and officials devoted to ensuring his conviction rather than discovering the

truth.  *See Bolden v. City of Chicago*, 293 F. Supp. 3d 772, 778–79 (N.D. Ill. 2017) ("This timing

of the destruction [after a request]—combined with the potential significance of the firearms and

Bolden's other allegations of misconduct throughout the investigation—is sufficient to allege

that the defendant officers acted in bad faith in destroying the firearms.  Bolden paints a picture

of the defendant officers attempting to pursue him through any means necessary, which is

enough.").  Therefore, taking the facts alleged as true and finding reasonable inferences in the

light most favorable to Mr. Moses-EL, bad faith has more than sufficiently been alleged here.

### ii.  *Mr. Huff violated Mr. Moses-EL's clearly-established rights.*

The Estate argues that Mr. Huff's conduct did not violate a clearly-established law.

(Doc. 86 at 21-22.)  But the law has been clearly established for decades that the bad-faith

destruction of evidence violates a defendant's constitutional rights.  *See e.g. Armstrong v. Daily*,

786 F.3d 529, 549 (7th Cir. 2015) ("Based on *Killian* [*v. United States*, 368 U.S. 231 (1961)],

then, law enforcement officials were on notice long before 1980 that the duty to preserve was not limited to obviously exculpatory evidence…[and t]hough *Brady* did not announce a duty to preserve evidence, a duty to refrain from bad-faith destruction flows necessarily, and obviously, from its familiar holding that suppression of material exculpatory evidence violates due process.").

Thus, Mr. Huff is not entitled to qualified immunity for his destruction of the physical evidence.

### 7. Mr. Huff is not entitled to qualified immunity as to the Fourteenth Amendment substantive due process claim against him.

The Estate argues that Mr. Moses-EL has failed to allege Mr. Huff violated clearly-established law in the destruction of physical evidence from the assault on T.S.  (Doc. 86 at 20-22.) [8]

A.  Burden of proof:

Mr. Moses-EL agrees that he bears the burden of proving Mr. Huff is not entitled to qualified immunity.  *Reynolds*, 370 F.3d at 1030.  When deciding an issue of qualified immunity, a court adopts the plaintiff's version of the facts.  *Scott*, 550 U.S. at 378.

B.  Elements:

A right is clearly established when it is "sufficiently clear that a reasonable official would have understood that his conduct violated the right."  *Currier*, 242 F.3d at 923.  To defeat a qualified immunity defense, "'[i]t is not necessary . . . for plaintiffs to find a case with exact

---

[8] Mr. Moses-EL incorporates the qualified immunity argument made *supra* in Section 4 here, including the argument regarding the violation of his clearly-established rights.  *See McCarty*, 646 F.3d at 1286 (no distinction exists between elements required under Fourth and Fourteenth Amendment claims).

corresponding factual circumstances; defendants are required to make 'reasonable application of the prevailing law to their own circumstances.'" *Id.* (citation omitted).

Mr. Moses-EL agrees that a due process violation arises when a criminal trial lacks fundamental fairness to the degree it is "shocking to the universal sense of justice." *United States v. Russell*, 411 U.S. 423, 432 (1973) (citation omitted).

C.  The allegations of the Amended Complaint sufficiently plead a claim against the Estate and defeat its qualified-immunity claim.

*i.  Mr. Moses-EL has sufficiently alleged conscience-shocking conduct on the part of Mr. Huff.*

Mr. Moses-EL alleges that Mr. Huff's malicious prosecution, which includes refusing to investigate the crimes against T.S. in search of the truth, coupled with his destruction of exculpatory evidence, is conduct that rises to the level of shocking the conscience. "To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or 'employ[ed] it as an instrument of oppression.'" *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013) (quoting *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir.2008)). Although mere negligence would not rise to the level of a due-process violation,

> the following circumstances indicate reckless or intentional failure to investigate that shocks the conscience: (1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence.

*Winslow v. Smith*, 696 F.3d 716, 732 (8th Cir. 2012) (*quoting Akins v. Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009)). As described at length *supra*, there is significant evidence that there was systematic pressure to implicate Mr. Moses-EL notwithstanding abundant reasons to believe he was not the perpetrator. Moreover, despite the fact that Mr. Huff did not trust T.S.'s delayed,

dream-induced identification of Mr. Moses-EL, he nonetheless continued his campaign against Mr. Moses-EL. (Doc. 47 at ¶ 64.) This campaign culminated in the destruction of the exculpatory evidence in Mr. Moses-EL's case. (*Id*. at ¶¶ 155, 157, 159, 161.) Therefore, Mr. Huff's conduct in its entirety, viewed with all reasonable inferences in Mr. Moses-EL's favor, sufficiently alleges a due-process violation.

### ii. The right to be free from the constitutionally violative behavior of Mr. Huff was clearly established.

The Estate also argues Mr. Moses-EL does not allege violation of clearly-established law. However, as discussed *supra* in Sections 2-5, the distinct conduct has all been clearly established as violative of constitutional rights for decades. Moreover, in *Pierce*, the Tenth Circuit held that it was clearly established "that a defendant's due process rights are implicated when the state knowingly uses false testimony to obtain a conviction, *Pyle v. Kansas*, 317 U.S. 213, 216 (1942), or withholds exculpatory evidence from the defense, *Brady v. Maryland*, 373 U.S. 83 (1963)." 359 F.3d at 1299. Thus, the law was clearly established, and Mr. Huff is not entitled to qualified immunity.

**8. Mr. Mr. Huff is not entitled to qualified immunity as to the Fourteenth Amendment procedural due process claim against him.**

A. Burden of proof:

Mr. Moses-EL agrees that he bears the burden of proving Mr. Huff is not entitled to qualified immunity. *Reynolds*, 370 F.3d at 1030. When deciding an issue of qualified immunity, a court adopts the plaintiff's version of the facts. *Scott*, 550 U.S. at 378.

B.  Elements:

A right is clearly established when it is "sufficiently clear that a reasonable official would have understood that his conduct violated the right." *Currier*, 242 F.3d at 923.  To defeat a qualified-immunity defense, "'[i]t is not necessary . . . for plaintiffs to find a case with exact corresponding factual circumstances; defendants are required to make 'reasonable application of the prevailing law to their own circumstances.'" *Id.* (citation omitted).

Mr. Moses-EL agrees with the Estate that the elements of a due-process claim are: that a plaintiff possesses a protected liberty or property interest, and that the procedures utilized that impacted his protected interest were inadequate under the circumstances.  *See Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001).

C.  The allegations of the Amended Complaint sufficiently plead a claim against the Estate and defeat its immunity claim.

*i.* ***Mr. Moses-EL has sufficiently alleged the procedures he was afforded were inadequate.***

Without citing any case law, the Estate argue that Mr. Moses-EL did not sufficiently plead that the procedures he received were inadequate given that he filed a motion for post-conviction relief under Colo. Crim. P. 35(c).  (Doc. 86 at 25-26.)  But Mr. Moses-EL's Colo. Crim. P. 35(c) Motion did not include a claim about Mr. Huff's malicious prosecution, nor did it have the facts which have only since been revealed regarding the official animus that exists as to Mr. Moses-EL.  And, as a general principle, if post-conviction procedures could provide an adequate alternative remedy to procedurally flawed criminal trials, then there would be no procedural-due-process claims for unconstitutional trials.  Therefore, the Estate's argument—

proffered without any supporting authority that Colo. Crim. P. 35(c) bars procedural-due-process claims—is unavailing.

### ii. *Mr. Huff violated clearly-established law.*

The Estate argues the law was not clearly established as to put Mr. Huff on notice that his conduct violated Mr. Moses-EL's constitutional right to procedural due process.  (Doc. 86 at 26.)  But, as noted above, in *Pierce*, the Tenth Circuit held that it was clearly established "that a defendant's due process rights are implicated when the state knowingly uses false testimony to obtain a conviction, *Pyle v. Kansas*, 317 U.S. 213, 216 (1942), or withholds exculpatory evidence from the defense, *Brady v. Maryland*, 373 U.S. 83 (1963)."  359 F.3d at 1299; *and see Armstrong*, 786 F.3d at 549 ("Based on *Killian,* then, law enforcement officials were on notice long before 1980 that the duty to preserve was not limited to obviously exculpatory evidence…[and t]hough *Brady* did not announce a duty to preserve evidence, a duty to refrain from bad-faith destruction flows necessarily, and obviously, from its familiar holding that suppression of material exculpatory evidence violates due process.").  Mr. Huff did not believe T.S.'s identification but proceeded forward with the prosecution of Mr. Moses-EL, later destroying exculpatory evidence in bad faith contrary to well-established principles of law.  (See Doc. 47 at ¶¶ 64-68, 70, 75-78, 89, 155, 157, 159, 161.)  Thus, the law was clearly established, and Mr. Huff is not entitled to qualified immunity as to this claim.

**CONCLUSION**

For the foregoing reasons, the Estate's motion to dismiss should be denied in its entirety.

DATED this 6th day of August 2018.

Respectfully submitted,

JOHNSON & KLEIN, PLLC

<u>s/ Gail K. Johnson</u>
***Gail K. Johnson***
Eric K. Klein
Aurora L. Randolph
1470 Walnut Street, Suite 101
Boulder, CO  80302
Telephone: (303) 444-1885
Fax: (866) 340-8286
gjohnson@johnsonklein.com
eklein@johnsonklein.com
arandolph@johnsonklein.com
*Attorneys for Plaintiff Clarence Moses-EL*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August 2018, I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO THE ESTATE OF JAMES HUFF'S MOTION TO DISMISS (Doc. 86)** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Michele A. Horn
Melanie B. Lewis
Denver City Attorney's Office
Litigation Section
201 West Colfax Ave., Dept. 1108
Denver, Colorado 80202
michele.horn@denvergov.org
melanie.lewis@denvergov.org
*Attorneys for Defendants City and County of Denver,*
*Kathren Brown-Dressel, and the Estate of James Huff*

Andrew Ringel
Keith Goman
Matthew Hegarty
Hall & Evans, LLC
1001 Seventeenth St., Suite 300
Denver, CO 80202
ringela@hallevans.com
gomank@hallevans.com
hegartym@hallevans.com
*Attorneys for Defendants Mitchell R. Morrissey,*
*Bonnie Benedetti, Robin Whitley,*
*Lynn Kimbrough, and Jeff Carroll*

s/ Aurora Randolph
***Aurora Randolph***

37