**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-003018-MSK-NRN

CLARENCE MOSES-EL,

   Plaintiff,

v.

CITY AND COUNTY OF DENVER,
MITCHELL R. MORRISSEY, Former Denver District Attorney, in his individual capacity;
BONNIE BENEDETTI, Chief Deputy District Attorney for the Denver District Attorney's Office, in her individual capacity;
ROBIN WHITLEY, Former Deputy District Attorney for the Denver District Attorney's Office, in his individual capacity;
LYNN KIMBROUGH, Former Communications Director for the Denver District Attorney's Office, in her individual capacity;
JEFF CARROLL, Investigator for the Denver District Attorney's Office Investigator, in his individual capacity;
DR. KATHREN BROWN-DRESSEL, Former Colorado Bureau of Investigation and Denver Police Department Forensic Serologist, in her individual capacity; and
ESTATE OF JAMES HUFF, Denver Police Department Detective, in his individual capacity,

   Defendants.

---

**THE ESTATE OF JAMES HUFF'S REPLY IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

---

Defendant, the Estate of James Huff ("Detective Huff" or the "Estate"), through undersigned counsel, submits this Reply in Support of his Motion to Dismiss Second Amended Complaint (Doc. #86) as follows:

**INTRODUCTION**

Plaintiff Clarence Moses-EL's Amended Complaint against the Estate of James Huff must be dismissed because it was not filed within the time requirements of the Colorado Probate Code

or within the two-year statute of limitations for 42 U.S.C. § 1983 claims. In addition, and as an alternative argument for the dismissal of the Amended Complaint against the Estate, the Amended Complaint lacks allegations stating a claim against the Estate. There are no allegations demonstrating that James Huff, a former police detective of the Denver Police Department ("DPD"), violated Mr. Moses-EL's clearly established constitutional rights. For such reasons, the Estate respectfully request that the Amended Complaint against it be dismissed in its entirety with prejudice.

**I.      THE CLAIMS AGAINST THE ESTATE SHOULD BE DISMISSED BECAUSE THEY WERE FILED BEYOND THE TIME LIMITS OF C.R.S. § 15-12-803**

Pursuant to the Colorado Probate Code's non-claim provision, any legal claims asserted against the estate of a deceased individual must be filed within specific time periods: within four months of accrual of a cause of action that accrued after the death of the individual, C.R.S. § 15-12-803(2)(b), and within one year of the death of the individual if the cause of action accrued before death, C.R.S. § 15-12-803(1)(a)(III). Claims brought against an estate outside these time periods are barred and must be dismissed. *Estate of Ongaro*, 998 P.2d 1097, 1103 (Colo. 2000). Mr. Moses-EL failed to bring his suit against the Estate within these prescribed time limits, and therefore his Amended Complaint against the Estate must be dismissed.

In an attempt to avoid dismissal, Mr. Moses-EL contends that his claims against the Estate fall within an exception in the non-claim statute set forth in C.R.S. § 15-12-803(3)(b). That exception allows a claim to be filed outside of the time limitations: "To the limits of the insurance protection only, any proceeding to establish liability of the decedent or the personal representative for which he is protected by liability insurance." C.R.S. § 15-12-803(3)(b). According to Mr. Moses-EL, that exception applies because, although there is no insurance policy applicable to his

claims against the Estate, the City and County of Denver ("Denver") is a *de facto* insurer; Mr. Moses-EL contends Denver's statutory obligation to indemnify Detective Huff for any damages awarded against him related to the execution of his job as detective is the equivalent of "insurance protection." Specifically, the Peace Officers Liability Act, C.R.S. § 29-5-111, provides that a governmental entity is obligated to indemnify a peace officer up to $100,000 for any liability incurred by him while he is on duty, and Mr. Moses-EL contends that this statute is tantamount to an insurance policy within the meaning of the Probate Code's non-claim provision.

However, Mr. Moses-EL's arguments regarding the application of this exception were expressly rejected by the Honorable Lewis T. Babcock in *Wilson v. Board of County Commissioners of El Paso County*, 853 F. Supp. 369 (1994). In *Wilson*, the plaintiff brought a Section 1983 claim against a deputy who was deceased. The plaintiff's claim against the deputy's estate was not filed within the time limits required by § 15-12-803, however the plaintiff argued that the exception for claims covered by insurance applied because the claims against the deceased deputy would be paid by the county that employed the deputy at the time of the alleged unlawful conduct. *Id*. at 370. Judge Babcock rejected this argument, finding that the county was not, as a matter of law, an "insurer" within the meaning of the statute. *Id.* He found that because Colorado law defines an "insurer" as a "person . . . engaged . . . in the business of making contracts of insurance," C.R.S. § 10-1-103(13), and "insurance" as a "contract," C.R.S. § 10-1-102(12), an entity that is not in the business of making contracts of insurance and that has no contractual obligation to indemnify an individual cannot be considered to have provided insurance protection for purposes of § 15-12-803(3)(b). *Id.* Judge Babcock stated, "Absent any supporting legislative intent or other legal authority, I decline to extend § 15-12-803(3)(b)'s clear and unambiguous

language to situations where, as here, the deceased or his estate may be entitled to indemnification. Moreover, if the Colorado General Assembly had intended to provide for [the] proposed exception, it would have said so." *Id.* at 371.

Mr. Moses-EL admits that Denver is a self-insured governmental entity, making it in the same position as the county in *Wilson*, but he nonetheless insists that the insurance exception should apply and that the Court should disregard *Wilson* as wrongly decided.[1] Under rules of Colorado statutory construction, however, because the Colorado legislature did not apply a legislative fix to C.R.S. § 15-12-803(3)(b) after *Wilson* was decided, it is presumed that the legislature agrees with Judge Babcock's judicial construction of the statute. *See People v. Cross*, 127 P.3d 71, 76 (Colo. 2006).

When a federal court interprets a state law, it applies state rules of statutory construction. *Phelps v. Hamilton*, 59 F.3d 1058, 1071 (10th Cir. 1995). Under Colorado rules of statutory construction, when a legislature amends a statute and does not change a section previously interpreted by a published judicial case, it is presumed that the legislature agrees with the judicial construction. *Cross,* 127 P.3d at 76 (collecting cases). *Wilson* was decided in 1994, and § 15-12-803 was last amended twelve years later, in 2006. *See* 2006 Colo. Legis. Serv. Ch. 114 (H.B. 06-1137). As the Colorado legislature made no amendments to the insurance protection portion of statute to rectify any error it perceived in the *Wilson* holding, it can be presumed that *Wilson* complies with the intent of the legislature and is good law. *See Cross*, 127 P.3d at 76 (explaining that under Colorado rules of statutory construction, when the legislature reenacts or amends a

---

[1] With few exceptions that do not apply here, Denver pays judgments against it out of the General Fund. Despite being statutorily obligated to indemnify peace officers, Denver neither issues nor possesses insurance contracts to meet its indemnity obligation.

statute and does not change a section previously interpreted by settled judicial construction, it is presumed that it agrees with the judicial construction of the statute). Considering these principles, it cannot be argued that *Wilson* was wrongly decided.

Furthermore, allowing Mr. Moses-EL's claim against the Estate to move forward would undermine the policy reasons behind the non-claim statute by creating uncertainty in an estate of an individual who has been deceased for twelve years. If the peace officer indemnity statute qualified as insurance protection, which it does not, it would only apply up to the limits of the indemnity obligation which is $100,000. *See Estate of Daigle*, 634 P.2d 71, 79 (Colo. 1981). Indeed, the language of the exception to the non-claim statute references the "limits of insurance protection." As a result, any potential damages awarded against the Estate beyond $100,000 would not fall under this exemption and would affect the Estate directly. Given the length of time that has lapsed since Detective Huff's death in 2006, any claimed damages beyond $100,000 would certainly violate the intent of the probate code to "promote a speedy and efficient system for settling the estate of the decedent and making distribution to its successors." *Daigle*, 634 P.2d at 75 (quoting C.R.S. § 15-10-102(2)(c)). This additional reason weighs against finding that the exception applies here. For such reasons, Mr. Moses-EL's claim against the Estate of James Huff must be dismissed for failure to comply with the non-claim statute.

## II.   MR. MOSES-EL'S CLAIMS RELATED TO THE DESTRUCTION OF EVIDENCE ARE BARRED BY THE STATUTE OF LIMITATIONS

Alternatively, Mr. Moses-EL's Second Claim for Relief alleging destruction of exculpatory evidence and his Sixth Claim for Relief, to the extent that it relies on the same conduct, are time-barred. The complained of conduct occurred in December 1995, and Mr. Moses-EL failed to file his complaint against the Estate within the established two-year statute of limitations.

Mr. Moses-EL contends that the doctrine announced in *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994), would have barred any lawsuit regarding the destruction of the evidence until his rape conviction was overturned, and therefore the statute of limitation did not being to run until his acquittal in 2015. The *Heck* doctrine prohibits a civil lawsuit alleging a constitutional violation when a decision in the plaintiff's favor would necessarily invalidate an underlying conviction; the lawsuit must wait until the conviction is overturned. *Id*. However, such is not the situation with Mr. Moses-EL's claims related to the destruction of evidence in 1995. The destruction of evidence did not impact Mr. Moses-EL's rape conviction but instead deprived him of the opportunity to have the evidence DNA tested in 1995. If the DNA evidence had come back in his favor, he could have used the evidence potentially to seek a new trial. Whether depriving Mr. Moses-EL of this potential to obtain a new trial violated his constitutional rights could have been determined without invalidating his underlying conviction. Thus, *Heck* does not apply and Mr. Moses-El should have brought his claim of destruction of evidence by 1998, at the latest.

Mr. Moses-EL argues that because the destroyed evidence was exculpatory, any decision regarding whether its destruction violated the constitution would have necessary implicated the validity of his conviction. This argument belies logic, however, as there is no indication that the evidence was exculpatory. Rather, Mr. Moses-EL wished to have the evidence DNA tested to see if it exculpatory evidence *could* be obtained from it. (Doc. 48, ¶ 148). As the evidence had not yet been DNA tested when it was destroyed, there is no way of knowing whether it was, in fact, exculpatory or inculpatory. Certainly, if the results of the DNA test would have been inculpatory, Mr. Moses-EL would not have chosen to present the results to any court of law. It is a speculative leap that is simply not supported by the allegations in the Amended Complaint that the destroyed

evidence was exculpatory. As such, any cases cited by Mr. Moses-EL regarding the destruction of exculpatory evidence are inapplicable for this reason alone.

### III. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR MALICIOUS PROSECUTION UNDER THE FOURTH AMENDMENT

Mr. Moses-EL fails to state a Fourth Amendment malicious prosecution claim because the Amended Complaint does not contain allegations supporting the first, third and fourth elements of that claim, which are that the defendant caused the plaintiff's continued confinement or prosecution; no probable cause supported the original arrest, continued confinement, or prosecution; and the defendant acted with malice.

#### A. The Amended Complaint does not allege that Detective Huff caused Mr. Moses-EL's confinement or continued confinement

The Estate's Motion to Dismiss argued that Mr. Moses-EL could not meet the causation element of his Fourth Amendment malicious prosecution claim because there were no allegations that Detective Huff concealed or misrepresented material facts to the district attorney, who brought the charges against Mr. Moses-EL. (Doc. #86 at p. 14). In response, Mr. Moses-EL argues that he need only allege that Detective Huff set in motion a series of events that he knew or should have known would cause others to violate Mr. Moses-EL's rights. (Doc. #95 at p. 18 (citing *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006)).[2]

In a malicious prosecution claim involving an arrest made upon a warrant issued by a court

---

[2] Although Mr. Moses-EL relies on *Trask* to contend that causation exists if an officer merely set in motion a series of events that led to a prosecution, *Trask* is distinguishable because it did not involve an arrest made upon a warrant that had been issued by a court after finding probable cause. Rather, the plaintiffs challenged a warrantless arrest and detention. *Id*. at 1046. As a result, *Trask's* discussion of causation does not address the type of allegations necessary to establish causation for a malicious prosecution claim related to an arrest that occurred upon a warrant.

that found probable cause, the court's issuance of the warrant breaks the chain of causation between the actions of investigating detectives and the prosecution. *See Taylor v. Meachum*, 82 F.3d 1556, 1563 n. 8 (10th Cir. 1996). The "principal player in carrying out a prosecution … is not police officer but prosecutor." *Id*. Thus, a police officer does not typically cause a malicious prosecution because the prosecutor independently decides whether to bring a charge, and a court's issuance of a warrant breaks the chain of causation. *Id.* at 1564. However, causation can be established when an officer supplies misleading information to the prosecutor that was "instrumental in the plaintiff's … prosecution." *Pierce v. Gilchrist*, 359 F.3d 1279, 1289 (10th Cir. 2004). Thus, to meet the causation element of his claim, Mr. Moses-EL must allege that Detective Huff gave knowing misstatements or misleading information about T.S.'s identification of Mr. Moses-EL to the district attorney, which the district attorney then used to secure the arrest warrant.

The Amended Complaint contains no such allegations. Rather, the Amended Complaint alleges that after T.S. identified Mr. Moses-EL as her rapist, Detective Huff informed the district attorney of this information but also expressed a concern that her identification could be the product of neighborhood drama. (Doc. #47 at ¶ 64). Detective Huff did not withhold this information from the district attorney or mislead the district attorney about it. To the contrary, the Amended Complaint alleges that Detective Huff fully disclosed his concerns. (*Id*.). As a result of Mr. Moses-EL's failure to allege that Detective Huff misled or misrepresented information about Moses-EL, his claim for malicious prosecution fails for lack of causation.

    **B.**     **The Amended Complaint alleges facts establishing probable cause to arrest Mr. Moses-EL**

Mr. Moses-EL argues that his Amended Complaint alleges that Detective Huff failed to conduct an adequate investigation and that these allegations are sufficient to state that no probable

cause existed for his arrest or prosecution. Citing *Chavez-Torres v. City of Greeley*, No. 14-cv-01187-RBJ, 2015 WL 1850648 (D. Colo. Apr. 21, 2015), Mr. Moses-EL argues that allegations of inadequate investigation can state a malicious prosecution claim. (Doc. #95 at p. 19). The facts of that case are distinguishable, however.

In *Chavez-Torres*, a woman had attempted to present a fraudulent check at a bank using the plaintiff's driver's license, and the bank's surveillance video captured the incident. *Id*. at *1. An officer later arrested the plaintiff for the crime even though there were significant physical differences between the plaintiff and the suspect, including her size and the absence of tattoos matching the suspect's description. *Id*. Despite these differences and the plaintiff's adamant denial of involvement in the crime, the officer did not review the surveillance video during the investigation, did not arrange a line-up with eyewitnesses to the crime, and did not provide full and complete information to the judge who found probable cause for the arrest. *Id*. at *1-2. The court stated that these allegations adequately alleged that the officer lacked probable cause for the arrest. *Id.* at *4.

Unlike the officer in *Chavez-Torres* who knew that significant physical differences existed between the suspect and the plaintiff but did not bother to check available video or to have eyewitnesses identify the plaintiff as the suspect, Detective Huff had an eyewitness, T.S., who identified Mr. Moses-EL as the man who assaulted her. (Doc. # 47 at ¶¶ 56-57). Although T.S. initially described her attacker as a black male with wavy hair that was slicked back and identified alternate suspects who fit that description, she ultimately identified Mr. Moses-EL as the person who attacked her. As the Estate stated in the Motion to Dismiss, T.S.'s eyewitness identification is enough to meet probable cause, and inconsistencies in an eyewitness's statement do not negate

probable cause. (Doc. #86 at p.16 (citing *Easton v. City of Boulder*, 776 F.2d 1441, 1448, 1450-51 (10th Cir. 1985)).

The Amended Complaint does not allege that Detective Huff withheld or omitted any information that he obtained in his investigation from the district attorney, or that he engaged in a deliberate falsehood or reckless disregard for the truth. The Amended Complaint simply alleges that Detective Huff should have done a more thorough investigation. As stated in the Estate's Motion to Dismiss, an officer's failure to exhaust every possible lead in an investigation does not suggest a knowing or reckless disregard for the truth that would potentially invalidate a probable cause determination. (Doc. #86 at p. 16-17). As a result, Mr. Moses-EL has failed to allege that no probable cause existed for his arrest and prosecution.

### C. The Amended Complaint does not allege facts establishing an inference of malice

Mr. Moses-EL argues that malice is established by showing that he was prosecuted without probable cause. As explained in the Motion to Dismiss and above, however, there was probable cause to arrest Mr. Moses-EL for the assault based on T.S.'s eyewitness identification of Mr. Moses-EL. As Mr. Moses-EL's assertion that no probable cause existed fails, so must his assertion that malice is established by these same allegations.

### D. Detective Huff did not violate clearly established law

Mr. Moses-El contends that Detective Huff violated his clearly established rights because "the right to be free from a police officer's shoddy investigation that causes prosecution" was clearly established. (Doc. #95 at p. 23). However, the only cases that Mr. Moses-EL cites in support for this statement post-date Detective Huff's 1987 – 1988 investigation of Mr. Moses-EL. (*See id.* (citing Tenth Circuit cases from 1995, 1996, 2008 and 2015)). Judicial decisions postdating

Detective Huff's investigation in 1987 – 1988 are incapable of clearly establishing the unlawfulness of that conduct. *Kisela v. Hughes*, ___ U.S. ___, 138 S. Ct. 1148, 1154 (2018). For such reason, as well as the reasons stated in the Estate's Motion to Dismiss, Detective Huff is entitled to qualified immunity on Mr. Moses-EL's Fourth Amendment malicious prosecution claim.

IV. **MR. MOSES-EL FAILS TO STATE A CLAIM FOR MALICIOUS PROSECUTION UNDER THE FOURTEENTH AMENDMENT**

Without citing any supporting authority, Mr. Moses-EL contends that he lacked an adequate post-deprivation remedy for malicious prosecution claim under Colorado law because Colorado's Governmental Immunity Act ("CGIA"), C.R.S. § 24-10-109, required him to submit a notice of claim within 182 days of charges being filed, and "no one would file such a notice of claim for malicious prosecution within 182 days of filing of charges." (Doc. #95 at p. 27). Also, without supporting authority, he contends that the damages cap of the CGIA makes a state tort claim an inadequate remedy. (*Id.*).

Both of Mr. Moses-EL's arguments fail. First, there are no allegations in the Amended Complaint that Mr. Moses-EL was somehow prohibited from availing himself of Colorado's post-deprivation remedy by filing a notice of claim as required by the CGIA. In the absence of facts showing that Mr. Moses-EL was unable to follow Colorado's claim procedure or supporting his conclusory argument that a tort claim under Colorado law was unavailable to him, his due process claim must be dismissed. *See Durre v. Dempsey*, 869 F.2d 543 (10th Cir. 1989) (per curiam) (affirming the dismissal of a prisoner's due process claim where Colorado law provided a tort remedy and rejecting the prisoner's argument that the remedy was unavailable to him where such argument had no supporting factual allegations in the complaint). In addition, simply because

11

Colorado law may not provide all the relief that Mr. Moses-EL can achieve with a Section 1983 claim does not mean that such remedy is inadequate. The Supreme Court has stated, "Although the state remedies may not provide [a plaintiff] with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process." *Parratt v. Taylor*, 451 U.S. 527, 544 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Because Mr. Moses-EL's arguments are completely unsupported and are inconsistent with Supreme Court and Tenth Circuit precedent, they must fail. For such reasons, Mr. Moses-EL fails to allege a malicious prosecution claim under the Fourteenth Amendment.

In addition, Mr. Moses-EL fails to meet his burden on the second prong of qualified immunity, which is to allege that it was clearly established in 1987-1988 that Colorado did not provide an adequate post-deprivation remedy for malicious prosecution. *Coriz by and through Coriz v. Martinez*, 915 F.2d 1469, 1470 (10th Cir. 1990) (granting qualified immunity because there was uncertainty in the law regarding whether New Mexico's post-deprivation remedies were adequate under *Parratt*). No case existing as of 1987 – 1988 has found that the CGIA's jurisdictional requirement of submitting a timely notice of claim or its limitation on damages renders a malicious prosecution tort claim inadequate. As such, Detective Huff did not violate any clearly established law regarding Fourteenth Amendment malicious prosecution claims and he is entitled to qualified immunity.

V.  **MR. MOSES-EL'S CLAIM THAT THE DESTRUCTION OF EVIDENCE VIOLATED DUE PROCESS FAILS BECAUSE THE AMENDED COMPLAINT DOES NOT ALLEGE THAT DETECTIVE HUFF ACTED IN BAD FAITH**

The Amended Complaint does not allege that Detective Huff acted with bad faith, and

<s>"unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute the denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). *See also Illinois v. Fisher*, 540 U.S. 544, 548 (2004) (per curiam) (discussing the requirement of showing that the evidence was destroyed in bad faith). Mr. Moses-EL alleges that that in November 1993, Detective Huff was told that the biological evidence was re-entered into the Denver Police Department's property bureau to evaluate if DNA was present for analysis. (Doc. #47 at ¶146). There are no allegations that Detective Huff was told any further information about the evidence between November 1993 and October 1995, when he authorized its destruction. (*See id.* at ¶¶ 148-159).[3]</s>

Even though Mr. Moses-EL suggests that bad faith can be inferred because a court had ordered that the evidence be tested in 1995 before it was destroyed, the mere fact that such an order existed does not create an inference of bad faith, and Mr. Moses-EL must still allege that Detective Huff acted in bad faith when he authorized the evidence to be destroyed. *Cf. Fisher*, 540 U.S. at 548 ("We have never held or suggested that the existence of a pending discovery request [to access physical evidence in a criminal case] eliminates the necessity of showing bad faith on the part of police."). Because Mr. Moses-EL does not allege that Detective Huff was told about or aware of the order to test the evidence, he fails to allege that Detective Huff acted in bad faith when he authorized the evidence to be destroyed in 1995. As a result, and in addition to Mr. Moses-EL's

---

[3] Although Mr. Moses-EL also contends that the Amended Complaint alleges that Detective Huff was told in 1995, before the evidence was destroyed, that DNA samples were to be preserved if available (*see* Doc. #95 at p. 29), the Amended Complaint contains no such allegation. Contrary to Mr. Moses-EL's description, the Amended Complaint alleges only that in May 1995, Deputy District Attorney Robin Whitley told a DPD civilian employee, Ann Perry, to preserve the samples if they were still available. (Doc. #47 at ¶ 151). There is no allegation that this information was ever relayed to Detective Huff.

13

failure to identify precedent existing in 1995 – 1996 that would clearly establish Detective Huff's conduct as violating the Due Process Clause, Mr. Moses-EL's claim alleging unlawful destruction of evidence against the Estate of James Huff must be dismissed.

VI. **NO ALLEGATIONS OF CONSCIENCE-SHOCKING CONDUCT SUPPORT MR. MOSES-EL'S SUBSTANTIVE DUE PROCESS CLAIM**

Mr. Moses-EL contends that he has stated a claim for a substantive due process violation because he alleges that Detective Huff continued investigating him, and did not investigate alternate suspects, even when Detective Huff had reservations about T.S.'s motives for identifying Mr. Moses-EL. (Doc. #95 at p. 32-33). However, as stated in the Motion to Dismiss, the alleged failure to conduct a full or proper investigation is not conscience-shocking conduct such as is required to state a claim for a substantive due process violation. (Doc. #86 at p. 23-24).

In addition, although Mr. Moses-EL argues that it was clearly established in 1988 that it was unlawful to knowingly use false testimony to obtain a conviction, this argument ignores that the Amended Complaint contains no allegation that Detective Huff knowingly used false testimony to obtain Mr. Moses-EL's conviction. To the contrary, the Amended Complaint merely alleges that Detective Huff questioned T.S.'s motives, and that he relayed his concerns about her motives to the district attorney. (*See* Doc. #47 at ¶ 64). For these reasons, Mr. Moses-EL has failed to allege that Detective Huff violated his clearly established substantive due process rights, and his Sixth Claim should be dismissed.

VII. **MR. MOSES-EL FAILS TO STATE A CLAIM FOR A PROCEDURAL DUE PROCESS VIOLATION**

As with his substantive due process claim, Mr. Moses-EL argues that he sufficiently pled a procedural due process claim by alleging that Detective Huff knowingly used false testimony to

obtain his conviction. (Doc. #95 at p. 35). As stated above, the problem with this argument is that the Amended Complaint contains no allegation that Detective Huff knowingly used false testimony against Mr. Moses-EL. Rather, Detective Huff merely questioned the motives of T.S., which is far from knowing that her testimony was false. As a result, Mr. Moses-EL fails to allege that Detective Huff violated his clearly established procedural due process rights, and his Sixth Claim asserting a procedural due process violation must be dismissed.

**VIII.   THE DOCTRINE OF ISSUE PRECLUSION APPLIES**

In reply to Mr. Moses-EL's argument regarding issue preclusion, the Estate relies upon the arguments and authorities set forth in its Motion to Dismiss. (*See* Doc. # 86 at p. 9-10).

## CONCLUSION

For all the foregoing reasons as well as those stated in the Estate of James Huff's Motion to Dismiss (Doc. #86), the Estate of James Huff respectfully requests that the Amended Complaint in this matter be dismissed in its entirety as it applied to Detective Huff and his Estate.

DATED this 10th day of September, 2018.

Respectfully submitted,

By: *s/ Melanie B. Lewis*
Michele A. Horn, Assistant City Attorney
Melanie B. Lewis, Assistant City Attorney
Denver City Attorney's Office
Civil Litigation Section
201 West Colfax Ave., Dept. 1108
Denver, Colorado 80202
Telephone: (720) 913-3100
Facsimile: (720) 913-3190
E-mail: melanie.lewis@denvergov.org E-mail: michele.horn@denvergov.org
*Attorneys for Defendant Estate of James Huff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of September, 2018, a true and correct copy of the foregoing **THE ESTATE OF JAMES HUFF'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Gail Johnson
gjohnson@johnsonklein.com
Eric Klein
eklein@johnsonklein.com
Aurora Randolph
arandolph@johnsonklein.com

Andrew Ringel
ringela@hallevans.com
Keith Goman
gomank@hallevans.com
Matthew Hegarty
hegartym@hallevans.com

> *s/ Melanie B. Lewis*
> Denver City Attorney's Office