**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-003018-MSK-NRN

CLARENCE MOSES-EL,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER,
MITCHELL R. MORRISSEY, Former Denver District Attorney, in his individual capacity;
BONNIE BENEDETTI, Chief Deputy District Attorney for the Denver District Attorney's Office, in her individual capacity;
ROBIN WHITLEY, Former Deputy District Attorney for the Denver District Attorney's Office, in his individual capacity;
LYNN KIMBROUGH, Former Communications Director for the Denver District Attorney's Office, in her individual capacity;
JEFF CARROLL, Investigator for the Denver District Attorney's Office Investigator, in his individual capacity;
DR. KATHREN BROWN-DRESSEL, Former Colorado Bureau of Investigation and Denver Police Department Forensic Serologist, in her individual capacity; and
ESTATE OF JAMES HUFF, Denver Police Department Detective, in his individual capacity,

      Defendants.

---

**MOTION TO ALTER OR AMEND JUDGMENT (Doc. 120)**

---

    Plaintiff Clarence Moses-EL, through his counsel, Gail K. Johnson, Eric K. Klein, and Aurora L. Randolph of Johnson & Klein, PLLC, respectfully asks this Court to reconsider its Opinion and Order Granting Motions to Dismiss (Doc. 119) (Order) and to alter or amend the Final Judgment (Doc. 120) by rescinding it.

## CERTIFICATION PURSUANT TO D.C.COLO.LCiv.R 7.1

Plaintiff's counsel conferred with counsel for Defendants regarding this motion.  Counsel for Defendants have stated they oppose this motion.

## INTRODUCTION

Plaintiff Clarence Moses-EL was wrongfully convicted and imprisoned for more than 28 years.  As this Court has said, "what happened to Mr. Moses-El was horrifyingly unjust and represents troubling failures at multiple levels of the law enforcement and criminal justice systems.  Mr. Moses-El and his supporters have every right to be upset and angry at the many ways in which city and state institutions failed to protect him."  (*See* Doc. 119 at 22.) Collectively, Defendants caused, perpetuated, and extended this injustice by purposefully presenting misleading information to secure and maintain his conviction, by willfully refusing to fully investigate the true perpetrator, by deliberately destroying the evidence that would have exonerated Mr. Moses-EL decades ago, and by knowingly fabricating false evidence to justify a second trial.  Though Defendants had many opportunities to stop the injustice that kept Mr. Moses-EL locked up for nearly three decades, they did not.  Instead, Defendants used unsavory tactics to try to cover up the decades of injustice perpetrated against Mr. Moses-EL.  Freed after nearly three decades, Mr. Moses-EL brought this lawsuit against Defendants in an effort to hold these officials accountable.  All Defendants filed motions to dismiss (Docs. 57, 62, and 86).  On March 25, 2019, the Court granted all of the motions to dismiss and closed this case.  (*See* Doc. 119.)  Mr. Moses-EL respectfully seeks reconsideration of the Court's Order (Doc. 119) and rescission of the Final Judgment (Doc. 120).

## LEGAL STANDARD

Rule 59(e) of the Federal Rules of Civil Procedure allows a Court to alter or amend its judgment to address an intervening change in controlling law, to incorporate newly discovered and previously unavailable evidence, and to correct clear error of fact or law and prevent manifest injustice.  *See Devon Energy Production Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1212 (10th Cir. 2012) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).  Rule 59(e) provides a mechanism for a court "to correct manifest errors of law."  *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) (internal quotation marks omitted).  Reconsideration is proper where it is clear "the court has misapprehended the facts, a party's position, or the controlling law."  *Servants of Paraclete*, 204 F.3d at 1012.  "A decision or action by the Court constitutes 'clear error' if it 'appears to a reviewing court to have been unquestionably erroneous.'"  *Taylor v. Colo. Dep't of Health Care Policy & Fin.*, No. 12-CV-00300-PAB-KMT, 2014 WL 1287214, at *1 (D. Colo. Mar. 27, 2014), *aff'd,* 811 F.3d 1230 (10th Cir. 2016) (quoting Black's Law Dictionary (8th ed. 2004)).

## ARGUMENT

Mr. Moses-EL requests relief from final judgment in order to correct clear legal errors in the Court's Order, to prevent manifest injustice, and to afford Mr. Moses-EL the opportunity to amend his complaint to present the Court with new, well-founded allegations supporting his claims for relief.[1]

---

[1] Contemporaneously with this motion, Mr. Moses-EL files a Motion for Leave to File Second Amended Complaint with an accompanying Second Amended Complaint.

I.      **The Court clearly erred by applying a probability standard to the motions to dismiss.**

A Rule 12(b)(6) motion may challenge the sufficiency of the pleadings, but a court may not use Rule 12(b)(6) to screen claims it views as weak so long as those claims are plausible: "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In both *Twombly* and *Iqbal*, the Supreme Court reiterated that it was *not* imposing a "probability requirement" at the pleading stage.  *Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Indeed, in order to survive a motion to dismiss, a plaintiff need only plead a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

Contrary to *Iqbal*, the Court's Order impermissibly heightened this plausibility standard to a probability standard by requiring Mr. Moses-EL to present facts in support of his malicious-prosecution claims that "*dispel the possibility* that the defendant acted with mere negligence." (Doc. 119 at 13 (emphasis added).)  Rather than focus its inquiry on whether Mr. Moses-EL had pled facts supporting the reasonable inference that Defendants acted with malice, the Court repeatedly focused on whether the facts as alleged in the Amended Complaint "dispel the possibility" of merely negligent conduct.  (*Id.* at 13, 15.)  Even where the Court concluded that "malice is one inference that might be drawn from these facts" (Doc. 119 at 15), the Court failed

to view the allegations in the light most favorable to Mr. Moses-EL, as it must at this stage of the proceedings, *see Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007), and instead concluded that "other equally (if not more likely) permissible inferences" are possible to draw from the facts. (*Id.* at 15.)  To support its conclusion that the existence of other *possible* inferences barred Mr. Moses-EL's claim, the Court stated, without citation, that "[d]escribing a set of facts that could readily be consistent with mere negligence does not suffice" and concludes "*Iqbal* requires Mr. Moses-El to plead facts that establish a probability, not a possibility." (*Id.*) (emphasis in original).

But "the plausibility standard is not akin to a probability requirement." *Iqbal*, 566 U.S. at 678 (internal quotation omitted).  "'[P]lausible' cannot mean 'likely to be true.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).  "Either the complaint states a plausible claim or it does not—the degree of plausibility only becomes relevant when an 'obvious alternative explanation,' overwhelms any inference of liability that might otherwise exist." *Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, 255 F. Supp. 3d 1064, 1076 (D. Colo. 2017) (quoting *Iqbal*, 556 U.S. at 682 (internal quotation marks omitted)).  "[A] judge ruling on a motion to dismiss must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven." *Robbins*, 519 F.3d at 1247.  "For cases governed only by Rule 8, it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010); *see also Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 281 (6th Cir. 2010) ("In the absence of further development of the facts, we have no basis for crediting one set of reasonable inferences over the other.

Because either assessment is plausible, the Rules of Civil Procedure entitle Fabian to pursue his claim (at least with respect to this theory) to the next stage."); *Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010) ("A plaintiff need only allege facts that permit the reasonable inference that the defendant is liable…Here, as with many claims that ultimately turn on this issue, Hamilton's complaint raised plausible inferences of both employee and independent contractor status. Which inference will prove to be correct is not an issue to be determined by a motion to dismiss.")

Thus, the Court erred by ruling that in order to properly state a constitutional claim, the Amended Complaint had to dispel any possibility that a defendant had acted with mere negligence. Where, as here, the Court recognizes that the facts alleged support an inference of liability but ultimately concludes that the allegations are insufficient because other, disfavorable inferences remain possible, the Court is improperly crediting one set of reasonable inferences over another. *See Fabian*, 628 F.3d at 281. In effect, the Court has created the impermissible probability requirement that the Supreme Court has warned is improper at the pleading stage. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.

The Supreme Court has reminded litigants that the federal pleading standards are in place to ensure a plaintiff provides more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Rule 8 requires enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In his detailed, 111-page Amended Complaint, Mr. Moses-EL proffered much more than threadbare recitals of the elements of the claims alleged; he provided entirely provable factual allegations which, viewed holistically and

in the light most favorable to him, give rise to reasonable inferences that the conduct alleged was

unconstitutional.  To require Mr. Moses-EL to dispel any and all other possible inferences that

could be reasonably inferred from the facts alleged in order to state a constitutional claim was

clear error.  Reconsideration of the Court's Order and rescission of the Final Judgment is

therefore warranted.

## II.     The Court clearly erred in dismissing the malicious-prosecution claims asserted against Defendants Benedetti and Carroll.

To support its dismissal of malicious-prosecution claims against Defendants Benedetti

and Carroll, the Court determined that the factual allegations in the Amended Complaint did not

support the conclusion that Defendants had persuaded Mr. Howard to testify falsely at Mr.

Moses-EL's second criminal trial.  (Doc. 119 at 11.)  The Order states:

> Although Mr. Moses-El might doubt whether Mr. Howard reached
> that recollection independently and may believe that Mr. Carroll
> and Ms. Benedetti may have instructed, persuaded, or suggested to
> Mr. Howard that he recall the event a certain way, Mr. Moses-El
> has not articulated any facts that would support such a proposition.

(*Id.*)  But this conclusion overlooks the following well-pleaded facts supporting a reasonable

inference that Defendants "instructed, persuaded, or suggested to Mr. Howard that he recall the

event a certain way."  (*See id.* at 11.)  The Amended Complaint alleges:

- During the initial investigation of the attack on T.S. in 1987, Mr. Howard never claimed

   that T.S. made any identification at Ms. Cousin's home or before T.S. was hospitalized.

   (Doc. 47 at ¶ 309.)

- During an interview with a defense investigator in 2007, Mr. Howard did not say

   anything about hearing T.S. identify the perpetrator of the attack.  (*Id.* at ¶ 311.)

- But on May 20, 2015, according to Defendant Carroll's report, although Mr. Howard said he did not recall a lot about the incident, he suddenly believed that T.S. had said she was assaulted by "Bubba," who he knew to be the same person who was sent to prison for the assault.  (*Id*. at ¶ 312.)

- And when Mr. Howard was confronted by Mr. Moses-EL's defense counsel about his newfound "memory," he gave the following testimony:

> Q. Your memory a few months ago was different, right?
>
> A. Yes.
>
> Q. Your memory about this is stronger today, you would say, right?
>
> A. Yes. What I call talking to the universe.
>
> Q. Okay. And in talking to the universe, you've also been talking to the DA, right?
>
> A. Right.
>
> *Q. And after talking to the universe and talking to the DA, your memory now is a 10 out of 10 on hearing [T.S.] say it was "Bubble"?*
>
> *A. Yes.*
>
> Q. Whereas before it was a 1 out of 10, right?
>
> A. Yes.

(*Id*. at ¶ 318 (emphasis added).)  These facts, taken together and viewed in the light most favorable to Mr. Moses-EL, create a reasonable inference that Defendants "instructed, persuaded, or suggested to Mr. Howard that he recall the event a certain way."  (*See* Doc. 119 at 11.)

The Court later also discusses the fabrication of evidence claim against Defendants Benedetti and Carroll with respect to their fabrication of Mr. Howard's testimony.  (*Id*. at 17.) The Order states:

> The Amended Complaint makes clear that Mr. Moses-El took the opportunity to thoroughly cross-examine Mr. Howard about his sudden recollection of T.S.'s identification of Mr. Moses-El during the second trial. ¶ 318. To the extent that cross-examination revealed some reason to believe that Mr. Howard specifically attributed his sudden recall to acts of Ms. Benedetti or Mr. Carroll, the Amended Complaint certainly does not recite that testimony.

(*Id*. at 17, n.3.) But the Amended Complaint recited the testimony of Mr. Howard, where he agrees that "after talking to the universe and *talking to the DA*, [his] memory now is a 10 out of 10 on hearing [T.S.] say it was 'Bubble.'" (Doc. 47 at ¶ 318 (emphasis added).) To the extent the Court dismissed the malicious-prosecution claims against Ms. Benedetti and Ms. Carroll for lack of allegations in support of the reasonable inference that Defendants induced Mr. Howard's new recollection of T.S.'s almost-three decades old identification, the Order demonstrates a manifest error of fact. Mr. Moses-EL respectfully asks the Court to reconsider its Order on this point and consequently to alter and amend the Final Judgment.

### III.   The Court clearly erred in dismissing the malicious-prosecution claim against Defendant Morrissey.

The Court "summarily dismiss[ed]" the malicious-prosecution claim against Defendant Morrissey because "the only allegations in the Amended Complaint involving actions taken personally by Mr. Morrissey are that Mr. Morrissey lobbied the Colorado legislature to not enact legislation." (Doc. 119 at 10.) But Mr. Moses-EL alleged more than that Defendant Morrissey lobbied the state legislature against a bill introduced to provide Mr. Moses-EL relief after the Denver Police Department destroyed the physical destruction in the case.

Mr. Moses-EL alleged that Defendant Morrissey did more than "legislative advocacy." (*See id*.) Before the bill in question was introduced in the Colorado General Assembly, thirteen Colorado state legislators wrote a letter to Defendant Morrissey regarding their concern about

9

Mr. Moses-EL's case, and Defendant Morrissey responded to the letter claiming that he had re-opened the Moses case in March 2006 and thoroughly re-examined all of the evidence, but falsely stated that "the victim in this case did not name 'three other suspects' before identifying her attacker." (Doc. 47 at ¶¶ 217, 223, 224.) In his powerful position as Denver District Attorney, Defendant Morrissey provided the legislators false information regarding this case. (*Id*. at ¶¶ 224, 226, 227.) He also told the media false information regarding the case. (*Id*. at ¶¶ 214-215, 224, 226.) Moreover, Mr. Moses-EL alleged that Defendant Morrissey, despite purportedly "re-opening" the case in 2006, made no effort to determine whether Mr. Jackson's blood type matched the biological evidence from the rape kit in the sexual assault of T.S., even though the Denver DA's Office had prosecuted Mr. Jackson that same year for similar sexual assaults. (*Id.* at ¶¶ 17, 207, 223.) Mr. Moses-EL further alleged that Defendant Morrissey took part in the malicious decision to re-try him. (*Id*. at ¶¶ 331-354.) Thus, to the extent the Court dismissed the malicious-prosecution claim against Defendant Morrissey for failure to allege any other actions than legislative advocacy, the Court manifestly erred by overlooking the full scope of the well-pleaded allegations against Defendant Morrissey. Therefore, Mr. Moses-EL respectfully asks this Court to reconsider its Order and alter and amend the Final Judgment accordingly.

## IV. The Court clearly erred in dismissing the malicious-prosecution claim against the Estate of James Huff.

The Court notes that Defendant Estate of James Huff is alleged to have participated in Mr. Moses-EL's prosecution in two respects—the initial investigation and the destruction of evidence in 1995. (Doc. 119 at 13.) In discussing the investigation aspect of this claim, the Order states that Huff is accused of only one act—having harbored doubts about the

identification of Mr. Moses-EL.  (*Id*.)  The Court then summarily dispenses with this claim by

noting that Huff had conveyed his concerns about the identification to the Denver D.A.'s Office,

concluding that this action supposedly vitiates the claim for malicious prosecution.  (*Id*.)  But

Mr. Moses-EL also alleges that notwithstanding his doubts about T.S.'s identification of Mr.

Moses-EL, Huff failed to investigate an obvious alternate suspect who T.S. had initially

identified and who had a history of sexual assault.  (Doc. 47 at ¶¶ 66, 394.)  It is the combination

of these well-pleaded factual allegations—that Huff *knew* that T.S.'s dream-induced

identification of Mr. Moses-EL was unreliable but he simultaneously *failed* to investigate an

obvious alternative suspect who T.S. had originally identified—that plausibly demonstrates Huff

maliciously caused the continued prosecution of Mr. Moses-EL in violation of his constitutional

rights.  The Court's failure to consider the implications of the combination of these well-pleaded

factual allegations regarding Huff's investigation of the assault of T.S. is clear error.  Mr. Moses-

EL respectfully asks that the Court to reconsider its Order dismissing the malicious-prosecution

claim against Huff and consequently to alter and amend its final judgment.

Further support for rescission of the judgment is found in the Court's analysis of Huff's

involvement in the destruction of the physical evidence.  Here the Court concludes Mr. Moses-

EL failed to assert Huff acted maliciously, stating "[n]owhere does the Amended Complaint

assert facts that show that Mr. Huff was subjectively aware of the need to retain the evidence."

(Doc. 119 at 14.)  But this conclusion overlooks the well-pleaded factual allegations of the

Amended Complaint, which states: "Defendant Huff later testified that he was unaware that the

case was active—*even though he had been sent a memorandum on November 20, 1993*, stating

that the evidence was being reentered into the Denver Police Department's Property Bureau to evaluate if there was DNA present for analysis." (Doc. 47 at ¶ 163 (emphasis added).)

To the extent the Court supports its conclusion that Mr. Huff was not subjectively aware of the need to retain the evidence by the portion of this allegation regarding Mr. Huff's testimony, the very fact that Mr. Huff so testified does not support the conclusion that he had no awareness of the need to retain evidence.   Indeed, the fact he had been sent a memorandum on the subject calls into question the credibility of his testimony, and such credibility determinations are the province of the jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations . . . are jury functions. . . ."); *Issa v. Comp USA*, 354 F.3d 1174, 1178-79 (10th Cir. 2003) (demonstration of credibility issue at the motion-to-dismiss stage must be decided by the trier of fact).  At this stage of the case, any reasonable inferences regarding a witness's credibility—or lack thereof—must be drawn in Mr. Moses-EL's favor. *Alvarado*, 493 F.3d at 1215.

The allegation regarding the memorandum sent to Huff, combined with the other allegations described herein, when viewed in the light most favorable to Mr. Moses-EL and allowing him all reasonable inferences, supports the inference of malice—that Huff knew that T.S.'s identification of Mr. Moses-EL was not accurate but refused to investigate obvious other suspects, thereby ensuring that Mr. Moses-EL would be prosecuted.  Years later, still armed with his knowledge about the irregular identification and his personal failure to investigate any other suspect, when Mr. Moses-EL sought DNA evidence for further analysis, Huff disregarded the memorandum informing him of the need to preserve such evidence and instead authorized its destruction.  Compounding this egregious violation of Mr. Moses-EL's rights, *Huff then lied*

*about ever knowing the evidence was needed*. (Doc. 47 at ¶ 163.) Viewing all of these allegations in the light most favorable to Mr. Moses-EL, as the Court must, Huff's conduct is nothing but malicious. By failing to draw the above reasonable inferences from Mr. Moses-EL's well-pleaded allegations, the Court clearly erred in determining Mr. Moses-EL failed to allege facts supporting a finding of malice.

Additionally, the Order characterizes the Amended Complaint as "necessarily speculative" about whether destruction of the evidence actually continued Mr. Moses-EL's confinement. (Doc. 119 at 13-14.) This is another example of the Court's failure to implement the standard of review required at this early stage of the litigation. The Amended Complaint repeatedly alleges that Mr. Moses-EL is innocent of the crimes against T.S. for which he was convicted. (Doc. 47 at ¶¶ 1, 16.) The Amended Complaint further provides several additional allegations that support that fact. (*See, e.g., id.* at ¶¶ 52-54, 82, 115.) And these allegations of innocence, viewed individually and collectively, are certainly more than plausible; as the Order recognizes, what happened to Mr. Moses-EL was "horrifyingly unjust." (Doc. 119 at 22.)

**V.      The Court clearly erred in dismissing Mr. Moses-EL's conspiracy claims.**

The Court also dismissed all of Mr. Moses-EL's conspiracy claims. (Doc. 119 at 18.) The Order states that the Amended Complaint fails in "identifying any express agreement among any of these Defendants, nor does it plead any facts that would allow the Court to infer such an agreement" and "it is entirely unclear how the disparate allegations against each member of the alleged conspiracy have anything to do with one another." (*Id.*) The Court fails to see how the allegations against Defendants Morrissey, Benedetti, Kimbrough, and Carroll—officials who worked in the Denver DA's Office on Mr. Moses-EL's criminal case in some capacity— "have

anything to do with one another." (*Id.*)  In reaching these conclusions, the Court committed a

manifest error of fact and law.

"To be liable as a conspirator [one] must be a voluntary participant in a common

venture. . . .  It is enough if [Defendants] understand the general objectives of the scheme, accept

them, and agree, either explicitly or implicitly, to do [their] part to further them." *Jones v. City*

*of Chicago*, 856 F.2d 985, 992 (7th Cir.1988) (affirming jury's finding of civil liability for police

officers who conspired to fabricate evidence and used it to prosecute an innocent defendant).  In

*White v. Smith*, 696 F.3d 740, 757 (8th Cir. 2012), the court held the facts gave rise "to the

reasonable inference that Defendants acted in concert with the goal of securing [plaintiff's]

conviction for the rape and murder" of a woman.  Many courts have also found conspiracies

from circumstantial evidence of meetings, motive, and unconstitutional behavior.  *See, e.g.,*

*Dean v. Cty. of Gage, Neb.*, 807 F.3d 931, 940 (8th Cir. 2015).  In *Adickes v. S.H. Kress and Co*.,

398 U.S. 144, 157 (1970), the Supreme Court held at summary judgment that allegations

demonstrating a "sequence of events" are sufficient to allow a jury to "infer from the

circumstances that the [conspirators] had a 'meeting of the minds,'" despite the fact that the

petitioner had no knowledge of an agreement between the conspirators.  It is clear error to hold

that Mr. Moses-EL failed to plead "any facts" that would allow the Court to infer such an

agreement and to hold that it is "entirely unclear" how the actions of the Defendants have

anything to do with one another.  (*See* Doc. 119 at 18.)  Mr. Moses-EL's allegations fully

describe the complex history of his case, and the allegations support the reasonable and plausible

inference that Defendants used unsavory tactics to try to cover up the decades of injustice

perpetrated against Mr. Moses-EL.  Moreover, these allegations demonstrate that Defendant City

and County of Denver—through the actions of these Defendants, the Denver Police Department,

and the Denver DA's Office—had a practice and custom of using the full force of its authority to

cover up wrongful convictions with reckless disregard for the truth.  (*See*, *e.g.*, Doc. 47 at ¶¶ 24,

26.)

## VI.     The Court clearly erred in summarily dismissing Mr. Moses-EL's substantive-due-process claims.

The Court also dismissed Mr. Moses-EL's fair trial substantive-due-process claim,

stating: "[t]he allegations in this claim appear to duplicate the allegations addressed above.  For

the same reasons previously stated, these allegations fail to state a constitutional claim and thus,

Claim 6 is dismissed."  (Doc. 119 at 19.)  But the Court previously analyzed those claims for

whether they sufficiently alleged a malicious-prosecution claim, and generally found a lack of

malice.  *See supra.*  A fundamental-fairness claim is concerned with criminal proceedings so

lacking in fundamental fairness that it shocks the universal sense of justice.  *See Cty. of

Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998).  "To show a defendant's conduct is

conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or

'employ[ed] it as an instrument of oppression.'"  *Hernandez v. Ridley*, 734 F.3d 1254, 1261

(10th Cir. 2013) (quoting *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008)).  This

standard is different from malice.

Mr. Moses-EL's substantive-due-process claims deserve their own consideration by the

Court.  The conduct at issue in this case is conscience shocking.  The Court put it well when it

said "what happened to Mr. Moses-El was horrifyingly unjust and represents troubling failures at

multiple levels of the law enforcement and criminal justice systems.  Mr. Moses-El and his

supporters have every right to be upset and angry at the many ways in which city and state

institutions failed to protect him." (*See* Doc. 119 at 22.) The Court's dismissal of these claims without engaging in a full analysis of the law governing substantive due process was clearly erroneous. Mr. Moses-EL respectfully asks the Court to reconsider its Order and alter and amend its final judgment accordingly.

### VII. The Court clearly erred in dismissing the *Monell* claim against Defendant City and County of Denver.

The Court also dismissed Mr. Moses-EL's *Monell* claim against Defendant City and County of Denver. (Doc. 119 at 20.) The Court stated:

> [T]he Amended Complaint speaks generally of actions taken by unidentified persons at the D.A.'s office and the Denver Police Department. But these vague and generalized references fail to sufficiently allege a constitutional violation for many of the same reasons already recited – there are no meaningful allegations that the unnamed actors performed those actions with the requisite state of mind to render their actions unconstitutional.

(*Id*.) But when a defendant has ample notice of "systemic deficiencies," yet fails to correct the deficiencies, the defendant "make[s] unnecessary suffering inevitable," evidencing deliberate indifference. *Fisher v. Koehler*, 692 F. Supp. 1519, 1562 (S.D.N.Y. 1988) (internal citations omitted) (deliberate indifference found based on city government's "institutional failure") ("A finding of 'deliberate indifference' from evidence of systematic deficiencies in prison conditions is not inconsistent with findings that individual officials or staff members at an institution attempt in good faith to do a good job"); *see also Garcia v. Salt Lake Cty.*, 768 F.2d 303, 310 (10th Cir. 1985) ("Although the acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights."). To state a *Monell* claim, Mr. Moses-EL need not necessarily plead that the employees' conduct was

done with a state of mind that rises to the level of a constitutional violation.  Therefore, even if

Defendants' conduct was not done out of malice, Denver could still be liable for their combined

acts or omissions acting under a governmental custom, as was pleaded by Mr. Moses-EL.

Dismissing Mr. Moses-EL's *Monell* claim solely because there were no allegations that the

unnamed Denver employees performed actions with the requisite state of mind to render their

actions unconstitutional is clear error.

Additionally, the Court ruled that Denver was not on notice that its policies were

inadequate; in other words, the Court concluded that Mr. Moses-EL did not sufficiently allege a

pattern of constitutional violations.  (Doc. 119 at 20.)  In so doing, the Court mistakenly

construes Mr. Moses-EL's claim against Denver as encompassing only destruction of physical

evidence.  But the Amended Complaint alleges that the evidence destruction is just one

component among several demonstrating Defendant Denver's policy and practice of burying the

truth in order to secure and to maintain wrongful convictions.  Failing to find enough other very

similar circumstances of destroyed evidence, the Court ruled Mr. Moses-EL had "not recited

facts that suggest that the three incidents resulted from a common municipal custom or policy,

much less that it was the same municipal policy, still in effect, that caused the destruction of his

evidence." (Doc. 119 at 21.)  It is clear error for the Court to recharacterize Mr. Moses-EL's

*Monell* theory into a much narrower frame for liability than the claim pleaded by Mr. Moses-EL.

The Court also failed to discuss several arguments raised by Mr. Moses-EL in support of

his *Monell* claim.  A practice challenged under *Monell* "may be deemed an official policy or

custom for Section 1983 municipal-liability purposes if it is a formally promulgated policy, a

well-settled custom or practice, a final decision by a municipal policymaker, or deliberately

indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F3d. 760, 770 (10th Cir. 2013). The Court did not address Mr. Moses-EL's argument that Huff was a municipal policymaker. (*See* Doc. 81 at 55-56.) And the Court did not address Mr. Moses-EL's argument that Defendant Denver failed to train and supervise its employees in the Forensic Laboratory. (*See id.* at 57.) Dismissing this claim without considering the alternative ways it can be alleged was clear error.

### VIII. The Court clearly erred in stating the malicious-prosecution claim against Defendant Kimbrough was "wholly frivolous."

In dismissing the malicious-prosecution claim against Defendant Kimbrough and describing it as "wholly frivolous," the Court stated "the Amended Complaint does not allege that Ms. Kimbrough made any such [false public] statements in the capacity <u>as a witness</u>, such that she could be said to have participated in the decision to initiate or continue Mr. Moses-El's prosecution or confinement." (Doc. 119 at 10 (emphasis in original).) But the fact that Defendant Kimbrough made her false, damaging statements not as a witness but as the Communications Director for the Denver DA's Office is not dispositive of a malicious-prosecution claim and certainly does not render such a claim frivolous. The Tenth Circuit has recognized the breadth of roles that may be played individuals who can be liable for malicious prosecution:

> Ms. Gilchrist[, a forensic chemist,] cannot 'hide behind' the fact that she neither initiated nor filed the charges against Mr. Pierce. The actions of a police forensic analyst who prevaricates and distorts evidence to convince the prosecuting authorities to press charges is no less reprehensible than an officer who, through false statements, prevails upon a magistrate to issue a warrant. In each case the government official maliciously abuses a position of trust to induce the criminal justice system to confine and then to prosecute an innocent defendant.

*Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004). "The requisite causal connection is satisfied if the defendant[s] set in motion a series of events that the defendant[s] knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006).

Here, the Amended Complaint alleged facts sufficient to demonstrate that Ms. Kimbrough knowingly made false statements to members of the media and the public in furtherance of the Denver DA's Office's continued prosecution of Mr. Moses-EL and that such statements entrenched the Denver DA's Office in that continued prosecution. (*See* Doc. 47 at ¶¶ 265-273, 280-297.) Therefore, the Court's conclusion that Mr. Moses-EL's claim for malicious prosecution against Defendant Kimbrough was "wholly frivolous" is contrary to both governing law and the allegations of the Amended Complaint. Mr. Moses-EL respectfully asks this Court to correct this error and rescind the Final Judgment.

**IX.    Reconsideration of the dismissal of all of Mr. Moses-EL's claims is necessary to prevent manifest injustice.**

Finally, and perhaps most palpably, what happened to Mr. Moses-EL was "horrifyingly unjust." (*See* Doc. 119 at 22.) Reconsideration of those decisions, and the resulting Order, is appropriate here to prevent the manifest injustice of holding no one accountable for the extensive and unnecessary loss of liberty suffered by Mr. Moses-EL that resulted from the "troubling failures at multiple levels of the law enforcement and criminal justice systems" in his case. (*Id.*)

**CONCLUSION**

Mr. Moses-EL respectfully asks this Court to reconsider its Order based on the arguments made herein and in the interest of justice, and therefore to alter and amend its Final Judgment by rescinding it.

DATED this 22nd day of April 2019.

Respectfully submitted,

JOHNSON & KLEIN, PLLC

s/ Gail K. Johnson
***Gail K. Johnson***
Eric K. Klein
Aurora L. Randolph
1470 Walnut Street, Suite 101
Boulder, CO  80302
Telephone: (303) 444-1885
Fax: (866) 340-8286
gjohnson@johnsonklein.com
eklein@johnsonklein.com
arandolph@johnsonklein.com
*Attorneys for Plaintiff Clarence Moses-EL*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of April 2019, I electronically filed the foregoing MOTION TO ALTER OR AMEND JUDGMENT (Doc. 120) with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Michele A. Horn
Melanie B. Lewis
Denver City Attorney's Office
Litigation Section
201 West Colfax Ave., Dept. 1108
Denver, Colorado 80202
michele.horn@denvergov.org
melanie.lewis@denvergov.org
*Attorneys for Defendants City and County of Denver,*
*Kathren Brown-Dressel, and the Estate of James Huff*

Andrew Ringel
Keith Goman
Matthew Hegarty
Hall & Evans, LLC
1001 Seventeenth St., Suite 300
Denver, CO 80202
ringela@hallevans.com
gomank@hallevans.com
hegartym@hallevans.com
*Attorneys for Defendants Mitchell R. Morrissey,*
*Bonnie Benedetti, Robin Whitley, Lynn Kimbrough, and Jeff Carroll*

s/ Aurora Randolph
***Aurora Randolph***