IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
SENIOR JUDGE MARCIA S. KRIEGER

Civil Action No. 17-cv-03018-MSK-NRN

CLARENCE MOSES-EL,

   Plaintiff,

v.

CITY AND COUNTY OF DENVER,
MITCHELL R. MORRISSEY,
BONNIE BENEDETTI,
ROBIN WHITLEY,
LYNN KIMBROUGH,
JEFF CARROLL,
DR. KATHRYN BROWN-DRESSEL, and
ESTATE OF JAMES HUFF,

   Defendants.

---

**OPINION AND ORDER DENYING MOTION TO ALTER JUDGMENT AND MOTION TO AMEND**

---

**THIS MATTER** comes before the Court pursuant to Mr. Moses-El's Motion To Alter Judgment **(# 121)**, the Defendants' responses **(# 126, 130)**, and Mr. Moses-El's replies **(# 128, 133)**; and Mr. Moses-El's Motion for Leave to File a Second Amended Complaint **(# 122)**, the Defendants' responses **(# 125, 129)**, and Mr. Moses-El's replies **(# 127, 134)**.

The Court assumes the reader's familiarity with the proceedings to date, and most importantly, the Court's March 25, 2019 Opinion and Order **(# 119)** that granted the Defendants' motions to dismiss Mr. Moses-El's claims. Thus, the Court offers only a cursory summary of this case. Mr. Moses-El was wrongfully convicted of violently raping a woman in 1987. In 2012, the true perpetrator of that crime confessed and in 2015, the state court vacated Mr.

Moses-El's conviction.  Skeptical of the veracity of that confession, prosecutors chose to re-try Mr. Moses-El for the 1987 rape, but in 2017, a jury acquitted him.  Mr. Moses-El then commenced this suit, asserting various constitutional claims under 42 U.S.C. § 1983 against certain law enforcement officials and prosecutors who were involved in his first and second trials.  All of the Defendants moved to dismiss Mr. Moses-El's claims pursuant to Fed. R. Civ. P. 12(b)(6), and on March 25, 2019, this Court granted those motions.

Mr. Moses-El first moves **(# 121)** for reconsideration of the Court's March 25, 2019 decision, arguing that the Court misapplied the Rule 12(b)(6) standard and contending that Mr. Moses-El has stated several colorable claims.  Alternatively, Mr. Moses-El moves **(# 122)** for leave to amend his pleadings to amplify some of his allegations against certain defendants.

**A. Motion for Reconsideration**

Mr. Moses-El's Motion to Alter Judgment was filed within 28 days of the Court's entry of judgment, and thus, the Court construes that motion as being brought pursuant to Fed. R. Civ. P. 59(e).  A party seeking relief from a final judgment under that rule must show that there has been an intervening change in the controlling law, newly-discovered evidence that was previously unavailable, or that there is a need to correct a clear error or manifest injustice.  *Burke v. Bigelow*, ___ Fed.Appx. ___, 2019 WL 5212884 (10th Cir. Oct. 10, 2019), *citing Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  The manifest injustice standard may be met where the party demonstrates that the Court previously misapprehended the party's position or the controlling law.  *Paraclete*, 204 F.3d at 1012.

    1. <u>Misapplication of the *Iqbal* standard</u>

Here, Mr. Moses-El first contends that this Court misapplied the "plausibility" standard articulated by *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  As the Supreme Court explained in

*Iqbal,* a plaintiff must state a claim to relief that is "plausible on its face." That "plausibility" requirement is "not akin to a 'probability requirement,'" but it does "ask[ ] for more than a sheer possibility that a defendant has acted unlawfully." Thus, it is not sufficient for a plaintiff to "plead facts that are 'merely consistent with' a defendant's liability," as such pleading "stops short of the line between possibility and plausibility." *Id.* at 678. *Iqbal* and decisions following it reveal a spectrum of pleading sufficiency. Factual allegations that merely state factual or legal conclusions fall at one end; they are insufficient. *Bell Atlantic Corp. v. Twonbly*, 550 U.S. 544, 555 (2009) ("labels and conclusions[ ] and a formulaic recitation of the elements of a cause of action will not do"). Moreover, specific factual allegations that are equally consistent with both lawful and unlawful conduct do not suffice. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). To be sufficient at the pleading stage, the well-pled factual allegations must plausibly lead to a legal or factual conclusion. Plausibility does not require a plaintiff to plead so many or such potent facts that the conclusion is probable or unavoidable. Put a different way, a plaintiff need not prove its case at the pleading stage. But the Plaintiff must plead facts that, if treated as true, permit the conclusion that unlawful conduct has occurred.

The reasoning in *Khalik* is instructive. In *Khalik,* the 10th Circuit described the standard as a "middle ground between heightened fact pleading" (showing "probability" requirement) and nothing more than "labels and conclusions or a formulaic recitation of the elements of a cause of action" (showing, at most, "possibility" ). 671 F.3d at 1191. It explained that "plausibility" "refers to the scope of the allegations in a complaint: if they are so general that the encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* The question of what particular

facts must be pled in order to meet the plausibility requirement is a "context-specific task that requires the reviewing court to draw on its judicial expertise and common sense." *Id.*

There are several principles that help focus and sharpen the plausibility inquiry. First, there is the venerable requirement that a court must treat all of the facts alleged by the plaintiff as true. But this requirement is subject to a caveat - it does not apply to "mere conclusory statements." The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Thus, if the claim requires the plaintiff to allege that a defendant acted "willfully and wantonly," it does not suffice for the plaintiff to allege in the complaint simply that "Defendant acted willfully and wantonly" – facts from which "willful or wanton" behavior can be inferred must be pled. Second, the court must draw reasonable inferences in the light most favorable to the plaintiff. But again, this requirement is subject to a condition: "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. For example, if the claim requires the plaintiff to show that the defendant drove his or her car in a willful or reckless manner, simply alleging that the defendant caused an accident will not suffice. Certainly, one possible inference that can be drawn from an auto accident is that the driver was willful or reckless, but without more, such an allegation does nothing more than describe a "mere possibility." If the plaintiff pled additional facts that dispelled other possible explanations consistent with mere negligence – *e.g.* that the driver's vehicle was facing the wrong way on a one-way street at the scene of the accident and there was an absence of skid marks from the driver's sudden braking – the plaintiff might ultimately elevate allegations of recklessness above mere "possibility" and into the realm of sufficient "plausibility."

4

Mr. Moses-El contends that the Court erred in its application of these principles to his malicious prosecution claims against Mr. Huff and Dr. Brown. That claim requires Mr. Moses-El to allege facts that show that these Defendants took actions that prolonged his (unjustified) prosecution or confinement, and that they did so "with malice." *Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017). Under Colorado law, "malice" occurs when a defendant's "primary motive was a motive other than a desire to bring to justice a person [the defendant] through had committed a crime." Colo. Jury Instr. 17:4. Mr. Moses-El's Amended Complaint **(# 47)** alleges that Mr. Huff destroyed blood and semen samples from the 1987 rape despite the label on the samples directing that they be preserved. As to Dr. Brown, the Complaint alleges that Dr. Brown's testimony that blood tests were "inconclusive" in determining the identity of the perpetrator when, the results were 93% likely to exclude Mr. Moses-El as a suspect.

This Court found that these allegations were insufficient to carry Mr. Moses-El's burden to allege these Defendants' <u>malicious</u> state of mind. As the Court explained, the plausibility standard is not satisfied where a plaintiff pleads facts that are consistent with "a wide swath of conduct, much of it innocent." Thus, the Court found that Mr. Moses-El was obligated to plead facts that also dispelled the possibility that Mr. Huff and Dr. Brown's acted without a malicious state of mind. In other words, if Mr. Moses-El's allegations described actions that could easily be explained by mere negligence, his allegations would fail to "nudge[ his] claims across the line from conceivable to plausible." *Khalik*, 671 F.3d at 1191. Finding the allegations insufficient, the Court dismissed Mr. Moses-El's claims against Mr. Huff and Dr. Brown.

Mr. Moses-El argues that the Court failed to give due regard to the inference of malice that can be drawn from Mr. Huff's destruction of evidence that was labeled for preservation, or Dr. Brown's characterization of a 93% chance of exculpation as "inconclusive." Upon

5

reflection, the opinion of this Court remains the same. It is possible to infer from the alleged facts that Mr. Huff and Dr. Brown acted maliciously, but such inference is only one of many that could be drawn from their alleged acts, and such an inference requires the Court to assume many additional facts that Mr. Moses-El has not pled. That is because there are no factual allegations that suggest Mr. Huff's or Dr. Brown's state of mind – only what they did. So for example, mere destruction of labeled evidence does not directly speak to Mr. Huff's motive – he could have been sloppy, not read the label, destroyed it with other materials. There are no factual allegations that suggest that Mr. Huff targeted the destruction of this particular evidence or harbored some personal animus against Mr. Moses-El, or destroyed the evidence with the specific purpose of flustering Mr. Moses-El's attempts to prove his innocence. For example, had Mr. Moses-El alleged that Mr. Huff read the label on the evidence directing its preservation, yet nevertheless destroyed it after having done so, or that he requested instructions as to destruction of the evidence and disobeyed them, or he searched through all of the evidence and destroyed only this, or that he told someone that he intended to destroy the pertinent evidence, the outcome might be different. In other words, Mr. Moses-El's facts can describe "a wide swath of conduct, much of it innocent" and permit the court to "infer [nothing] more than the mere possibility of misconduct." [1]

---

[1] Indeed, Mr. Moses-El's Amended Complaint appears to make clear that he believes that "Defendant Huff did not look at the 'comments' section of the invoice from Technician Cubbard" that instructed that the samples be retained. *Docket # 47*, ¶ 160. Such an allegation would support an inference of negligence by Mr. Huff, but not malice. To the extent Mr. Moses-El contends that this contention simply reflects Mr. Huff's testimony, ¶ 160, and that such testimony should be rejected as incredible, Mr. Moses-El has not pointed to any facts that would permit a conclusion that Mr. Huff's testimony about not reading the "comments" section of the memo was false.

The same is true of the allegation about Dr. Brown's testimony. Dr. Brown's testimony was given under oath, and therefore is presumed to be true. It is possible that the testimony was not true, but there is nothing alleged that suggests that was the case and that Dr. Brown knowingly and purposefully gave false testimony. For example, had there been an allegation that Dr. Brown's testimony deviated from that given in other cases under similar circumstances, was contrary to positions or protocols used in other cases, or testified in other cases that similar blood test results were conclusively exculpatory, a possible inference might become more probable.[2]

Mr. Moses-El cites to several cases that, he contends, stand for the proposition that where the facts a plaintiff alleges permit a range of possible inferences, those allegations are sufficient if the inference the plaintiff seeks to draw is among them. But the cases he cites address a different issue – the situation where the facts alleged lead to one or more plausible inferences.

In *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280-81 (6th Cir. 2010), the question presented was whether the plaintiff had adequately alleged that a large AF-50 motorcycle helmet he purchased was defective. The plaintiff alleged that a federal agency had tested a large AF-50 helmet in 2000 and the helmet passed, but that the same agency tested a small AF-50 helmet in 2002 and the helmet failed. The trial court dismissed the claim, but the court of appeals reversed. It explained that "[t]here are at least two legitimate ways to think about the significance of the [ ] tests": (i) that the size of the helmet (*i.e.* small vs. large) dictates whether

---

[2] Mr. Moses-El's conclusion that Dr. Brown misrepresented the results from the test is based on, among other things, a the essential fact that Mr. Moses-El is a "strong secretor" of his blood-type antigens. ¶ 101, 103. But Mr. Moses-El acknowledges that Dr. Brown never tested him to determine whether he was a strong or weak secretor. ¶ 104. Thus, the inference that Dr. Brown "misrepresented" the test results due to negligence is a powerful one. Conversely, nothing whatsoever in the Amended Complaint suggests that Dr. Brown knew anything about Mr. Moses-El, other than that he was the subject of certain forensic tests she was conducting; certainly, nothing in the Amended Complaint permits an inference that she bore specific malice towards him.

7

the helmet is defective or not; or (ii) that a defect exists regardless of the helmet's size and that the later test simply revealed a defect in the helmets that the earlier test missed. Finding that "either assessment is plausible," the Court of Appeals concluded that the trial court was therefore bound to adopt the inference that was more favorable to the plaintiff – that the later test revealed a defect that can be inferred to be present in any size helmet. 628 F.3d at 280-81.

*Fabian* does not advance Mr. Moses-El's argument because the Court of Appeals in *Fabian* identified multiple plausible inferences that could be drawn from the facts alleged. For example, the court noted that "common sense tells us that a mass-manufactured consume product, whether it is shoes, pants or helmets, may utilize the same design (and carry the same flaw) regardless of size," suggesting that the conclusion that helmet size dictated the existence of a defect was an inference that could be dispelled. It noted that "the same test conducted on two randomly selected helmets (otherwise exactly the same) might yield different outcomes due to nothing more than natural statistical variances," suggesting that the 2000 test might not conclusively prove the <u>absence</u> of any defective design or manufacture. It contemplated the possibility that "the company may have changed its design or manufacturing process for all AF-50s between 2000 and 2002, . . . negating the relevance of a successful 2000 test result." Because all of these inferences could be drawn directly from the facts alleged – a successful 2000 test on a large helmet and an unsuccessful 2002 test on a small helmet – the court properly concluded that the plaintiff's allegations presented a plausible, not merely possible, claim. 628 F.3d at 281.[3]

---

[3] Mr. Moses-El also cites *Hamilton v. Palm*, 621 F.3d 816 (8th Cir. 2010), where the question presented was whether the plaintiff's simple allegation that he was "employed" by the defendants was sufficient to permit the inference that he was not an independent contractor. The Eighth Circuit found (among other less-persuasive explanations) that the employer/independent contractor dichotomy was fact-intensive and that the plaintiff had pled certain facts that favored

8

But Mr. Moses-El's allegations do not create any plausible inferences, only multiple possible ones. Nothing in the mere fact that Mr. Huff destroyed blood samples that were labeled for retention makes the inference that he did so with malice plausible. That is because nothing speaks to Mr. Huff's intent. It is equally likely that his actions were negligent or reckless. Any inference that Mr. Huff destroyed the samples out of malice towards Mr. Moses-El would not be based on anything other than sheer speculation.[4]

Likewise, although Mr. Moses-El alleges that Dr. Brown misrepresented the conclusions that could be drawn from her forensic testing, he does not allege any facts that would support the inference that she did so out of a malice towards him and dispel the inference that she did so out ignorance, mistake or as a result of negligence or carelessness. Without additional facts that would permit the Court to dispel the possibility of negligence by Dr. Brown in favor of the possibility of malice by Dr. Brown, the Court is left with nothing more than the "mere possibility" that malice was afoot. Such possibility does not suffice to carry Mr. Moses-El's pleading burden under *Iqbal*.

Accordingly, Mr. Moses-El has not shown that the Court misapplied the controlling law or that a failure to reconsider the Court's prior Opinion and Order would amount to a manifest injustice.

    2. <u>Substantive due process claim</u>

---

the inference of employer stats, such as the fact that the defendants "provided unsafe tools" to him and "directed" his work. Once again, then, *Hamilton* is a case in which the plaintiff alleged facts that supported the inference the plaintiff wished to draw and dispelled competing contrary inferences. As discussed herein, Mr. Moses-El has not alleged any facts that support his inference that Mr. Huff and Dr. Brown acted <u>with malice</u> and dispel the competing inference that they acted <u>negligently</u> or with some other lesser state of mind.

[4] If anything, the Amended Complaint suggests that Mr. Huff was favorably disposed towards Mr. Moses-El, as he had previously "express[ed] his doubts about the validity of [the victim's] identification of Mr. Moses-El." ¶ 64.

Mr. Moses-El contends that the Court inadequately considered his substantive due process claim, which the Court understands to refer to Claim 6 in the Amended Complaint. That claim alleges that each of the individual Defendants "engage[d] in one or more [ ] acts[5] . . . acting recklessly, knowingly, intentionally, willfully, and wantonly," thereby ensuing that "Mr. Moses-El's prosecution and criminal trials lacked fundamental fairness to a degree that shocks the universal sense of justice." The Court summarily disposed of this claim, finding that "the allegations in this claim appear to duplicate the allegations addressed" elsewhere in the Court's Opinion and Order, dismissing it "for the same reasons previously stated."

In his motion, Mr. Moses-El argues that the analysis the Court invoked concerned a malicious prosecution claim, and that the standards for such a claim differ from the analysis that applies to a "fundamental fairness" claim. Mr. Moses-El states that his substantive due process claims "deserve their own consideration."

Unfortunately, the contours of Mr. Moses-El's substantive due process claim are somewhat unclear. In *County of Sacramento v. Lewis*, 523 U.S. 833, 845-49 (1997), the Supreme Court explained that the substantive due process clause of the 14th Amendment is generally understood to "protect[ ] the individual against arbitrary action of government" and to

---

[5] Specifically: (i) Mr. Huff destroying DNA evidence that was supposed to be preserved; (ii) "systematically withholding exculpatory evidence . . . regarding the true perpetrator," although it is not entirely clear what evidence this is and what defendants allegedly withheld it; (iii) "systematically manufacturing inculpatory evidence," which apparently refers to allegations that Mr. Collins and Ms. Benedetti induced a witness to fabricate a recollection of the victim identifying Mr. Moses-El for use in Mr. Moses-El's second trial; (iv) refusing to investigate alternative suspects; (v) Dr. Brown misleading prosecutors about the results of forensic testing; (vi) "attempting . . . to deny Mr. Moses-El access to potential judicial remedies based on" the destruction of the DNA evidence, although it is unclear what defendants did so and how; (vii) "conspiring to fabricate probable cause to prosecute Mr. Moses-El . . . despite the great weight of evidence pointing to his innocence"; (viii) failing to train and supervise "to prevent the above constitutional violations"; and (ix) failing to establish policies to prevent the above constitutional violations.

10

check conduct that is "arbitrary, or conscience shocking, in a constitutional sense." *Lewis* also makes clear that a substantive due process claim "does not purport to supplant traditional tort law in laying down rules of conduct," and thus, courts "reject[ ] the lowest common denominator of customary tort liability" – such as negligence (which is "categorically beneath the threshold of constitutional due process") – "as any mark of sufficiently shocking conduct." 523 U.S. at 848-49. Rather, a substantive due process claim requires allegations of "behavior at the other end of the culpability spectrum[:] conduct intended to injure in some way unjustifiable by any government interest." *Id.* at 849.

In other words, a substantive due process claim requires allegations of a Defendant's state of mind at the level of maliciousness or wantonness.[6] As discussed above, Mr. Moses-El's allegations supporting his malicious prosecution claims do not rise to that level, as he has not sufficiently pled facts (*c.f.* conclusions) that point to anything more than negligence on the part of Defendants such as Mr. Huff and Dr. Brown. And the Court has previously found (and continues to find) that Mr. Moses-El has offered nothing but speculation as to whether Mr. Carroll and Ms. Benedetti induced a witness to testify falsely. As to Mr. Morrisey, the Amended Complaint asserts, at most, that he decided to re-try Mr. Moses-El for the rape in 2017 even though the evidence supporting such charge was scant (although presumably enough to satisfy a probable cause inquiry[7]). Although this Court does not endorse prosecutors who bring serious

---

[6] *Lewis* acknowledges the possibility that government actors whose "less than intentional conduct, such as recklessness or gross negligence" present "closer calls" as to whether they violate the substantive due process clause if that conduct is conscience-shocking. 523 U.S. at 849. This Court has ample doubt that the allegations in the Amended Complaint sufficiently (*i.e.* non-conclusorily) describe a state of mind in any Defendant that would rise to an actionable level.

[7] *See e.g.* C.R.Cr.P. 7(a) (if charges are approved by a grand jury); C.R.S. § 16-5-301(1)(a) (allowing a defendant to request a probable cause hearing if charges are brought by a felony information or complaint).

charges based on thin (but *prima facie* sufficient) evidence, the Court cannot say that such a practice is so conscience-shocking as to give rise to substantive due process relief. Thus, the Court finds that its prior dismissal of Mr. Moses-El's substantive due process claims was appropriate.

3. *Monell* claim

Mr. Moses-El argues that the Court erred in dismissing his *Monell* claim because the Court incorrectly required him to plead a constitutionally-culpable state of mind for the unnamed police officers and prosecutors that created the "systemic deficiencies" he alleges the City of Denver enabled. Mr. Moses-El is correct that he is not required to allege a sufficient constitutional claim against a particular individual defendant before *Monell* liability might attach to Denver for "the combined acts or omissions of several employees." *Garcia v. Salt Lake County*, 768 F.2d 303, 310 (10th Cir. 1985). But as the Court further noted, regardless of the acts of any individual employee(s), Mr. Moses-El had failed to adequately allege the essential element of Denver's knowledge that its evidence-handling procedures were constitutionally-deficient, much less that the specific policies that allowed the mistaken destruction of the evidence in Mr. Moses-El's case had occurred previously. Mr. Moses-El's motion for reconsideration identifies no error with regard to this portion of the Court's analysis, and thus, no further reconsideration of this claim is warranted.

4. Other claims

The Court has also carefully considered the remainder of Mr. Moses-El's arguments: (i) that the Court overlooked allegations in the Amended Complaint that supported Mr. Moses-El's

12

contention that Mr. Carroll and Ms. Benedetti induced a witness to testify falsely at Mr. Moses-El's second criminal trial; (ii) that the Court erred in concluding that the malicious prosecution claim against Mr. Morrissey failed because it alleged only that he engaged in "legislative advocacy"; (iii) that the Court erred in not recognizing that the Amended Complaint alleged that Mr. Huff engaged in malicious prosecution by harboring doubts about Mr. Moses-El's guilt but nevertheless proceeding to conduct an investigation that focused on Mr. Moses-El and ignored other possible suspects; (iv) that the Court erred in dismissing Mr. Moses-El's claim for civil conspiracy; and (v) that the Court erred in concluding that Mr. Moses-El's claims against Ms. Kimbrough were frivolous. The Court finds these arguments to be without merit.

Accordingly, Mr. Moses-El's Motion to Alter Judgment is denied.

**B. Motion to Amend**

As an alternative (or perhaps even supplement) to his request for reconsideration, Mr. Moses-El seeks leave to amend his Amended Complaint, adding certain additional factual contentions. Because the Court has already entered judgment in this case, Mr. Moses-El must first show that the judgment should first be vacated under the Rule 59(e) or Rule 60(b) standards, then show that leave to amend is warranted under Rule 15. *Donelson v. United States*, 730 Fed.Appx. 597, 603 (10th Cir. 2018), *quoting The Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1086-87 (10th Cir. 2005).

For the reasons noted above, Mr. Moses-El has not demonstrated that Rule 59(e) warrants vacatur of the judgment against him. Mr. Moses-El's motion to amend does not materially supplement his Rule 59(e) arguments, and thus, the Court denies his motion to amend on the grounds that he has not made a colorable showing under that rule.

13

Nevertheless, even if the Court were to reach the question of whether leave to amend should be granted under the Rule 15(a) standard, the Court would nevertheless deny Mr. Moses-El's motion as futile. The new material Mr. Moses-El seeks to add to his Amended Complaint consists of: (i) several additional allegations that Mr. Morrissey engaged in a written exchange with a Denver Post reporter, disputing (falsely, Mr. Moses-El contends) facts in the newspaper's article about Mr. Moses-El's case; (ii) additional allegations that support Mr. Moses-El's speculation that Mr. Carroll and Ms. Benedetti attempted to induce Mr. Jackson to recant his confession a second time, although Mr. Jackson ultimately stood by his confession when testifying in court; (iii) extensive additional allegations of false or misleading public statements about Mr. Moses-El's case made by Ms. Kimbrough as Spokesperson for the Denver District Attorney's Office (and the conclusory assertion that Ms. Kimbrough's statements, ostensibly on behalf of the D.A.'s Office, "caused the Denver D.A.'s Office to prosecute Mr. Moses-El despite his innocence"); (iv) an allegation that attempts to support Mr. Moses-El's speculation that Mr. Carroll and Ms. Benedetti induced a witness to manufacture a false recollection of the victim identifying Mr. Moses-El as her attacker; and (v) certain allegations derived from Mr. Carroll's personnel file attesting to his experience and accomplishments, which Mr. Moses-El alleges demonstrate that his "aggressive determination in pursuing a case caused him to pursue inappropriate means in furtherance of a prosecution rather than let the case be dismissed."

None of these allegations, individually or in concert, would suffice to cure the specific deficiencies discussed in this Court's prior Opinion and Order. As the Court previously noted, allegations that Mr. Morrisey or Ms. Kimbrough made false or misleading public statements are utterly incapable of supporting a malicious prosecution or other constitutional claim by Mr. Moses-El. Although they might be probative of a particular actor's state of mind, public

14

statements of this type simply do not cause a prosecution to occur.[8] As to the allegations about Mr. Carroll and Ms. Benedetti inducing Mr. Jackson to temporarily recant his confession, Mr. Moses-El has not shown that such conduct prolonged his incarceration in any way, as Mr. Jackson stood by his confession (and recanted his recantation) when he ultimately testified. Mr. Moses-El's new allegations regarding Mr. Carroll and Ms. Benedetti inducing a witness to fabricate a recollection of the victim identifying Mr. Moses-El do not fundamentally change the fact that Mr. Moses-El offers nothing more than sheer speculation that Mr. Carroll and Ms. Benedetti, and not the witness himself, were the cause of the witness' new recollection. And Mr. Moses-El's allegations derived from Mr. Carroll's personnel file are entirely irrelevant.

Accordingly, Mr. Moses-El's motion to amend is denied.

## CONCLUSION

For the foregoing reasons, Mr. Moses-El's Motion to Vacate Judgment **(# 121)** and Motion to Amend **(# 122)** are **DENIED**.

Dated this 21st day of February, 2020.

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
Senior United States District Judge

---

[8] At best, such statements might permit Mr. Moses-El to assert a defamation claim of some sort against Mr. Morrisey or Ms. Kimbrough, but he has not done so.